1  Ben F. Pierce Gore (SBN 128515)
2  PRATT & ASSOCIATES
   1901 S. Bascom Avenue, Suite 350
3  Campbell, CA 95008
   Telephone: (408) 429-6506
4  Fax: (408) 369-0752
   pgore@prattattorneys.com
5
   *Attorneys for Plaintiff*
6

**FILED**

ADR

MAY 17 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-FILING

7

8

9            IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12

13  SUSAN IVIE, individually and on behalf      Case No **CV 12-02554**
    of all others similarly situated,
14                                              **CLASS ACTION AND REPRESENTATIVE**
                  Plaintiff,                    **ACTION**
15
    v.                                          **COMPLAINT FOR DAMAGES,**
16                                              **EQUITABLE AND INJUNCTIVE RELIEF**
    KRAFT FOODS GLOBAL, INC. and
17  CADBURY ADAMS USA LLC,                      **JURY TRIAL DEMANDED**

18                Defendants.

19

20

21        Plaintiff, through the undersigned attorneys, brings this lawsuit against Defendants

22  Cadbury Adams USA LLC ("Cadbury") and Kraft Foods Global, Inc. ("Kraft FG")(collectively

23  "Defendants") upon personal knowledge as to Plaintiff's own acts, upon personal knowledge, and

24  as to all other matters upon information and belief.  In order to remedy the harm arising from

25  Defendants' illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on

26  behalf of a California class of consumers who purchased Defendants' "sugar free" or "sugarless"

27  gum, breath mints or hard candies listed on Exhibit 1  (collectively, "Misbranded Food Products")

28  in the last four years.

**INTRODUCTION**

1.      Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods.  This case is about a company that flouts those laws, before and after receiving an industry warning/guidance letter from the United States Food and Drug Administration ("FDA"). The law, however, is clear: "misbranded" food (defined below) cannot legally be manufactured, held, advertised, distributed or sold.  Misbranded food is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their purchase price

2.      Defendants are among the world's leading producers of gum. Defendants' Misbranded Food Products are sold to consumers through grocery stores and other retail stores throughout California.

3.      Defendants recognize that health claims drive sales, and actively promotes the health benefits of their products. In recent years, responding to consumer demand for sugar free, low-calorie foods has become a central part of Defendants' business models and marketing strategies, even though Defendants' products are various forms of candy and confectionery that (a) fail to satisfy the regulatory requirements for sugar free and sugarless claims and (b) are not low-calorie products as a matter of law.

4.      Defendants have realized that based on the public's concern about obesity and interest in low-calorie and dietetic foods, there is a financial benefit to be derived in selling products claiming to be "sugar free," "sugarless," "low-calorie" or "suitable for weight control." Accordingly, Defendants have labeled many of their candy and confectionery products such as their chewing gum and hard candies as "sugar free" or "sugarless" even though such claims are in violation of federal and state food labeling laws.

5.      Defendants have also represented that their chewing gum is low-calorie and suitable for weight control when in fact the products are high calorie and unable to qualify as low-calorie or suitable for weight control as a matter of law as they exceed the maximum caloric level to do so.

6.      In furtherance of their scheme, Defendants have misrepresented the actual serving

1    sizes of some of their products so as to understate the actual amount of calories and sweeteners in

2    those products.

3          7.     Defendants have pursued a Health and Nutrition strategy based on their assessment

4    that nutritional awareness and the desire for improved health and wellness will increasingly drive

5    consumer choice. Pursuant to this strategy, Defendants decided that it would renovate products

6    for nutrition and health considerations and would seek to inform consumers about available

7    healthy and nutritious options in using Defendants' products.

8          8.     In pursuing such a strategy, Defendants (a) decided their success and profitability

9    was dependent on their ability to satisfy emerging consumer demand for healthy, nutritious and

10   low-calorie foods and (b) was prepared to make health and nutrition arguments on behalf of "junk

11   foods" like gum when in fact such claims were not true and but instead were unlawful.

12   9.     Similarly, according to the most recent 10-K filing of Kraft Foods, Inc.:

13          We must correctly predict, identify and interpret changes in consumer preferences and
14          demand, and offer new products to meet those changes. Consumer preferences for food
            products change continually. Our success depends on our ability to predict, identify and
15          interpret the tastes and dietary habits of consumers and to offer products that appeal to
            consumer preferences. If we do not offer products that appeal to consumers, our sales and
16          market share will decrease and our profitability could suffer.

17          We must distinguish among short-term fads, mid-term trends and long-term changes in
18          consumer preferences. If we do not accurately predict which shifts in consumer
            preferences will be long-term, or if we fail to introduce new and improved products to
19          satisfy those preferences, our sales could decline. In addition, because of our varied
            consumer base, we must offer an array of products sufficient to satisfy the broad spectrum
20          of consumer preferences. If we fail to expand our product offerings successfully across
            product categories, or if we do not rapidly develop products in faster growing and more
21          profitable categories, demand for our products will decrease and our profitability could
22          suffer.

23          Prolonged negative perceptions concerning the health implications of certain food
            products could influence consumer preferences and acceptance of some of our products
24          and marketing programs. For example, recently, consumers have been increasingly
            focused on health and wellness, including weight management and reducing sodium
25          consumption. We strive to respond to consumer preferences and social expectations, but
            we may be unsuccessful in these efforts. Continued negative perceptions and failure to
26          satisfy consumer preferences could materially and adversely affect our product sales,
27          financial condition and results of operations.

28   Kraft Foods Inc. 10-K filed 2/27/2012 at p. 13-14.

10.     Defendants' key to achieving the goals of their Health and Nutrition strategy is to convince consumers that they can use Defendants' chewing gum, breath mints and hard candy products as part of a healthy and enjoyable diet. Recognizing that the success of the Defendants depends on their ability to offer high-quality products that appeal to the consumer preferences, Defendants have repositioned their food products as healthy, nutritious and low calorie by making false and deceptive claims in violation of federal and state laws that govern the types of representations that can be made on food labels.

11.     The key to achieving Defendants' goals of their Health and Nutrition strategy was to convince consumers that they could use Defendants' chewing gum as part of a healthy and enjoyable diet. Recognizing that the success of this strategy was dependent on repositioning gum as healthy, nutritious and low-calorie, Defendants made and are making false and deceptive claims in violation of federal and state laws that govern the types of representations that can be made on food labels.

12.     If a manufacturer is going to make a claim on a food label or on its website, which is an extension of the label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled.  As described more fully below, Defendants have made, and continue to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.

13.     Under federal and California law, Defendants' Misbranded Food Products cannot legally be held or sold. These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits.

14.     These laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

15.     In particular, Defendants have engaged in a number of deceptive practices that are prohibited by California and federal law, including: (a) making unlawful sugar free and sugarless

1   nutrient content claims that are prohibited by law; (b) misstating the true serving size of a food so

2   as to falsely convey a product has less calories per serving than it actually has; (c) making

3   unapproved health claims that are prohibited by law; and (d) falsely claiming that products are

4   low-calorie or suitable for weight control when they are not.

5         16.    Defendants' false and misleading labeling practices stem from their global

6   marketing strategy.  Thus, the violations and misrepresentations are similar across product lines

7   and product brands.

8         17.    Defendants' false and misleading labeling practices are designed to increase sales

9   and justify the premium prices of Defendants' products at issue.

10         18.    In order to remedy the damages arising from Defendants' illegal conduct and

11   which have resulted in unjust profits, Plaintiff brings this action on behalf of a California class of

12   consumers who purchased Defendants' Misbranded Food Products.

13         19.    Defendants continue to distribute and sell their Misbranded Food Products to the

14   public even though Defendants (a) has violated California and federal law; (b) is not acting in

15   accord with regulatory guidance such as the FDA *Guidance for Industry, A Food Labeling Guide*;

16   and (c) is aware or should be aware of numerous regulatory warning letters to food manufacturers

17   concerning the violations identical to the ones discussed herein.

18         20.    Identical federal and California laws regulate the content of labels on packaged

19   food.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by

20   the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law").

21   California Health & Safety Code § 109875, *et seq.*  Under FDCA section 403(a), food is

22   "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain

23   certain information on its label or in its labeling. 21 U.S.C. § 343(a).

24         21.    Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

25   term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those

26   claims that might be technically true, but still misleading.  If any one representation in the

27   labeling is misleading, then the entire food is misbranded, nor can any other statement in the

28   labeling cure a misleading statement.  "Misleading" is judged in reference to "the ignorant, the

1    unthinking and the credulous who, when making a purchase, do not stop to analyze." *United*

2    *States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951).   Under the FDCA, it is not

3    necessary to prove that anyone was actually misled.

4        22.    In promoting the health benefits of their Misbranded Food Products, Defendants

5    have adopted responsible marketing and advertising policies.   Defendants claims to understand

6    the importance of communicating responsibly about their products.   Nevertheless, Defendants

7    have made, and continue to make, false and deceptive claims on their Misbranded Food Products

8    in violation of federal and California laws that govern the types of representations that can be

9    made on food labels.   In particular, in making their unlawful "sugar free" and "sugarless" claims,

10    and in using an unlawful serving size on their Misbranded Food Products, Defendants have

11    violated nutrient content labeling regulations mandated by federal and California law which

12    require a disclosure of items present in a food at a level that the FDA has concluded increases the

13    risk of diet-related disease or health-related condition. Such a disclosure is required whenever a

14    nutrient content claim is made.

15        23.    Defendants have made and continue to make food label claims that are prohibited

16    by federal and California law.   Under federal and California law, Defendants' Misbranded Food

17    Products cannot legally be held or sold.   Defendants' false and misleading labeling practices stem

18    from their marketing strategy.   The violations and misrepresentations are similar across product

19    labels and product lines.

20        24.    Defendants' violations of law include: (a) the illegal advertising, marketing,

21    distribution, delivery and sale of Defendants' Misbranded Food Products to consumers of

22    California; (b) the failure to properly disclose the high levels of calories in their Misbranded Food

23    Products on the Products' packaging and labeling as required by law; the failure to utilize the

24    proper serving size on their nutritional content information; and (c) the failure to include

25    statements on the Misbranded Food Products packaging and labeling that are mandated by law.

26                      **PARTIES**

27        25.    Plaintiff, Susan Ivie, is a resident of Morgan Hill, California who purchased

28    Defendants' Kraft FG and Cadbury Misbranded Food Products in California during the four (4)

1   years prior to the filing of this Complaint (the "Class Period"). Plaintiff purchased Trident

2   Spearmint Sugar Free Gum, 18 sticks and Dentyne Ice Peppermint Sugar Free Gum, 16 pieces.

3       26.     Defendant Kraft FG is a Delaware corporation with its headquarters in Northfield,

4   Illinois. Kraft FG is registered to do business and does business in California. Kraft FG promotes,

5   markets, distributes and sells gum, breath mints and hard candies throughout the United States,

6   including to tens of thousands of consumers in the State of California. During the Class Period,

7   Defendant Kraft FG manufactured, marketed, advertised and sold Defendants' Misbranded Food

8   Products

9       27.     Defendant Cadbury is a Delaware corporation with its corporate headquarters and

10  principal place of business in Parsippany, New Jersey. Cadbury does business in the State of

11  California. Cadbury promotes, markets, distributes and sells gum, breath mints and hard candies

12  throughout the United States, including to tens of thousands of consumers in the State of

13  California. During the Class Period, Defendant Cadbury manufactured, marketed, advertised and

14  sold Defendants' Misbranded Food Products.

15      28.     Collectively, Defendants are leading producers of gum, breath mints and hard

16  candies and Defendants' Misbranded Food Products are sold to consumers through grocery and

17  other retail stores throughout the United States and California.

18      29.     Defendants promote their products through their websites.

19                          **JURISDICTION AND VENUE**

20      30.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)

21  because this is a class action in which:  (a) there are over 100 members in the proposed class;

22  (b) members of the proposed class have a different citizenship from Defendants and (c) the claims

23  of the proposed class members exceed $5,000,000 in the aggregate.

24      31.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28

25  U.S.C. § 1331, because it arises under the laws of the United States.

26      32.     The Court has jurisdiction over the California claims alleged herein pursuant to 28

27  U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

28  United States Constitution.

1    33.    Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

2  28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

3  between citizens of different states.

4    34.    The Court has personal jurisdiction over Defendants because a substantial portion

5  of the wrongdoing alleged in this Complaint occurred in California, Defendants are authorized to

6  do business in California, has sufficient minimum contacts with California, and otherwise

7  intentionally avail itself of the markets in California through the promotion, marketing and sale of

8  merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under

9  traditional notions of fair play and substantial justice.

10    35.    Because a substantial part of the events or omissions giving rise to these claims

11  occurred in this District and because the Court has personal jurisdiction over Defendants, venue is

12  proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

13                              **FACTUAL ALLEGATIONS**

14  **A.    Identical California And Federal Laws Regulate Food Labeling**

15    36.    Food manufacturers are required to comply with federal and state laws and

16  regulations that govern the labeling of food products.  First and foremost among these is the

17  FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

18    37.    Pursuant to the Sherman Law, California has expressly adopted the federal

19  labeling requirements as its own and indicated that "[a]ll food labeling regulations and any

20  amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993,

21  or adopted on or after that date shall be the food regulations of this state."  California Health &

22  Safety Code § 110100.

23    38.    In addition to its blanket adoption of federal labeling requirements, California has

24  also enacted a number of laws and regulations that adopt and incorporate specific enumerated

25  federal food laws and regulations.  For example, food products are misbranded under California

26  Health & Safety Code § 110660 if their labeling is false and misleading in one or more

27  particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails

28  to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and

1    regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if

2    their labeling fails to conform with the requirements for nutrient content and health claims set

3    forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California

4    Health & Safety Code § 110705 if words, statements and other information required by the

5    Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are

6    misbranded under California Health & Safety Code § 110735 if they are represented as having

7    special dietary uses but fail to bear labeling that adequately informs consumers of their value for

8    that use; and are misbranded under California Health & Safety Code § 110740 if they contain

9    artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose

10   that fact on their labeling.

11   **B.    Defendants' Food Products Are Misbranded**

12        39.    Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a

13   nutrient in a food is a "nutrient content claim" that must be made in accordance with the

14   regulations that authorize the use of such claims. 21 U.S.C. § 343(r)(1)(A). California expressly

15   adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

16        40.    Nutrient content claims are claims about specific nutrients contained in a product.

17   They are typically made on the packaging in a font large enough to be read by the average

18   consumer. Because these claims are relied upon by consumers when making purchasing

19   decisions, the regulations govern what claims can be made in order to prevent misleading claims.

20        41.    Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied

21   nutrient content claims on labels of food products that are intended for sale for human

22   consumption. *See* 21 C.F.R. § 101.13.

23        42.    21 C.F.R. § 101.13 provides the general requirements for nutrient content claims,

24   which California has expressly adopted. *See* California Health & Safety Code § 110100.

25        43.    An "expressed nutrient content claim" is defined as any direct statement about the

26   level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories"). *See* 21

27   C.F.R. § 101.13(b)(1).

28

44.   An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat").  21 C.F.R. § 101.13(b)(2)(i-ii).

45.   A claim that a product is sugar free or sugarless or low calorie is a specific type of nutrient content claim.

### 1.   Defendants Make Unlawful "Sugar Free" or "Sugarless" Nutrient Claims

46.   Federal and California mandates regulate "sugar free" or "sugarless" claims as a particular type of nutrient content claim.  Specifically, 21 C.F.R. § 101.60 contains special requirements for nutrient claims that use the terms "sugar free" or "sugarless."  Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements of 21 C.F.R. § 101.60 as its own.  California Health & Safety Code § 110100.

47.   21 C.F.R. § 101.60(c)(1) (emphasis added) provides that:

**Sugar content claims—(1) Use of terms such as "sugar free,"** "free of sugar," "no sugar," "zero sugar," "without sugar," **"sugarless,"** "trivial source of sugar," "negligible source of sugar," or "dietary insignificant source of sugar." Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories. Consequently, **except as provided in paragraph (c)(2) of this section, a food may not be labeled with such terms unless:** (i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; and (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietary insignificant amount of sugar;" and (iii)(A) **It is labeled "low-calorie" or "reduced calorie" or bears a relative claim of special dietary usefulness … or (B) Such term is immediately accompanied, each time it is used, by either the statement "not a reduced calorie food," "not a low-calorie food," or "not for weight control."**

48.    21 C.F.R. § 101.60(b)(2) provides that:

The terms "low-calorie," "few calories," "contains a small amount of calories," "low source of calories," or "low in calories" may be used on the label or in labeling of foods, except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that: (i)(A) The food has a reference amount customarily consumed greater than 30 grams (g) or greater than 2 tablespoons and does not provide more than 40 calories per reference amount customarily consumed; or (B) The food has a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and does not provide more than 40 calories per reference amount customarily consumed and, except for sugar substitutes, per 50 g ....(ii) If a food meets these conditions without the benefit of special processing, alteration, formulation, or reformulation to vary the caloric content, it is labeled to clearly refer to all foods of its type and not merely to the particular brand to which the label attaches (e.g., "celery, a low-calorie food").

49.    None of Defendants' "sugar free" and "sugarless" gum are low-calorie or suitable for weight control as they all contain more than the 40 calories per 50 grams which is the maximum amount allowed under 21 C.F.R. § 101.60(b)(2).  None of the Defendants' sugar free and sugarless gum, breath mints and hard candies contain are low calorie or suitable for weight control as they all contain than the 40 calories per 50 grams which is the maximum amount allowed under 21 C.F.R. § 101.60(b)(2). Most of the Defendants' sugar free and sugarless gum, breath mints and hard candies exceed the low calorie cutoff by more than two or three times.

50.    For example, Dentyne mints contain 130 calories per 50 grams. Similarly, Halls Refresh Sugar Free Drops have 100 calories. Virtually all varieties of the Defendants' sugar free and sugarless gums have more than 80 calories per 50 grams as well.

51.    For example, Defendants' Trident White Spearmint Sugar Free Gum has 83 calories per 50 grams.




52.    In addition, Defendants' Dentyne Ice Mint Medley Sugarless Gum has 83 calories per 50 grams.




All varieties of Defendants' "sugar free" and "sugarless" gum have more than 80 calories per 50 grams as well. Yet the label on each of these products contains a statement "sugar free" or "sugarless" without the FDA required disclosure "not a reduced calorie food," "not a low-calorie food," or "not for weight control."

53.    Notwithstanding the fact that 21 C.F.R. § 101.60(c)(1) bars the use of the terms "sugar free" or "sugarless" on foods that are not low-calorie unless they bear an express warning immediately adjacent to each use of the terms that discloses that the food is "not a reduced calorie

food," or "not a low-calorie food," or "not for weight control," Defendants have touted their non low-calorie products as "sugar free" and "sugarless" and chosen to omit the mandated disclosure statement. Moreover Defendants have touted their sugar free gum as a "great low-calorie treat" for "consumers watching their waist lines."

54.     In doing so Defendants have ignored the language of 21 C.F.R. § 101.60(c)(1) that states that:

> Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories.

55.     Because consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners (e.g., "sugar free," or "sugarless") as indicating a product which is low in calories or significantly reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law are falsely represented to be low-calorie through the unlawful use of terms like "sugar free" and "sugarless" that they are not allowed to bear due to their high calorific levels and absence of mandated disclosure statements.

56.     The labeling for Defendants' products violates California law and federal law.  For these reasons, Defendants' "sugar free" and "sugarless" claims at issue in this Complaint are misleading and in violation of 21 C.F.R. § 101.60 and California law, and the products at issue are misbranded as a matter of law.  Misbranded products cannot be legally sold and are legally worthless.

57.     In addition to their illegal labeling, Defendants personnel have joined together as prominent members of the board of directors of the International Chewing Gum Association to ensure that entity promotes the purported health benefits of chewing gum including the dissemination of the false claim that chewing gum "provides [a] low-calorie snack."

58.     Defendants have also made the same illegal claims on their websites and advertising in violation of federal and California law.

59.     In September of 2007, the FDA issued a guidance letter to the food industry that indicated the FDA was concerned about improper sugar free type claims "that fail to bear the required disclaimer statement when these foods are not "low" or "reduced in" calories or fail to

bear the required disclaimer statement in the location or with the conspicuousness required by regulation." The letter stated:

> Dear Manufacturer:
>
> The Food and Drug Administration (FDA) is concerned about the number of products we have seen that contain claims regarding the absence of sugar, such as, "sugar free" but that fail to bear the required disclaimer statement when these foods are not "low" or "reduced in" calories or fail to bear the required disclaimer statement in the location or with the conspicuousness required by regulation. As part of our continuing effort to reduce the incidence of obesity in the United States, FDA wants to ensure that consumers are provided with the label information they need to make informed choices for maintaining a healthy diet. We are highlighting accurate claims about the absence of sugar as a regulatory priority. The agency intends to take appropriate action against products that we encounter that bear a claim about the absence of sugar (e.g., sugar free) but that fail to meet each of the requirements of the regulation that defines "sugar free." We intend to pay particular attention to those foods that are required to bear a disclaimer statement under the regulation that defines "sugar free," but that fail to do so or otherwise fail to comply with the regulation, 21 CFR 101.60(c). Therefore, we are taking this opportunity to remind food manufacturers and distributors of conventional food products that the definition of "sugar free" includes several requirements.
>
> Under the authority of the Nutrition Labeling and Education Act of 1990, FDA issued regulations for the nutrient content claim "sugar free" 58 Federal Register (FR) 2302 at 2415. "Sugar free" is defined in Title 21 of the Code of Federal Regulations 101.60(c) ...
>
> FDA has historically taken the position that consumers may associate claims regarding the absence of sugar with weight control and with foods that are low calorie or that have been altered to reduce calories significantly. Therefore, the definition for "sugar free" includes the requirement that any food that is not low or reduced in calorie disclose that fact. Without such information some consumers might think the food was offered for weight control. See 56 FR 60421 at 60435. Consequently, the definition for "sugar free" includes the requirement that the food be labeled with the claim "low calorie" or "reduced calorie" or bear a relative claim of special dietary usefulness labeled in compliance with 21 CFR 101.60(b)(2), (b)(3), (b)(4), or (b)(5) or such claim is immediately accompanied, each time it is used, by one of the following disclaimer statements: "not a reduced calorie food," "not a low calorie food," or "not for weight control" (see 21 CFR 101.60(c)(1)(iii)). The disclaimer statement, when required, must accompany the claim each time it is used. In addition, the disclaimer statement is subject to the requirements of 21 CFR 101.2(c) and must appear prominently and conspicuously but in no case may the letters be less than one-sixteenth inch in height.

FDA encourages food manufacturers and distributors to review their labels and ensure that any food that bears a claim regarding the absence of sugar meet each of the requirements for that claim including the placement and conspicuousness of the disclaimer statement in 21 CFR 101.60(c)(1)(iii) when required. FDA will take appropriate action, consistent with our priorities and resources, when we find problems with the use of nutrient content claims regarding the absence of sugar in foods.

60.     The defendants ignored this FDA guidance and engaged in the exact labeling practices the FDA sought to eliminate.

61.     In addition to the industry guidance the Defendants ignored, the FDA has repeatedly taken enforcement action and issued warning letters addressing the type of misleading sugar free and sugarless nutrient content claims described above. *See, e.g.,* Exhibit 3 (FDA warning letter dated June 5, 2009, to The South Bend Chocolate Company, Inc. regarding its misbranded sugar free  chocolate products because of improper sugar free type claims that failed to bear the required disclaimer statement when these foods were not low calorie or failed to bear the required disclaimer statement in the location or with the conspicuousness required by regulation); Exhibit 4 (FDA warning letter dated February 4, 2008 to BestLife International, Inc. regarding its misbranded vanilla and chocolate soy products because of improper sugar free type claims that failed to bear the required disclaimer statement when these foods were not low calorie); Exhibit 5 (FDA warning letter dated July 15, 2011 to Grand Cakes, Inc. regarding its misbranded sugar free food product because of improper sugar free type claims that failed to bear the required disclaimer statement when these foods were not low calorie); Exhibit 6 (FDA warning letter dated March 25, 2010 to Today's Temptations, Inc.  regarding its misbranded sugar free bread product because of improper sugar free type claims that failed to bear the required disclaimer statement when these foods were not low calorie).

62.     The Defendants ignored the FDA's repeated enforcement actions and issuance of warning letters and continued to use improper sugar free and sugarless claims on their product labels and in their advertising and marketing materials when they were prohibited from doing so.

1          2.      **Defendants Uses Unlawful Serving Sizes**

2          63.     In order to ensure uniformity and protect consumers from misleading schemes,

3    Federal and California regulations regulate the serving sizes that can be utilized on food labels.

4    These regulations prohibit food manufacturers from understating the serving sizes of their

5    products because such a practice would mislead consumers into the erroneous belief that a

6    particular product had fewer calories and lower levels of undesirable nutrients like sugar or

7    calories per serving than it actually did. Specifically, 21 C.F.R. § 101.9 contains special

8    requirements for the manner in which nutritional information is conveyed. 21 C.F.R. §

9    101.9(b)(2) provides that serving size declared on a product label shall be determined from the

10   "Reference Amounts Customarily Consumed Per Eating Occasion * * * *" (reference amounts)

11   that appear in [21 C.F.R. §] 101.12(b).

12         64.     21 C.F.R. § 101.12 provides that the serving size for breath mints is 2 grams.

13   Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements

14   of 21 C.F.R. § 101.9 and 21 C.F.R. § 101.12 as its own.   California Health & Safety Code

15   § 110100.

16         65.     In order to understate the calories in their breath mint products, the Defendants

17   have chosen not to use the correct serving size mandated by law. Instead Defendants have utilized

18   far smaller amounts for their stated serving size. These serving sizes which are as little as 0.5

19   grams or one fourth the legally mandated serving size understate the calories and sugar content of

20   these products to the same degree that the serving size is understated. Thus a breath mint whose

21   stated serving size is 0.5 grams or one fourth the actual serving size will understate the calories

22   and sugar in a serving size by a factor of four.

23         66.     In March of 2004, the FDA issued a guidance letter to the food industry that

24   indicated the FDA was concerned about the use of improper serving sizes. The letter stated:

25

26

27

28

Dear Food Manufacturer:

As you are aware, the Food and Drug Administration (FDA) is involved in an initiative to give consumers helpful information that will enable them to make more informed choices about their diets and lifestyle in an effort to reduce the incidence of overweight and obesity in the United States A key component in providing nutrient information to consumers is the "Nutrition Facts" panel on food packages. In order for this nutrition information to be useful to consumers, it must be accurate and based on a meaningful amount of food. After the Nutrition Labeling and Education Act was enacted, thereby mandating nutrition labeling, FDA promulgated regulations that specify how serving size must be derived from an appropriate reference amount for the food commodity in question. We recognize that these regulations are very technical. However, FDA has determined that as part of the Obesity Initiative the agency will highlight accurate serving size declarations on food products as a priority. As a result, FDA intends to take appropriate action against violative products, especially when we encounter products that declare a serving size on its label that is substantially different than what it should be by regulation. Therefore, we are taking this opportunity to remind the food industry about the rules for determining an appropriate serving size.

Manufacturers must use the information provided in Title 21 of the Code of Federal Regulations (CFR) sections 101.9(b) and 101.12 to determine a specific serving size for their products....

FDA encourages the food industry to review their nutrition information and assure that the serving size declared is appropriate for the commodity in question. FDA also encourages manufacturers to refer to our guidance documents at www.cfsan.fda.gov for additional information on serving sizes. FDA intends to make accurate serving size declarations one of our priorities and we will advise manufacturers when we encounter apparent errors in declared serving sizes.

67.     The defendants ignored this FDA guidance and engaged in the exact improper serving size practices the FDA sought to eliminate.

68.     In addition to the industry guidance the Defendants ignored, the FDA has repeatedly taken enforcement action and issued warning letters addressing the type of misleading serving size representations described above. *See, e.g.*, Exhibit 7 (FDA warning letter dated July 8, 2010, to Florida Bottling, Inc. regarding its misbranded juice beverage product labels that failed to properly declare the serving size as specified by 21 CFR 101.9(b) and 101.12(b), Exhibit 8 (FDA warning letter dated January 15, 2009, to Haelan Products, Inc. regarding its misbranded soy beverage product labels that failed to properly declare the serving size as specified by 21 CFR 101.9(b) and 101.12(b),

69.     The Defendants ignored the FDA's repeated enforcement actions and issuance of warning letters and continued to use improper serving size claims on their product labels and in their advertising and marketing materials when they were prohibited from doing so.

**C.     Defendants Have Violated California Law**

70.     Defendants have manufactured, advertised, distributed and sold products that are misbranded under California law. Misbranded products cannot be legally manufactured, advertised, distributed or sold and are legally worthless as a matter of law.

71.     Defendants have violated California Health & Safety Code §§ 109885 and 110390 which make it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

72.     Defendants have violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any misbranded food.

73.     Defendants have violated California Health & Safety Code § 110398 which makes it unlawful to deliver or proffer for delivery any food that has been falsely advertised.

74.     Defendants have violated California Health & Safety Code § 110660 because their labeling is false and misleading in one or more ways, as follows:

a.     They are misbranded under California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto;

b.     They are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto; and

c.     They are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

75.     Defendants have violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

76.     Defendants have violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

77.     Defendants have violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

78.     Defendants have violated the standard set by 21 C.F.R. § 101.2, which has been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

79.     Defendants have violated and continue to violate the standards set by 21 CFR §§ 101.13, 101.60 and 105.66, which have been adopted by reference in the Sherman Law, by including unauthorized nutrient content, sugar free, sugarless and low-calorie claims on their products and labeling.

80.     Defendants have violated and continue to violate the standard set by 21 CFR §101.9 which have been adopted by reference in the Sherman Law by failing to disclose nutrient information in accordance with the correct serving size of the principal food mandated by law. By using an incorrect smaller serving size, Defendants have sought to obscure that theirs food products actually have a higher number of calories per serving size than they advertise and depict on their product labels and that theirs food products are not low-calorie products and are not suitable for weight control purposes as a matter of law.

81.     Defendants have violated and continue to violate the standard set by 21 CFR §101.12 which have been adopted by reference in the Sherman Law by failing to use the correct serving size for food products like breath mints.

82.     Defendants have violated and continue to violate the standard set by 21 CFR §101.18 which have been adopted by reference in the Sherman Law, by misrepresenting theirs non-low-calorie food products as low-calorie alternatives to other food products.

83. Defendants have violated and continue to violate the standard set by 21 CFR §101.60 which have been adopted by reference in the Sherman Law, by representing either expressly or implicitly that theirs products are low-calorie and or lack sugar when they fail to meet the requirements for making such claims.

84. By selling products that (a) bear unauthorized and unlawful sugar free and sugarless claims; (b) utilize unauthorized and unlawful serving sizes; and (c) are not low-calorie but fail to properly disclose that fact, Defendants have violated and continue to violate federal laws and regulations prohibiting the misbranding of food products including those in 21 U.S.C. § 343, which have been adopted by reference in the Sherman Law.

85. Defendants have manufactured, distributed, advertised, marketed and sold products misbranded in violation of the standards contained in 21 U.S.C. § 343(q), which has been incorporated in the Sherman Law, and continue to do so. Pursuant to 21 U.S.C. § 343(q), food is misbranded if, as here, it fails to utilize a proper serving size despite being mandated to do so. See California Health and Safety Code § 110665.

86. Defendants have manufactured, distributed, advertised, marketed and sold products misbranded in violation of the standards contained in 21 U.S.C. § 343(r), which has been incorporated in the Sherman Law, and continue to do so. Pursuant to 21 U.S.C. § 343(r), food is misbranded if, as here, it bears a nutrient content claim despite failing to meet the requirements for making that claim. *See* California Health and Safety Code § 110670.

87. Defendants violated California law by utilizing unlawfully small serving sizes and unlawful sugar-related claims (*e.g.*, false/unlawful no sugar added claims) to make their products appear healthier than they in fact were.

88. In addition to Defendants' violation of sections (q) and (r) of 21 U.S.C. § 343, Defendants have manufactured, distributed, advertised, marketed and sold products misbranded in violation of the standard set by sections a, f, and j of 21 U.S.C. § 343 which has been adopted by reference in the Sherman Law, and continue to do so. Pursuant to 21 U.S.C. § 343 food shall be deemed to be misbranded if, as in the instant case:

(a) it bears a false or misleading label ...

(f) its label fails to conspicuously depict any word, statement, or other information required to appear on the label or labeling and be prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use; ...

(j) it purports to be or is represented for special dietary uses, and its label fails to bear such information concerning its vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

89.     Each of the federal requirements has been expressly adopted by the State of California and thus each of Defendants' violations of these federal standards constitutes an independent violation of state law.

**D.     Plaintiff Purchased Defendants' Misbranded Food Products**

90.     Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

91.     Plaintiff purchased Defendants' Misbranded Food Products at issue in this Complaint during the Class Period including:

A.     Trident Spearmint Sugar Free Gum, 18 sticks;

B.     Dentyne Ice Peppermint Sugar Free Gum, 16 pieces

Copies of the package labels of the products purchased by Plaintiff are attached as cumulative Exhibit 2 and made a part hereof by reference.

92.     Plaintiff read the labels on Defendants' products, including the "sugar free" or "sugarless" or nutrient content claims, where applicable, before purchasing them. Defendants' failure to disclose the presence of risk-increasing calories in connection with their "sugar free" or "sugarless" claims was deceptive because it falsely conveyed to the Plaintiff the net impression that the Misbranded Food Product Plaintiff bought made only positive contribution to a diet, and did not contain any nutrients or calories at levels that raised the risk of diet-related disease or health related condition.

93.     Plaintiff relied on Defendants' package labeling, including the "sugar free" or "sugarless" claim and based and justified the decision to purchase Defendants' products in

substantial part on Defendants' package labeling. Plaintiff would have foregone purchasing Defendants' products and bought other products readily available at a lower price.

94.    At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' products were misbranded as set forth herein, and would not have bought the products had Plaintiff known the truth about them.

95.    As a result of Defendants' misrepresentations, Plaintiff and thousands of others in California and the United States purchased the products at issue.

96.    Defendants' labeling, advertising and marketing as alleged herein are false and misleading and designed to increase sales of the products at issue.    Defendants' misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' representations in determining whether to purchase the products at issue.

97.    A reasonable person would also attach importance to whether Defendants' Misbranded Food Products were legally salable, and capable of legal possession, and to Defendants' representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendants' Misbranded Food Products had Plaintiff known they were not capable of being legally sold or held.

## CLASS ACTION ALLEGATIONS

98.    Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons in California who purchased the Dentyne, Trident or Halls products
> listed on Exhibit 1 in the last four years (the "Class").

99.    The following persons are expressly excluded from the Class:  (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court assigned to this action and its staff.

100.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

101.   Numerosity:  Based upon Defendants' publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class number in the thousands and that joinder of all Class members is impracticable.

102.   Common Questions Predominate:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, just for example:

a.   Whether Defendants engaged in unlawful and misleading business practices by failing to properly package and label their Misbranded Food Products sold to consumers;

b.   Whether the food products at issue were misbranded or unlawfully packaged and labeled as a matter of law;

c.   Whether Defendants made unlawful and misleading sugar free or sugarless claims with respect to their food products sold to consumers;

d.   Whether Defendants made unlawful and misleading nutrient content claims with respect to their food products sold to consumers;

e.   Whether Defendants failed to adequately disclose the calorie or sugar content of their food products sold to consumers;

f.   Whether Defendants made improper and misleading low calorie or weight control claims with respect to their food products sold to consumers;

g.   Whether Defendants made improper and misleading serving size claims with respect to their food products sold to consumers;

h.   Whether Defendants violated California Bus. & Prof. Code § 17200, California Bus. & Prof. Code § 17500, the California CLRA, and the Sherman Act;

h.   Whether Defendants violated California Bus. & Prof. Code § 17200, California Bus. & Prof. Code § 17500, and the Sherman Law;

i.   Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

j.   Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

k.   Whether Defendants were unjustly enriched by their deceptive practices.

103.   Typicality:   Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendants' Misbranded Food Products during the Class Period.   Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were received.   Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct in violation of California law.   The injuries of each member of the Class were caused directly by Defendants' wrongful conduct.   In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.   Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

104.   Adequacy:   Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.   Plaintiff has retained highly competent and experienced class action attorneys to represent Plaintiff's interests and those of the members of the Class.   Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

105.   Superiority:   There is no plain, speedy or adequate remedy other than by maintenance of this class action.   The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.   Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.   Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an

important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

106.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

107.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

108.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### Business and Professions Code § 17200, *et seq.*
#### Unlawful Business Acts and Practices

109.    Plaintiff incorporates by reference each allegation set forth above.

110.    Defendants' conduct constitutes unlawful business acts and practices.

111.    Defendants sold Misbranded Food Products nationwide and in California.

112.    Defendants are corporation and, therefore are "person(s)" within the meaning of the Sherman Law.

113.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of Article 6 (misbranded food) of the Sherman Law.

114.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

115.   Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold legally and which were legally worthless.

116.   As a result of Defendants' illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

117.   Defendants' unlawful business acts present a threat and reasonable continued likelihood of deception to Plaintiff and the Class.

118.   As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**<u>Unfair Business Acts and Practices</u>**

119.   Plaintiff incorporates by reference each allegation set forth above.

120.   Defendants' conduct as set forth herein constitutes unfair business acts and practices.

121.   Defendants sold Misbranded Food Products nationwide and in California.

122.   Defendants' deceptive marketing, advertising, packaging and labeling of their Misbranded Food Products was of no benefit to consumers, and the harm to consumers and competition is substantial.

123.   Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold and that were legally worthless.

124.   The consequences of Defendants' conduct as set forth herein outweighs any justification, motive or reason therefor.  Defendants' conduct is and continue to be immoral,

1   unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and

2   the Class.

3        125.    As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business

4   and Professions Code § 17203, are entitled to an order enjoining such future conduct by

5   Defendants, and such other orders and judgments which may be necessary to disgorge

6   Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food

7   Products by Plaintiff and the Class.

8
### THIRD CAUSE OF ACTION
**Business and Professions Code § 17200,** *et seq.*
9
**<u>Fraudulent Business Acts and Practices</u>**
10

11        126.    Plaintiff incorporates by reference each allegation set forth above.

12        127.    Defendants' conduct as set forth herein constitutes fraudulent business practices

13   under California Business and Professions Code sections § 17200, *et seq.*

14        128.    Defendants sold Misbranded Food Products nationwide and in California.

15        129.    Defendants' misleading marketing, advertising, packaging and labeling of the

16   Misbranded Food Products was likely to deceive reasonable consumers, and in fact, Plaintiff and

17   members of the Class were deceived. Defendants have engaged in fraudulent business acts and

18   practices.

19        130.    Defendants' fraud and deception caused Plaintiff and the Class to purchase

20   Defendants' Misbranded Food Products that they would otherwise not have purchased had they

21   known the true nature of those products.

22        131.    Defendants sold Plaintiff and the Class Misbranded Food Products that were not

23   capable of being sold legally and that were legally worthless.

24        132.    As a result of Defendants' conduct as set forth herein, Plaintiff and the Class,

25   pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

26   conduct by Defendants, and such other orders and judgments which may be necessary to disgorge

27   Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food

28   Products by Plaintiff and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500,** *et seq.*
**Misleading and Deceptive Advertising**

133.   Plaintiff incorporates by reference each allegation set forth above.

134.   Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendants.

135.   Defendants sold Misbranded Food Products nationwide and in California.

136.   Defendants engaged in a scheme of offering Defendants' Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Food Products. Defendants' advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products and are statements disseminated by Defendants to Plaintiff and the Class that were intended to reach members of the Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

137.   In furtherance of their plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the ingredients contained in and the nature of Defendants' Misbranded Food Products. Plaintiff and the Class necessarily and reasonably relied on Defendants' materials, and were the intended targets of such representations.

138.   Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true ingredients and nature of Defendants' Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

139. As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold and are legally worthless.

140. Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

### FIFTH CAUSE OF ACTION
#### Business and Professions Code § 17500, *et seq.*
#### Untrue Advertising

141. Plaintiff incorporates by reference each allegation set forth above.

142. Plaintiff asserts this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

143. Defendants sold Misbranded Food Products nationwide and in California.

144. Defendants engaged in a scheme of offering Defendants' Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Food Products. Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products, and are statements disseminated by Defendants to Plaintiff and the Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

145. In furtherance of their plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the ingredients contained in Defendants' Misbranded Food Products, and falsely misrepresented the nature of those products. Plaintiff and the Class were the

1  intended targets of such representations and would reasonably be deceived by Defendants'

2  materials.

3       146.  Defendants' conduct in disseminating untrue advertising throughout California and

4  nationwide deceived Plaintiff and members of the Class by obfuscating the contents, nature and

5  quality of Defendants' Misbranded Food Products in violation of the "untrue prong" of California

6  Business and Professions Code § 17500.

7       147.  As a result of Defendants' violations of the "untrue prong" of California Business

8  and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of

9  Plaintiff and the Class. Misbranded products cannot be legally sold and are legally worthless.

10       148.  Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are

11  entitled to an order enjoining such future conduct by Defendants, and such other orders and

12  judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any

13  money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**SIXTH CAUSE OF ACTION**
**Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***

16       149.  Plaintiff incorporates by reference each allegation set forth above.

17       150.  This cause of action is brought pursuant to the CLRA. This cause of action does

18  not currently seek monetary damages and is limited solely to injunctive relief. Plaintiff intends to

19  amend this Complaint to seek damages in accordance with the CLRA after providing Defendants

20  with notice pursuant to Cal. Civ. Code § 1782.

21       151.  At the time of any amendment seeking damages under the CLRA, Plaintiff will

22  demonstrate that the violations of the CLRA by Defendants were willful, oppressive and

23  fraudulent, thus supporting an award of punitive damages.

24       152.  Consequently, Plaintiff and the Class will be entitled to actual and punitive

25  damages against Defendants for their violations of the CLRA. In addition, pursuant to Cal. Civ.

26  Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-

27  described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of

28

1   costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court

2   pursuant to Cal. Civ. Code § 1780.

3       153.   Defendants' actions, representations and conduct have violated, and continue to

4   violate the CLRA, because they extend to transactions that are intended to result, or which have

5   resulted, in the sale of goods or services to consumers.

6       154.   Defendants sold Misbranded Food Products nationwide and in California.

7       155.   Plaintiff and members of the Class are "consumers" as that term is defined by the

8   CLRA in Cal. Civ. Code §1761(d).

9       156.   Defendants' Misbranded Food Products were and are "goods" within the meaning

10   of Cal. Civ. Code §1761(a).

11       157.   By engaging in the conduct set forth herein, Defendants violated and continue to

12   violate Sections 1770(a)(5), (7) (9), and (16) of the CLRA, because Defendants' conduct

13   constitutes unfair methods of competition and unfair or fraudulent acts or practices in that it

14   misrepresents the particular ingredients, characteristics, uses, benefits and quantities of the goods.

15       158.   By engaging in the conduct set forth herein, Defendants violated and continue to

16   violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods

17   of competition and unfair or fraudulent acts or practices in that it misrepresents the particular

18   standard, quality or grade of the goods.

19       159.   By engaging in the conduct set forth herein, Defendants violated and continue to

20   violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods

21   of competition and unfair or fraudulent acts or practices in that it advertises goods with the intent

22   not to sell the goods as advertised.

23       160.   By engaging in the conduct set forth herein, Defendants have violated and

24   continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes

25   unfair methods of competition and unfair or fraudulent acts or practices in that it represents that a

26   subject of a transaction has been supplied in accordance with a previous representation when it

27   has not.

28

161.    Plaintiff requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendants are not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

162.    Plaintiff incorporates by reference each allegation set forth above.

163.    As a result of Defendants' fraudulent and misleading labeling, advertising, marketing and sales of Defendants' Misbranded Food Products, Defendants was enriched at the expense of Plaintiff and the Class.

164.    Defendants sold Misbranded Food Products to Plaintiff and the Class that were not capable of being sold or held legally and which were legally worthless.  It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits it received from Plaintiff and the Class, in light of the fact that the products were not what Defendants purported them to be.  Thus, it would be unjust and inequitable for Defendants to retain the benefits without restitution to Plaintiff and the Class of all monies paid to Defendants for the products at issue.

165.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Beverly-Song Act (Cal. Civ. Code § 1790, *et seq.*)

166.    Plaintiff incorporates by reference each allegation set forth above.

167.    Plaintiff and members of the Class are "buyers" as defined by Cal. Civ. Code § 1791(b).

168.    Defendants are "manufacturers" and "sellers" as defined by Cal. Civ. Code § 1791(j) & (l).

169.    Defendants' food products are "consumables" as defined by Cal. Civ. Code § 1791(d).

170.    Defendants' nutrient and health content claims constitute "express warranties" as defined by Cal. Civ. Code § 1791.2.

171.    Defendants, through their package labels, create express warranties by making the affirmation of fact and promising that their Misbranded Food Products comply with food labeling regulations under federal and California law.

172.    Despite Defendants' express warranties regarding their food products, the products do not comply with food labeling regulations under federal and California law.

173.    Defendants breached their express warranties regarding Defendants' Misbranded Food Products in violation of Cal. Civ. Code § 1790, *et seq.*

174.    Defendants sold Plaintiff and members of the Class Defendants' Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless.

175.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

176.    Defendants' breaches of warranty were willful, warranting the recovery of civil penalties pursuant to Cal. Civ. Code § 1794.

## NINTH CAUSE OF ACTION
## Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)

177.    Plaintiff incorporates by reference each allegation set forth above.

178.    Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

179.    Defendants are "suppliers" and "warrantors" as defined by 15 U.S.C. § 2301(4) & (5).

180.    Defendants' food products are "consumer products" as defined by 15 U.S.C. § 2301(1).

181.    Defendants' nutrient and health content claims constitute "express warranties."

182.    Defendants, through their package labels, create express warranties by making the affirmation of fact and promising that their Misbranded Food Products comply with food labeling regulations under federal and California law.

183.   Despite Defendants' express warranties regarding their food products, the products do not comply with food labeling regulations under federal and California law.

184.   Defendants breached their express warranties regarding their Misbranded Food Products in violation of 15 U.S.C. §§ 2301, *et seq.*

185.   Defendants sold Plaintiff and members of the Class Defendants' Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless.

186.   As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of her claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendants as follows:

A.   For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B.   For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek monetary relief under the CLRA, but intends to amend this Complaint to seek such relief;

C.   For an order requiring Defendant to immediately cease and desist from selling their Misbranded Food Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

D.   For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.   For an order awarding attorneys' fees and costs;

F.   For an order awarding punitive damages;

G.   For an order awarding pre-and post-judgment interest; and

///

///

1    H.    For an order providing such further relief as this Court deems proper.

2    Dated: May 17, 2012                    Respectfully submitted,

3

4                                           *Pierce Gore*

5                                           Ben F. Pierce Gore (SBN 128515)
                                            PRATT & ASSOCIATES
6                                           1901 S. Bascom Avenue, Suite 350
                                            Campbell, CA  95008
7                                           Telephone:  (408) 429-6506
                                            Fax:  (408) 369-0752
8                                           pgore@prattattorneys.com

9                                           *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28