# Exhibit 1

**Improper Sugar Free or Sugarless Nutrient Content Claims**

All products make improper sugar free or sugarless nutrient content claims that have been prohibited by federal and state law.

**Trident Gum** (Bubble Gum, Cinnamon, Minty Sweet Twist, Original, Passionberry Twist, Spearmint, Strawberry Twist, Tropical Twist, Watermelon Twist, Wild Blueberry Twist, Wintergreen)

**Trident White Gum** (Cinnamon Tingle, Cool Bubble, Cool Colada, Cool Mangoberry, Cool Rush, Peppermint, Spearmint, Wintergreen)

**Trident Splash Gum** (Apple Raspberry, Citrus Blackberry, Orange Swirl, Pucker Me Berry, Strawberry Lime, Peppermint Swirl, Sweet Mint, Peppermint with Vanilla)

**Trident Layers Gum** (Orchard Peach & Ripe Mango, Fresh Peppermint & Smooth Spearmint, Cool Mint & Melon Fresco, Green Apple & Golden Pineapple, Wild Strawberry & Tangy Citrus, Sweet Cherry & Island Lime)

**Trident Xtra Care Gum** (Cool Citrus, Cool Mint, Peppermint, Spearmint)

**Trident Vitality Gum** (Vigorate, Rejuve, Awaken)

**Trident Fusion Gum** (Strawberry Fusion, Green Apple Fusion)

**Stride Gum** (Always Mandarin, Eternal Melon, Forever Fruit 2.0, Nonstop Mint 2.0, Shift Berry to Mint, Shift Citrus to Mint, Spark Kinetic Fruit, Spark Kinetic Mint, Spearmint 2.0, Sweet Berry 2.0, Sweet Cinnamon, Sweet Peppermint 2.0, Uber Bubble 2.0, Whitemint, Winterblue 2.0, Shaun White Wintermint, Forever Fruit, Spearmint, Sweet Berry, Sweet Peppermint, Uber Bubble, Nonstop Mint, Winterblue)

**Dentyne Gum** (Ice Peppermint, Ice Spearmint, Ice Arctic Chill., Ice Shiver Mint, Ice Vanilla Chill, Ice Mint Medley, Fire Spicy Cinnamon, Pure Mint With Melon Accents, Pure Mint With Herbal Accents )

**Dentyne Mints** (Ice Peppermint, Fire Spicy Cinnamon)

**Halls Refresh Drops** (Juicy Strawberry, Refreshing Mint, Tropical Wave)

**Halls Defense Drops** (Blueberry, Assorted Citrus)

**Failure to Use Correct Serving Size**

All products fail to use the required specified serving size of the food mandated by law.

**Cadbury Dentyne Mints** (Ice Peppermint, Fire Spicy Cinnamon)

# Exhibit 2

Dentyne Ice Peppermint Sugar Free Gum, 16 pieces





Trident Spearmint Sugar Free Gum, 18 sticks







# Exhibit 3

U.S Department of Health & Human Services

U.S. Food & Drug Administration

## Inspections, Compliance, Enforcement, and Criminal Investigations

.

Home•Inspections, Compliance, Enforcement, and Criminal Investigations Enforcement Actions Warning Letters

## The South Bend Chocolate Company, Inc.

 Department of Health and Human Services

Public Health Service
Food and Drug Administration
Central Region
Detroit District
300 River Place
Suite 5900
Detroit, MI 48207-3179
Telephone: 313-393-8100
FAX: 313-393-8139

June 5, 2009

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**WARNING LETTER**
2009-DT-15

Mr. Mark A. Tarner, President
The South Bend Chocolate Company, Inc.
3300 West Sample Street
South Bend, Indiana 46619

On October 14 - 29, 2008 and March 9 – 16, 2009, the Food and Drug Administration (FDA) conducted inspections of your chocolate candy manufacturing facility located at 3300 West Sample Street, South Bend, Indiana. During these inspections, our investigators documented significant violations of FDA's Current Good Manufacturing Practice (CGMP) requirements for manufacturing, packing, or holding human food, Title 21, Code of Federal Regulations, Part 110 (21 CFR 110) at your facility. These violations cause the foods manufactured at your facility to be adulterated within the meaning of section 402(a)(4) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 342(a)(4), in that they were prepared, packed, or held under insanitary conditions whereby they may have been rendered injurious to health. In addition, during the March 2009 inspection, we collected labels from some of your products. Our review of those labels found that some of your products are misbranded within the meaning of section 403 of the Act, 21 U.S.C. § 343. You may find the Act and FDA's regulations through links in FDA's home page at http://www.fda.gov.

**Current Good Manufacturing Practice Violations**

Our inspections of your facility revealed the following violations of the CGMP regulation (21 CFR 110):

1. To comply with section 21 CFR 110.35(c), no pests are allowed in any area of a food plant. Further, effective measures must be taken to exclude pests from the processing areas and to protect against the contamination of food on the premises by pests.

Our investigators observed the following evidence of a lack of pest control during the inspections:

   a. Two dead rodents were observed in the west warehouse (raw materials warehouse). One carcass was on the floor along the wall. Another carcass was observed in an unused sink in a corner of the room. Nesting material was also observed on the floor along the all.

   b. Large numbers of rodent excreta pellets were observed throughout the facility. For example, rodent excreta pellets were found: on the floors along walls; on a steel beam traversing the entire length of the building; next to and under pallets containing raw materials for your food products; and near stored in-process candy products, packaging materials and manufacturing equipment.

2. To comply with 21 CFR 110.35(a), buildings, fixtures, and other physical facilities of the plant shall be maintained in a sanitary condition and shall be kept in repair sufficient to prevent food from becoming adulterated within the meaning of the Act. Our investigators observed the following evidence that your facility is not maintained in a sanitary condition or in repair sufficient to prevent food from becoming adulterated:

   a. Numerous holes and missing window glass panes in all areas of the building, allowing possible ingress for pests from the exterior of the

building to the interior.

b. Numerous holes in building interior walls which could lead to the movement of pests throughout the facility.

3. To comply with 21 CFR 110.20(b)(4), plant buildings and structures shall be constructed in such a manner that floors, walls, and ceilings may be adequately cleaned. However, our investigators observed that your panning room walls are made of wood, and the ceiling in the panning room is a popcorn ceiling. These materials are not easily cleanable and exhibited a buildup of chocolate residue. The buildup of chocolate residue on the popcorn ceiling was located directly over your 3,000 lb. melting tank that is partially open on the top. This could lead to contamination if particles from the ceiling fall into new product as it is being processed.

4. To comply with 21 CFR 110.35(a), cleaning and sanitizing of equipment shall be conducted in a manner that protects against contamination of food, food-contact surfaces, or food-packaging materials. However, the melting unit on enrober number **(b)(4)** had reportedly been cleaned but was observed with chunks of old product residue that fell into new product as it was processed.

5. To comply with 21 CFR 110.80, all reasonable precautions must be taken to ensure that production procedures do not contribute to contamination from any source. The production procedures your firm uses in cleaning of equipment are not adequate to ensure that preceding products do not contaminate subsequent products.

a. Your firm uses the cooling tables in the kitchen in the production of products that are formulated to contain major food allergens ("allergenic products") and products that are not formulated to contain major food allergens ("non-allergenic products"). However, your firm does not use any form of detergent to clean the cooling tables between allergenic and non-allergenic products, but rather uses only a solution of water and a sanitizer **(b)(4)**). This procedure is insufficient to remove allergenic protein that may be deposited on the cooling tables during production and could lead to cross-contamination of your products with allergens.

b. Your firm uses two enrobing machines and does not dedicate such machines to only allergenic or non-allergenic products. We note your plant manager's statement that you sequence your product (i.e., run non-allergenic products before allergenic products); however, your firm only scrapes the enrobing machines with a **(b)(4)** and wipes them with a **(b)(4)** in between product runs. This procedure is insufficient to remove the allergenic protein that may be deposited on the equipment during production of allergenic products and could lead to cross-contamination of your products with allergens.

We called your firm on March 23, 2009 to advise that our testing isolated Salmonella spp. from one of 221 environmental subsamples FDA collected within your facility. On March 9, 2009 we collected sample INV 522877, Sub 51 from a non-food contact dolly wheel within the warehouse operations area. Salmonella spp. within your facility presents an increased risk to your food production operations and sanitation. Steps should be taken to immediately correct the violations outlined in items 1 and 2 above and to further ensure that your current cleaning and sanitizing programs are effective.

**Labeling Violations**

Our review of your labels found that some of your products are misbranded under section 403 of the Act [21 U.S.C. § 343]:

1. Your Sugar Free Assorted Chocolates (5 oz, 8 oz, and 26 oz), Sugar Free/Sucrose-Free Chocolate Covered Peanuts (3 oz and 1lb) and Sugar Free/Sucrose-Free Chocolate Covered Raisins (3 oz and 1 lb) are misbranded within the meaning of section 403(r)(1)(A) of the Act [21 U.S.C. 343 (r)(1)(A)] for failing to characterize the level of a nutrient, i.e., sugar/sucrose, in accordance with sugar-free nutrient content claim requirements as specified under 21 CFR 101.60(c)(1). Your products do not appear to qualify for the sugar free/sucrose-free claim. In order to declare that a product is sugar-free, the food must contain less than 0.5g of sugars per reference amount customarily consumed (RACC) and per labeled serving (21 CFR 101.60(c)(1)(i)). The RACC for candies is 40g (21 CFR 101.12(b)), which is also the serving size of these products (21 CFR 101.9(b)(2)). However, these products all declare that they contain "Sugar 3g" per serving, which is greater than the amount permitted in products bearing sugar free claims under 21 CFR 101.60(c)(1)(i).

2. Also, 21 CFR 101.60(c)(1)(iii)(B) requires that sugar free claims are to be immediately accompanied, each time they are used, by one of the following statements: "not a reduced calorie food," "not a low calorie food," or "not for weight control." Some of your products incorrectly place the statement "Not a reduced calorie product" as part of the ingredient statement, but on all of the labels reviewed the products fail to use the disclaimer to immediately accompany the sugar free/sucrose free claims. While the regulations specifically address the nutrient content claim "sugar free", we note that "sucrose free" is an implied sugar free claim and therefore requires the same immediate disclaimer statement.

The above violations are not meant to be an all-inclusive list of deficiencies in your plant. Other violations can subject the food to legal action. It is your responsibility to ensure that your processing plant operates in compliance with applicable statutes enforced by the FDA. You should take prompt action to correct all of the violations noted in this letter. Failure to promptly correct these violations may result in regulatory action without further notice, such as seizure or injunction.

In addition, we have the following comments regarding your product labeling.

Your Nutrition Facts panels do not meet the formatting requirements under 21 CFR 101.9(d). Specifically:

• Your products fail to set off the nutrition information in a box by use of hairlines (21 CFR 101.9(d)(1)(i)).

• Specific information required in the Nutrition Facts panel (e.g., Serving Size, Servings Per Container, Calories and nutrient information) must not be in a type size smaller than 8 point (21 CFR 101.9(d)(1)(iii)); however, some of your Nutrition Facts information is in a font size smaller than 6 point.

• The heading must be stated as "Nutrition Facts" rather than "Nutritional Facts" (21 CFR 101.9(d)(2)).

• The nutrients in the nutrition label are not listed in the proper order (i.e., "trans fat" is incorrectly listed after "cholesterol") (21 CFR 101.9(c)).

- "Sugar" must be declared as "Sugars" (21 CFR 101.9(c)(6)(ii)).

- The serving size declaration ("1.5 oz (40 g)") is not expressed in common household measure (21 CFR 101.9(b)(5) and 21 CFR 101.12(b)).

Furthermore, please note that in order to display the Nutrition Facts panel in a linear fashion, the foods must be in packages that have a total surface area available to bear labeling of 40 or less square inches (21 CFR 101.9(j)(13)(ii)).

Additionally, your Sugar Free Assorted Chocolate (26 oz) product fails to declare the net weight in both pounds and ounces, e.g., "26 oz (1 lb 10 oz)" (21 CFR 101.105(j)).

All information appearing on the principal display panel or the information panel must appear prominently and conspicuously; however, we note that some of the information on the labels we collected is illegible due to small type size that is less than 1/16 inch (e.g., the net quantity of contents) and due to poor printing quality of the labels (e.g., the net quantity of contents and ingredient information) (21 CFR 101.2(c)).

Finally, the statement "Excess consumption may have a laxative effect" is required on the label and labeling for foods containing mannitol under the conditions stated in 21 CFR 180.25. Your Sugar Free Assorted Chocolates product contains mannitol, but does not bear this statement. In addition, while your Sugar Free/Sucrose-Free Chocolate Covered Peanuts and Sugar Free/Sucrose-Free Chocolate Covered Raisins products, which also contain mannitol, bear a form of the prescribed statement ("This product may have a laxative effect when consumed in large amounts"), it has been improperly included in the ingredient statement.

You should respond in writing within fifteen (15) working days from your receipt of this letter. Your response should outline the specific things you are doing to correct these violations. You should include in your response documentation or other useful information that would assist us in evaluating your corrections. If you cannot complete all corrections before you respond, you should explain the reason for your delay and state when you will correct any remaining violations.

Please send your reply to the Food and Drug Administration, Attention: LCDR Anastasia M. Piliafas-Brown, Compliance Officer, Detroit District Office, 300 River Place, Suite 5900, Detroit, Michigan 48207. If you have any questions regarding any issues in this letter, please contact LCDR Anastasia M. Piliafas-Brown at 313-393-8270.

Sincerely,

/S/

Joann M. Givens

District Director

Detroit District Office

---

**Links on this page:**

- Accessibility
- Contact FDA
- Careers
- FDA Basics
- FOIA
- No Fear Act
- Site Map
- Transparency
- Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

-  USA.gov
-
- 
- 
- 
- 
- 

- For Government

- For Press
- Combination Products
- Advisory Committees
- Science & Research
- Regulatory Information
- Safety
- Emergency Preparedness
- International Programs
- News & Events
- Training and Continuing Education
- Inspections/Compliance
- State & Local Officials
- Consumers
- Industry
- Health Professionals

 U.S Department of **Health & Human Services**

Links on this page:

# Exhibit 4

 U.S. Department of Health & Human Services

U.S. Food & Drug Administration

## Inspections, Compliance, Enforcement, and Criminal Investigations

Home•Inspections, Compliance, Enforcement, and Criminal Investigations Enforcement Actions Warning Letters

## BestLife International, Inc. 02/04/2009

 Department of Health and Human Services

Public Health Service
Food and Drug Administration
Seattle District
Pacific Region
22201 23rd Drive SE
Bothell, WA 98021-4421
Telephone: 425-486-8788
FAX: 425-483-4996

February 4, 2008

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

In reply refer to Warning Letter SEA 09-11

Paul T. Baugh, President
BestLife International, Inc.
1341 15th Street
Clarkston, Washington 99403-2460

**WARNING LETTER**

Dear Mr. Baugh:

This is to advise you that FDA reviewed your website at www.bestlifeint.com in January 2009, and has determined that the products "Sammi's Best™ Soy," "Sammi's Best™ Cultured Organic Soy," "Sammi's Best™ Soya-Rice," "Sammi's Best™ Dutch Chocolate Soy Amazing Meal Replacement," "Sammi's Best™ Real Vanilla Soy Amazing Meal Replacement," "Sammi's Best™ Soy, Dutch Chocolate Flavor," "Sammi's Best™ Soy Nog," and "Sammi's Best™ Soychata" are promoted for conditions that cause the products to be drugs under section 201(g)(1)(B) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 321(g)(1)(B)]. The therapeutic claims on your website establish that the products are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of disease. The marketing of these products with these claims violates the Act.

Examples of some of the claims observed, on your website include:

o In "Articles: Table of Contents:" "Study after study has shown that soy is an amazing natural remedy that prevents and fights cancer, heart disease, high cholesterol, menopausal symptoms, osteoporosis, and other chronic conditions."

o In "Questions About Soy and Cancer": "What evidence exists that a soy diet is preventative or beneficial in cancer?

At a scientific symposium held at the National Cancer Institute in 1990 it was concluded that soybeans contain at least five compounds with anticancer activity.

Dr. M. Messina and Ms. V. Messina in their book 'The Simple Soybean and Your Health' state that 'soyfoods are-rich in anticarcinogens, substances that, in some way, prevent or control cancer'."

"What are the principal anticancer agents in soy?

. . . These soy isoflavones, genistein and daidzein, are known to inhibit cancer cells grown in the laboratory and in animal models. Research shows that isoflavones have anticancer effects in prostate, breast, colon, lung and skin cancer."

o In "Ten Most Important Benefits of Soy": "Studies have proven that compounds in soy can inhibit the growth of prostrate cancer cells."

These products are not generally recognized as safe and effective for the above referenced uses and therefore, the products are "new drugs" under section 201(p) of the Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior approval from FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective. Your products "Sammi's Best™ Soy," "Sammi's Best™ Cultured Organic Soy," "Sammi's Best™ Soya-Rice," "Sammi's BestTM Dutch Chocolate Soy Amazing Meal Replacement," "Sammi's Best™ Real Vanilla Soy Amazing Meal Replacement," "Sammi's Best™ Soy, Dutch Chocolate Flavor," "Sammi's Best™ Soy Nog," and "Sammi's Best™ Soychata" are also misbranded within the meaning of section 502(f)(1) of the Act in that labeling for these drugs fail to bear adequate directions for use [21 U.S.C. § 352(f)(1)].

You should take prompt action to correct the violations cited in this letter and prevent their future recurrence. Failure to do so may result in enforcement action without further notice. The Act authorizes the seizure of illegal products and injunctions against manufacturers and distributors of those products [21 U.S.C. §§ 332 and 334].

Please notify this office, in writing, within fifteen (15) working days of the receipt of this letter, as to the specific steps you have taken to correct the violations noted above and to assure that similar violations do not occur. Include any documentation necessary to show that correction has

been achieved. If corrective actions cannot be completed within fifteen working days, state the reason for the delay and the time within which the corrections will be completed.

In addition, we have the following comments regarding the labels of your products that were collected by FDA during the August 5 and 6, 2008, inspection of your processing facility located at 1341 15th Street, Clarkston, Washington.

1. The labels of your Sammi's Best™ Dutch Chocolate Soy Amazing Meal Replacement" and "Sammi's Best™ Real Vanilla Soy Amazing Meal Replacement" products declare the serving size in liquid ounces (e.g., "Use 3/4 dry cup measure per 12 oz. of water") after the powder is reconstituted. However, when a product requires further preparation, such as your meal replacement powders, the nutrition information must be based on the amount of the product as packaged and the Reference Amounts Customarily Consumed (RACC) for the serving size is the amount of the powder that is required to make the reference amount of the food [21 CFR 101.9(b)(9) and 101.12(c)(1)].

2. The labels of your "Sammi's Best™ Dutch Chocolate Soy Amazing Meal Replacement" and "Sammi's Best™ Real Vanilla Soy Amazing Meal Replacement" products fail to declare the percent daily values of dietary fiber as required by 21 CFR 101.9(d)(7)(ii). In addition, your labels make a claim about the amount of protein, "24 grams of protein from Soy & Whole Ground Fax [sic] Seeds." However, the nutrition labels do not declare the "percent daily value" for protein as required when a claim is made for a protein [21 CFR 101.9(c)(7)(i)].

3. The labels of your "Sammi's Best™ Dutch Chocolate Soy Amazing Meal Replacement" and "Sammi's'Best™ Real Vanilla Soy Amazing Meal Replacement" products fail to characterize the level of the nutrient "sugar" in accordance with the regulations. The product labels declare "Sugar Free" on the Principal Display Panel, but fail to provide the required disclaimer statement ("Not a Low Calorie Food," "Not a Reduced Calorie Food," or "Not for Weight Control") as required by 21 CFR 101.60(c)(1)(iii)(B). The disclaimer statement is required because your products do not meet the requirements to bear a "low calorie" claim [see 21 CFR 101.60(b)(2)(i)(B)] and your products do not bear a "reduced calorie" claim or other relative claim of special dietary usefulness [21 CFR 101.60(c)(1)(iii)(A)].

4. The labels for your "Sammi's Best™ Dutch Chocolate Soy Amazing Meal Replacement" and "Sammi's Best™ Real Vanilla Soy Amazing Meal Replacement" products bear unauthorized nutrient content claims. Your "Sammi's Best™ Dutch Chocolate. Soy Amazing Meal Replacement" bears the claim, "an excellent source of omega 3 fatty acids" and your "Sammi's Best™ Real Vanilla Soy Amazing Meal Replacement" bears the claim, "an excellent source of ALA Omega 3 fatty acids." However, the authorized nutrient content claims for omega-3 nutrient in the labeling of conventional foods and dietary supplements, which are based on authoritative statements (See Dockets 2004N-0217, 2005P-0189, and 2006P-0137) as provided for in section 403(r)(2)(G) of the Act, require that the claims identify the specific omega-3 fatty acid, the amount of omega-3 fatty acid in a serving, and the daily value for the specific omega-3 fatty acid. The "an excellent source of omega 3 fatty acids" claim does not meet these requirements. The "an excellent source of ALA Omega 3 fatty acids" claim does not meet the second and third requirements.

5. The labels for your "Sammi's Best™ Dutch Chocolate Soy Amazing Meal Replacement" and "Sammi's Best™ Real Vanilla Soy Amazing Meal Replacement" products contain unauthorized health claims. In particular, your product label makes the following unauthorized implied and express health claims, respectively, "Heart Healthy with 24 grams of protein from Soy & Whole Ground Fax [sic] Seeds," and "[a]dequate soy protein may help reduce the chance of heart disease." Although FDA has authorized a health claim for soy protein and reduced risk of coronary heart disease, your product label does not include all of the elements of the claim that are required by the regulation governing the use of this claim [21 CFR 101.82(c)(2)(i)]. In addition, your products do not qualify for this health claim because the products are not low in fat [21 CFR 101.82(c)(2)(iii) (C)].

6. The label for your "Sammie's Best™ Non-Dairy Coffee Creamer" fails to list the food allergen milk. Section 201(qq) of the Act [21 U.S.C. 321 (qq)] defines as "major food allergens" milk, egg, fish, Crustacean shellfish, tree nuts, wheat, peanuts, and soybeans, as well as any food ingredient that contains protein derived from one of these foods, with the exception of highly refined oils. If a food that is not a raw agricultural commodity is, or contains an ingredient that bears or contains, a major food allergen, its labeling must have either:

a. The word "Contains," followed by the name of the food source from which the major food allergen is derived, printed immediately after or adjacent to the list of ingredients [section 403(w)(1)(A) of the Act, 21 U.S.C. 343(w)(1)(A)]; or

b. The common or usual name of the major food allergen in the list of ingredients followed in parentheses by the name of the food source from which the major food allergen is derived (e.g., "sodium caseinate (milk)"), except that the name of the food source is not required when either the common or usual name of the ingredient uses the name of the food source or the name of the food source appears elsewhere in the ingredient list (unless the name of the food source that appears elsewhere in the ingredient list appears as part of the name of an ingredient that is not a major food allergen) [section 403(w)(1)(B) of the Act, 21 U.S.C. 343(w)(1)(B)].

7. The label for your "Sammie's Best™ Non-Dairy Coffee Creamer" product contains a false and misleading statement on the information panel, "For your information, Sodium Casseinate [sic] is classified by the FDA as a Non-Dairy or Dairy Free ingredient," Sodium caseinate is a dairy ingredient and FDA has not classified it as "non-dairy" or "dairy-free" [21 CFR 101.4(d)].

8. The label for your "Sammie's Best™ Non-Dairy Coffee Creamer" product characterizes the food as "nondairy" and states that it contains a caseinate ingredient, but it is not declared by its common or usual name. A parenthetical statement identifying its source does not follow the caseinate ingredient. Specifically, it must include a parenthetical term such as "a milk derivative" after the listing of sodium caseinate in the ingredient list [21 CFR 101.4(d)].

9. The label for your "Sammie's Best™ Non-Dairy Coffee Creamer" product bears an unauthorized nutrient content claim ("No Trans Fat") which has not been defined by FDA. We note that you may make a truthful statement on a product's label that specifies the amount of *trans* fat per serving [21 CFR 101.13(i)].

10. Ingredients required to be declared on the label or labeling of a food must be listed by their common or usual name and without intervening material [21 CFR 101.2(e) and 101.4(a)(1)]. For example, statements such as those made in the ingredient list of your "Sammi's Best™ Dutch Chocolate Soy Amazing Meal Replacement" and "Sammi's Best™ Real Vanilla Soy Amazing Meal Replacement" products (such as "Certified Non GMO," referring to the soybean ingredient) are not part of the common or usual name of the ingredient to which they refer; rather, they are considered intervening material and must not be included as part of the ingredient statement. We suggest that you review the labeling of all your products to ensure that their ingredient statements comply with the applicable FDA regulations.

11. The labels of your "Sammi's Best™ Dutch Chocolate Soy Amazing Meal Replacement" and "Sammi's Best™ Real Vanilla Soy Amazing Meal Replacement" products state: "Many superlatives apply to this amazing dietary supplement." However, these products are labeled as conventional foods rather than as dietary supplements.

12. The following are comments regarding the Nutrition Facts label format as required in 21 CFR 101.9(d) for "Sammi's Best™ Dutch Chocolate Soy Amazing Meal Replacement," "Sammi's Best™ Real Vanilla Soy Amazing Meal Replacement" and "Sammie's Best™ Coffee Creamer:"

o "Calories from Fat" must be declared on the same line with "Calories" rather than below [21 CFR 101.9(d)(5)]. Also, the quantitative amount for "Calories from Fat" is not rounded in accordance with 21 CFR 101.9(c)(1)(ii).

o The heading "% Daily Value*" must be highlighted in bold or extra bold type or other highlighting [21 CFR 101.9(d)(1)(iv)], followed by an asterisk [21 CFR 101.9(d)(6)], and shall be in type size no smaller than 6 point [21 CFR 101.9(d)(1)(iii)].

o A statement of the number of grams of trans fat per serving must be declared un-hyphenated as "Trans Fat," "Trans," "Trans Fat" or "Trans" and must be indented and placed beneath "Saturated Fat" in un-bolded type [21 CFR 101.9(c)(2)(ii)].

o A statement of the number of grams of total carbohydrate per serving must be declared as "Total Carbohydrate" [21 CFR 101.9(c)(6)].

o In the "Sammie's Best™ Coffee Creamer" nutrition label, the percent Daily Value (DV) for Calcium is not rounded in accordance with 21 CFR

101.9(c)(8)(iii).

The above comments are not meant to be an all-inclusive list of deficiencies in your products and their labeling. It is your responsibility to ensure that products marketed by your firm comply with the Act and its implementing regulations. We advise you to review your website, product labels, and other labeling and promotional materials for your products to ensure that the claims you make for your products do not cause them to violate the Act.

Please send your written reply to the Food and Drug Administration, Attention: Michael J. Donovan, Compliance Officer, 22201 23rd Drive SE, Bothell, WA 98021-4421. If you have any questions regarding this letter, please contact Mr. Donovan at (425) 483-4906.

Sincerely,

/S/

Charles M. Breen
District Director

cc: **WSDA with disclosure statement**

---

**Links on this page:**

- Accessibility
- Contact FDA
- Careers
- FDA Basics
- FOIA
- No Fear Act
- Site Map
- Transparency
- Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

- USA.gov
- ✉
- 🔊
- 📧
- 📘
- 📺
- 👀
- For Government
- For Press

- Combination Products
- Advisory Committees
- Science & Research
- Regulatory Information
- Safety
- Emergency Preparedness
- International Programs
- News & Events
- Training and Continuing Education
- Inspections/Compliance
- State & Local Officials
- Consumers
- Industry
- Health Professionals

 U.S Department of **Health & Human Services**

---

**Links on this page:**

# Exhibit 5



U.S. Department of Health & Human Services

U.S. Food & Drug Administration

## Inspections, Compliance, Enforcement, and Criminal Investigations

Home•Inspections, Compliance, Enforcement, and Criminal Investigations Enforcement Actions Warning Letters

## Grand Cakes Inc. 7/15/11



Department of Health and Human Services

Public Health Service
Food and Drug Administration
San Juan District
Compliance Branch
466 Fernandez Juncos
San Juan, Puerto Rico 00901-3223
Telephone: 787-474-9500
FAX: 787-729-6658

**11-SJN-WL-12**

**July 15, 2011**

**OVERNIGHT Mail**
**Return Receipt Requested**

Mrs. Patricia Fajardo Ramos
President
Grand Cakes, Inc.
P.O. Box 6132
ST2
Bayamon, Puerto Rico 00960

Dear Mrs. Fajardo:

An investigator from the Food and Drug Administration (FDA) inspected your bakery product manufacturing facility located at Calle Barbosa No. 43, Bayamon, Puerto Rico 00960 on January 24, 25, 26 and February 7 and 9, 2011. Copies of your labeling were collected during the inspection. Review of your labels found your firm's products are not labeled in accordance with FDA's food labeling regulation, 21 CPR Part 101. These violations cause your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)", "Kanelle Bizcocho de Canela y Nueces (Mini Cakes)," "Kanelle Bizcocho de Canela y Nueces (Mini Chocolate)," and "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" products to be misbranded in violation of section 403 of the Federal Food, Drug, and Cosmetic Act (the Act) and your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)", "Kanelle Bizcocho de Canela y Nueces (Mini Cakes)," and "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" products to be adulterated in violation of section 402 of the Act. You can find the Act and the CFR through links on FDA's home page at http://www.fda.gov [1].

Your significant violations were as follows:

Violations of Food Additive and Color Additive Regulations:

Your "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" is adulterated within the meaning of section 402(a)(2)(C)(i) of the Act [21 U.S.C. § 342(a)(2)(C)(i)] in that it bears a food additive that is unsafe within the meaning of section 409(a)(2) of the Act [21 U.S.C. § 348]. Section 409(a)(2) deems a food additive to be unsafe unless its use conforms with a regulation prescribing the conditions of safe use. 21 CFR 172.804(d)(2) states that a condition of safe use for the food additive aspartame is that aspartame containing product labels must bear the statement "PHENYLKETONURICS: CONTAINS PHENYLALANINE." Your "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" product contains aspartame as a sweetener agent, but the label fails to bear the statement "PHENYLKETONURICS: CONTAINS PHENYLALANINE" on the principal display or information panel.

Your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)" and "Kanelle Bizcocho de Canela y Nueces (Mini Cakes)" products are adulterated within the meaning of section 402(c) of the Act [21 U.S.C. § 342(c)] because the products bear or contain a color additive which is unsafe within the meaning of section 721(a) of the Act [21 U.S.C. § 379(a)]. Section 721(a) deems a color additive to be unsafe unless its use is in conformity with the color additive's listing regulation. Specifically, the listing regulation for FD&C Yellow No. 5 requires that the color additive be listed by that name in the ingredient list on the labels of foods for human use [21 CPR 74.705(d)(2)]. Your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)" and "Kanelle Bizcocho de Canela y Nueces (Mini Cakes)" products are manufactured with **(b)(4)** ingredient which contains FD&C Yellow 5; however, the labels for the finished products fail to declare the presence of FD&C Yellow 5 in the ingredient statements.

Labeling Violations:

1. Your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)," "Kanelle Bizcocho de Canela y Nueces (Mini Cakes)," and "Kanelle Bizcocho de Canela y Nueces (Mini Chocolate)" products are misbranded within the meaning of section 403(k) of the Act [21 U.S.C. § 343(k)] because the products bears or contain an artificial flavoring, coloring, or chemical preservative, but fail to bear labeling stating that fact.

- In accordance with 21 CFR 101.22(k), the label of a food to which any coloring has been added shall declare the coloring in the statement of ingredients. Your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)" and "Kanelle Bizcocho de Canela y Nueces (Mini Cakes)" products are manufactured with (b)(4) ingredient containing certified color additives Yellow 5 and Yellow 6; however, the product fails to declare it on the finished product label. Furthermore, your "Kanelle Bizcocho de Canela y Nueces (Mini Chocolate)" product is manufactured with (b)(4) Chocolate Creme Cake base which also contains caramel color, Red 40 and Blue 1, which you failed to declare on the finished product label.

- In accordance with 21 CFR 101.22(h) and 21 CFR 101.22(h)(1), the label of a food to which flavor has been added shall declare the flavor in the statement of ingredients and artificial flavor may be declared as "artificial flavor." The (b)(4) used in your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)" and "Kanelle Bizcocho de Canela y Nueces (Mini Cakes)" products contain "artificial flavor" which you also fail to declare on the finished product label. Furthermore, your "Kanelle Bizcocho de Canela y Nueces (Mini Chocolate)" product is manufactured with (b)(4)Chocolate Creme Cake base which also contains "artificial flavor," which you failed to declare on the finished product label.

2. Your "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" product is misbranded within the meaning of section 403(r)(1)(A) of the Act [21 U.S.C. § 343 (r)(1)(A)] in that the label bears the nutrient content claim "Sugar Free," but fails to meet the requirements to make such a claim [21 CFR 101.60(c)(1)]. The phrase "Sugar Free" meets the definition of a nutrient content claim because it characterizes the product's level of sugar, which is a nutrient of the type required to be in nutrition labeling. To bear a "sugar free" claim, a food must contain less than 0.5 grams of sugar per reference amount customarily consumed (RACC) and per labeled serving. According to your product label, your product contains 19 of sugar per serving which fails to meet the sugar content requirement to make a "Sugar Free" claim.

3. Your "Kanelle Bizcocho de Canela y Nueces (Mini Chocolate)" product is misbranded within the meaning of section 403(w) of the Act [21 U.S.C. § 343(w)] in that the label fails to declare the major food allergen, soy, as required by section 403(w)(1) of the Act [21 U.S.C. § 343 (w)(1)].[1] The product is manufactured using "Chocolate Creme Cake Base," which contains soy, but you fail to declare the allergen on the finished product label.

4. Your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)," "Kanelle Bizcocho de Canela y Nueces (Mini Chocolate)," and "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" products are misbranded within the meaning of section 403(i)(2) of the Act [21 U.S.C. § 343(i)(2)] in that the products are fabricated from two or more ingredients and each ingredient is not declared on the label, as required by 21 CFR 101.4 (b)(2).

- All three products contain multi-component ingredients such as sour cream, pudding mix, cake flour, cream frosting and all-purpose white frosting, but fail to list the sub-ingredients. The requirement to list these component ingredients (or "sub-ingredients") may be met by either parenthetically listing the component ingredients after the common or usual name of the main ingredient [21 CFR 101.4 (b)(2)(i)], or by listing the component ingredients without listing the ingredient itself [21 CFR 101.4(b)(2)(ii)]. Under the first alternative, the component ingredients must be listed in descending order of predominance within the multi-component ingredient; and under the second alternative, the component ingredients must be listed in descending order of predominance in the finished food.

- Your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)" product declares "oil" on the label but fail to list the specific components. Under 21 CFR 101.4(b)(14), each individual fat and or oil ingredient of a food intended for human consumption must be declared by its specific common or usual name (e.g., "beef fat," "cottonseed oil") in its order of predominance in the food except that blends of fats and/or oils may be designated in their order of predominance in the foods as "__ shortening" or "blend of__ oils," the blank to be filled in with the word "vegetable," "animal," "marine," or combination of these, whichever is applicable if, immediately following the term, the common or usual name of each individual vegetable, animal, or marine fat or oil is given in parentheses, e.g., "vegetable oil shortening (soybean and cottonseed oil)."

5. Your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)," "Kanelle Bizcocho de Canela y Nueces (Mini Cakes)," "Kanelle Bizcocho de Canela y Nueces (Mini Chocolate)," and "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" products are misbranded within the meaning of section 403(q)(1) of the Act [21 U.S.C. § 343(q)(1)] in that the nutrition facts information is not in an appropriate format as defined in 21 CFR 101.9. For example:

- For all four products:

o The total calorie content is not expressed to the nearest 10-calorie increment [21 CFR 101.9(c)(1)].
o The Calories from Fat content is not expressed to the nearest 10-calorie increment for caloric content above 50 and the nearest 5-calories increment for caloric content 50 and below [21 CFR 101.9(c)(1)(ii)].
o The Total Fat content is not expressed to the nearest gram for fat content above 5 and the nearest 0.5 gram for fat content 5 and below [21 CFR 101.9(c)(2)].
o The Saturated Fat content is not expressed to the nearest 0.5-gram increment [21 CFR 101.9(c)(2)(i)].
o The Cholesterol content is not expressed to the nearest 5-milligram increment [21 CFR 101.9(c)(3)].
o Some of the Vitamin and Minerals listed are not declared to the nearest 2% increment up to the 10% level and the nearest 5% increment above the 10% up to the 50% level [21 CFR 101.9(c)(8)(iii)].

- For your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)," "Kanelle Bizcocho de Canela y Nueces (Mini Cakes),"and "Kanelle Bizcocho de Canela y Nueces (Mini Chocolate)" products the serving size declaration are "2" or "2 oz," which are not expressed in common household measure in accordance with 21 CFR 101.9(b)(5) and 21 CFR 101.12(b). For example, a sample serving size statement for your products is "_ piece(s) C g)." For the same three products, the Polyunsaturated Fat content is not expressed to the nearest 0.5-gram increment for content below 5 grams [21 CFR 101.9(c)(2)(iii)] and the Monounsaturated Fat content is not expressed to the nearest 0.5-gram increment [21 CFR 101.9(c)(2)(iv)].

- For your "Kanelle Bizcocho de Canela y Nueces (Mini Chocolate)," and "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" products, the Sodium content is not expressed the nearest 5-mg increment for sodium content between 5 and 140 and the nearest

10-mg increment for sodium content above 140 mg [21 CFR 101.9(c)(4)] and the Carbohydrate content is not expressed to the nearest gram [21 CFR 101.9(c)(6)].

• For your "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" product, the percent daily value for total carbohydrate is calculated incorrectly. Your label declares a total carbohydrate content of 27.4g and a percent daily value of 18%. Based on a recommended daily value of 300g, your product would contain a percent daily value of approximately 9% [21 CFR 101.9(c)(9)].

6. Your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)" and "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" are misbranded within the meaning of section 403(e)(2) of the Act [21 U.S.C. § 343(e)(2)] in that the labels fail to bear a statement of the net quantity of content [21 CFR 101.105].

Establishment Registration:

Furthermore, our records indicate that, to date, this facility has not been registered with FDA. Your firm is subject to the registration requirement in Section 415 of the Act [21 U.S.C. § 350d] and our implementing regulation at 21 CFR 1.225 (Subpart H). Be advised that failure to register a facility as required is a prohibited act under Section 301(dd) of the Act [21 U.S.C. § 331(dd)].

As a responsible official of an establishment that manufactures/processes, packs and holds food for human consumption in the United States, you are responsible for ensuring that your overall operations and the products you distribute are in compliance with the law.

We request that you or an individual authorized by this facility's president register the facility with FDA within 30 working days of the date of this letter. Registration may be accomplished on line at http://www.access.fda.gov [2]. We strongly encourage the use of electronic registration because it will result in an automatic confirmation of registration and automatic issuance of a registration number.

Alternatively, you or an agent in charge of this facility, or an individual authorized by the facility's president may register the establishment by mail or fax (e.g., if you do not have reasonable access to the Internet) using FDA's food facility registration form, Form 3537. This form may be obtained by calling the FDA Industry Systems Help Desk at 1-800-216-7331 or (301) 575-0156, or writing to the agency at the following address:

U.S. Food and Drug Administration, HFS-681
5600 Fishers Lane
Rockville, MD 20857

This letter may not list all the deviations at your establishment. You are reminded that it is your responsibility for ensuring that your firm operates in compliance with the regulations for Food Labeling [21 CFR Part 101] and all other applicable laws and regulations. You should take prompt action to correct these violations and to implement procedures whereby such violations do not recur. Failure to do so may result in regulatory action without further notice, including seizure and injunction.

In addition to the violations cited above, we also note that there were sanitation issues included in the List of Inspectional Observations provided to your firm and discussed with you during the inspection. You promised to correct these sanitation issues. During out next inspection, the correction of these issues will be investigated and documented.

Also, we note that in addition, your "Kanelle Bizcocho de Canela y Nueces (Cup Cakes)," "Kanelle Bizcocho de Canela y Nueces (Mini Cakes)," "Kanelle Bizcocho de Canela y Nueces (Mini Chocolate)," and "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" products are labeled to contain the ingredient "nuts" but fail to declare the type of nut, i.e., walnuts, on their labels as specified in section 403(w)(2) of the Act.

And we note that your "Kanelle Bizcocho de Canela y Nueces (Loaf Sugar Free)" product bears the claim "No Sugar Added," but fails to meet the requirements for such a claim. To make this claim, unless the food meets the requirements for "low calorie" or "reduced calorie," as defined in 21 CFR 101.60(b)(2) or 21 CFR 101.60(b)(4), the product label must also bear the statement that the product is not "low calorie" or "reduced calorie" and refer the consumer to the nutrition information for the sugar and calorie content [21 CFR 101.60(c)(2)(v)]. Your product label does not bear the additional statements required to bear the claim "No Sugar Added."

Please respond in writing within fifteen (15) working days from your receipt of this letter. Your response should outline the specific steps you are taking to correct the violations cited above. You should include in your response documentation such as documents and/or procedures implemented, copies of the revised labels for the products that your firm manufactures and distributes, or other information that would assist us in evaluating your corrections. If you can not complete all corrections before you respond, this agency expects that you will explain the reason for your delay and state when you will correct any remaining violations.

Your written reply to these concerns should be directed to the Food and Drug Administration, attention: Rafael Nevarez, Compliance Officer, at 466 Fernandez Juncos Avenue, San Juan, Puerto Rico 00901-3223. If you have any questions regarding any issue in this letter, please contact Mr. Nevarez at (787) 474-9545.

Sincerely,
/S/
Maridalia Torres
District Director
San Juan District

---

[1] Section 201(qq) of the Act [21 U.S.C. § 321(qq)] defines "major food allergens" as milk, egg, fish, Crustacean shellfish, tree nuts, wheat, peanuts, and soybeans, as well as any food ingredient that contains protein derived from one of these foods, with the exception of highly refined oils. A food is misbranded if it is not a raw agricultural commodity and it is, or it contains an ingredient that bears or contains, a major food allergen, unless either: the word "Contains" followed by the name of the food source from which the major food allergen is derived is printed immediately after or adjacent to the list of ingredient [section 403(w)(1)(A) of the Act, 21 U.S.C. § 343(w)(1)(A)], or the common or usual name of the major food allergen in the list of ingredients is followed in parentheses by the name of the food source from which the major food allergen is derived (e.g., "flour (wheat)"), except that the name of the food source is not required when either the common or usual name of the ingredient uses the name of the food source or the name of the food source appears elsewhere in the ingredient list (unless the name of the food source that

appears elsewhere in the ingredient list appears as part of the name of an ingredient that is not a major food allergen) [section 403(w)(1)(B) of the Act, 21 U.S.C. § 343(w)(1)(B)].

**Links on this page:**

1. http://www.fda.gov
2. http://www.access.fda.gov

- Accessibility
- Contact FDA
- Careers
- FDA Basics
- FOIA
- No Fear Act
- Site Map
- Transparency
- Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

- USA.gov
- 
- 
- 
- 
- 
- 
- For Government
- For Press

- Combination Products
- Advisory Committees
- Science & Research
- Regulatory Information
- Safety
- Emergency Preparedness
- International Programs
- News & Events
- Training and Continuing Education
- Inspections/Compliance
- State & Local Officials
- Consumers
- Industry
- Health Professionals

 U.S Department of **Health & Human Services**

**Links on this page:**

1. http://www.fda.gov
2. http://www.access.fda.gov

# Exhibit 6

 U.S. Department of Health & Human Services

U.S. Food & Drug Administration

## Inspections, Compliance, Enforcement, and Criminal Investigations

• 

Home▸Inspections, Compliance, Enforcement, and Criminal Investigations Enforcement Actions Warning Letters

## Today's Temptations, Inc. 3/25/10

 Department of Health and Human Services

Public Health Service
Food and Drug Administration
Chicago District
550 West Jackson Blvd., 15th Floor
Chicago, Illinois 60661
Telephone: 312-353-5863

March 25, 2010

**WARNING LETTER**

**CHI-05-10**

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Mr. Al B. Filin, President
Today's Temptations, Inc.
1900 North Austin Avenue
Chicago, Illinois 60639

Dear Mr. Filin:

The U.S. Food and Drug Administration (FDA) inspected your facility located at 1900 North Austin Avenue in Chicago, IL, October 14 -26, 2009 and verified that your firm manufactures and distributes bakery products. Our review of your product labels and other evidence collected during the inspection has determined that your products are misbranded within the meaning of section 403 of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 343]. Regulations implementing the food labeling requirements of the Act are found in Title 21, Code of Federal Regulations, Parts 101. You can find the Act and labeling regulations on FDA's website at www.fda.gov.

Your Whole Wheat bread product is misbranded within the meaning of Section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)] because the product makes nutrient content claims but does not meet the requirements to make those claims. Under Section 403(r)(1)(A) of the Act, a claim that characterizes the level of a nutrient which is of the type required to be in the label or labeling of the food must be made in accordance with a regulation promulgated by the Secretary (or by delegation, FDA) authorizing the use of such a claim. Characterizing the level of a nutrient in food labeling of a product without complying with the specific requirements pertaining to nutrient content claims for that nutrient misbrands the product under Section 403(r)(1)(A) of the Act.

Your Whole Wheat bread product makes the following claims:

o Fat Free
o Hi-Fibre
o Sugar Free
o Only 2g Digestible Carbs

Under 21 CFR 101.62(b), to use the term "fat free," a food must contain less than 0.5 grams of fat per reference amount customarily consumed (RACC) and per labeled serving. It must not contain an added ingredient that is a fat or that is generally understood to contain fat unless the ingredient statement lists the ingredient followed by an asterisk that refers to a statement indicating that the amount of fat added is insignificant. And, must either be specially processed to remove fat from the food or is labeled to disclose that fat is not usually present in the food. Your Whole Wheat bread product, however, contains canola oil which is an added ingredient generally understood to contain fat. Therefore, to use the term "fat free" in association with this product, you must indicate that the amount of fat added by canola oil is insignificant by placing an appropriate statement on the product label, in accordance with 21 CFR 101.62(b)(ii).

Under 21 CFR 101.60(c)(1), to use the term "sugar free," a food must contain less than 0.5 grams of sugars per RACC and per labeled serving. It must contain no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "add a trivial amount of

sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar." It also must be labeled "low calorie" or "reduced calorie" or bear a relative claim of special dietary usefulness labeled in compliance with 21 CFR 101.60(b). Your product fails to meet the requirements of 21 CFR 101.60(c)(1)(iii) for the sugar free claim.

The statement "Only 2g Digestible Carbs" is an unauthorized nutrient content claim. FDA has not defined this claim for use on food products.

In addition, your Whole Wheat bread product is misbranded within the meaning of Section 403(w) of the Act [21 U.S.C. § 343(w)] because the label fails to declare the presence of a major food allergen. Specifically, your product fails to declare eggs. Section 201 (qq) of the Act [21 U.S.C. § 321 (qq)] defines as "major food allergens" milk, egg, fish, Crustacean shellfish, tree nuts, wheat, peanuts, and soybeans, as well as any food ingredient that contains protein derived from one of these foods, with certain limited exceptions. A food is misbranded if it is not a raw agricultural commodity and it is, or it contains an ingredient that bears or contains, a major food allergen, unless either:

The word "Contains," followed by the name of the food source from which the major food allergen is derived, is printed immediately after or adjacent to the list of ingredients [section 403(w)(1)(A) of the Act, 21 U.S.C. § 343(w)(1)(A)]; or

The common or usual name of the major food allergen in the list of ingredients is followed in parentheses by the name of the food source from which the major food allergen is derived, except that the name of the food source is not required when either the common or usual name of the ingredient uses the name of the food source or the name of the food source appears elsewhere in the ingredient list (unless the name of the food source that appears elsewhere in the ingredient list appears as part of the name of an ingredient that is not a major food allergen) [section 403(w)(1)(B) of the Act, 21 U.S.C. § 343(w)(1)(B)].

Your Kolaczki Cookies are misbranded within the meaning of Section 403(i)(2) of the Act [21 U.S.C. § 343(i)(2)] because they are fabricated from two or more ingredients and each ingredient is not declared on the label as described in 21 CFR 101.4(b)(2). For example:

• Your Kolaczki Cookies ingredient statement lists margarine but fails to list the multi-ingredient components of margarine. The standard of identity for margarine listed in 21 CFR 166.110(d) requires that each ingredient used in margarine be declared on the label, as required in 21 CFR Part 101.

The requirement to list these component ingredients (or "sub-ingredients") may be met by either parenthetically listing the component ingredients after the common or usual name of the main ingredient [21 CFR 101.4(b)(2)(i)], or by listing the component ingredients without listing the ingredient itself [21 CFR 101.4(b)(2)(ii)]. Under the first alternative, the component ingredients must be listed in descending order of predominance within the multi-component ingredient; and under the second alternative, the component ingredients must be listed in descending order of predominance in the finished food.

Your Whole Wheat bread, Almond Coffee Cake, Kolaczki Cookies, and Plain Pound Cake products are misbranded within the meaning of Section 403 (q) of the Act [21 U.S.C. 343(q)] in that the product labels do not contain nutrition facts information in an appropriate format as defined in 21 CFR 101.9. For example:

• Kolaczki Cookies and Plain Pound Cake

o These products do not have nutrition information, and they are not exempt from the requirement to bear a Nutrition Facts panel under 21 CFR 101.9. Your firm may be eligible to file for a small business nutrition labeling exemption for products which do not provide nutrition information, nutrient information, nutrient content or health claims on the labels, labeling or advertising. In accordance with 21 CFR 101.9(j) (18), a firm may qualify for this exemption if the firm has fewer than 100 full time employees and fewer than 100,000 units of a product are being sold in the United States, provided that the product labels, labeling, and advertising do not provide nutrition information or make a nutrient content or health claim. A firm is required to file an exemption notice each year with FDA unless the firm has fewer than 10 full time equivalent employees. We have no record of your firm having filed a Small Business Nutrition Labeling Exemption Notice.

• Whole Wheat bread

o The product label fails to declare the serving size in common household measures as required by 21 CFR 101.9(b)(7).
o The product label fails to declare a statement of the amount per serving of the vitamins and minerals as described as required by 21 CFR 101.9(c)(8).
o The product label fails to include a footnote that states, "Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs … " as required by 21 CFR 101.9(d)(9).
o The product label fails to include the grams of the sugar alcohol, malitol syrup, in accordance with 21 CFR 101.9(c)(6)(iii). A statement of the number of grams of sugar alcohol per serving must be declared in the nutrient label when a claim is made in reference to sugar or sugar alcohols.

• Almond Coffee Cake

o The product label fails to declare the serving size in common household measures as required by 21 CFR 101.9(b)(7).
o The nutrients are not listed in the required order in accordance with 21 CFR 101.9(c).
o The product label fails to declare a statement of the amount per serving of the vitamins and minerals as described as required by 21 CFR 101.9(c)(8).
o The product label fails to include a footnote that states, "Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs... " as required by 21 CFR 101.9(d)(9).

The above observations are not intended to provide an all-inclusive list of the violations at your facility. It is your responsibility to ensure compliance with applicable laws and regulations administered by FDA. The specific violations noted in this letter may be symptomatic of serious problems in your firm's current good manufacturing practices. You should investigate and determine the causes of the violations, and take prompt actions to correct the violations and to bring your products into compliance. Failure to promptly correct these violations may result in regulatory action without further notice, such as seizure or injunction.

In addition to the deviations noted above, we have the following additional comments regarding the labeling for your products:

The fiber content of your Whole Wheat bread product, as declared on its label, meets the 20 percent of the daily reference value (DRV) for fiber based on the 50 gram RACC, which is required to make a high fiber nutrient content claim under 21 CFR 101.54(b); however, because the product does not meet the criteria per labeled serving, your high fiber claim must be followed by the criteria for the claim as required by 21 CFR 101.12(g). You must state, e.g., "high fiber, 5 grams or more per serving of bread (__ piece(s)(50 grams)." See 21 CFR 101.13(p)(1).

Your Almond Coffee Cake contains an almond filling. If the almond filling is a multi-component food, you must list all sub-ingredients in accordance with 21 CFR 101.4(b)(2)(i) or 21 CFR 101.4(b)(2)(ii). In addition, your Kolaczki Cookies list assorted fillings in the ingredient statement; each filling used to manufacture your Kolaczki Cookies must be specified and all ingredients used in those fillings must be declared in the ingredient statement.

The statement of identity for your Whole Wheat bread product does not include the word "bread" as required by 21 CFR 101.3.

The net quantities of contents on your Whole Wheat bread product, Almond Coffee Cake, Kolaczki Cookies, and the Plain Pound Cake labels are not declared in accordance with the requirements in 21 CFR 101.105(j)(1) and the examples in 101.105(m)(1).

The product labels for your Almond Coffee Cake and Whole Wheat bread product fail to include hairlines to separate the text of each Nutrient and Percent Daily Value from the Nutrient and Percent Daily Value above and below it as required by 21 CFR 101.9(d)(1)(v).

Your Whole Wheat bread product label includes the statement, "Good for diabetics." FDA has not stated that a specific food is more useful than another food in the diet of a diabetic. Prior to June 1996, there was a special dietary regulation (21 CFR 105.67) that provided for the special dietary claim "may be useful in the diet of diabetics" on food product labels. In the Federal Register (FR) of June 3,1996 (61 FR 27771), the FDA revoked 21 CFR 105.67. The FDA concluded, consistent with current dietary advice, that the provisions for diabetic labeling in 21 CFR 105.67 are outdated and misleading. The agency also stated that the health claim provisions in Section 403(r) of the Act provide an adequate regulatory framework to prevent any use of the term "diabetic" that is not scientifically valid or that is misleading. Since publication of the June 3, 1996 FR announcement, we have been discouraging the marketing of foods specifically for diabetics. Therefore, we recommend you remove the language from the label of your Whole Wheat bread product.

The FDA has also determined that your facility is subject to the registration requirement in Section 415 of the Act [21 U.S.C. § 350d] and FDA's implementing regulation at 21 CFR Part 1, Subpart H. During our inspection at your facility, you were advised of this requirement. Our records indicate that, to date, your facility has not registered with FDA. The failure to register a facility as required is a prohibited act under Section 301 (dd) of the Act [21 U.S.C. § 331(dd)]. Please register your facility immediately. Registration may be accomplished online at http://www.access.fda.gov. We strongly encourage the use of electronic registration because it will result in an automatic confirmation of registration and automatic issuance of a registration number. Alternatively, you may contact the FDA Industry Systems Help Desk at 1-800-216-7331 or 301-575-0156 to inquiry about mail or fax registration and related forms.

On June 11, 2009, FDA issued your firm an Untitled Letter as a result of a label review for your Whole Wheat bread product. The FDA's review of the product label found that the product was misbranded within the meaning of the Act. As of March 23, 2010, the Chicago District Office has not received any written correspondence from your firm indicating corrective actions have been implemented since the issuance of the FDA483, Inspectional Observations, on October 26, 2009.

Please notify this office in writing within fifteen (15) working days from the date you receive this letter of the specific steps you have taken to correct the noted violations, including an explanation of how you plan to prevent these violations, or similar violations, from occurring again. Include documentation of the corrective action you have taken. If your planned corrections will occur over time, please include a timetable for implementation of those corrections. If corrective action cannot be completed within 15 working days, state the reason for the delay and the time within which the corrections will be completed.

Please send your reply to the U.S. Food and Drug Administration, Attention: Ms. Rosemary Sexton, Compliance Officer, Food and Drug Administration located at 550 W. Jackson Blvd., 16th Floor, Chicago, IL 60661. If you have questions regarding any issues in this letter, please contact Ms. Sexton at 312-596-4225 or rosemary.sexton@fda.hhs.gov.

Sincerely,
/S/
Scott J. MacIntire
District Director

---

**Links on this page:**

- Accessibility
- Contact FDA
- Careers
- FDA Basics
- FOIA
- No Fear Act
- Site Map
- Transparency
- Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

- USA.gov
-
- 
- 
- 
- 
- 

- For Government
- For Press

- Combination Products
- Advisory Committees
- Science & Research
- Regulatory Information
- Safety
- Emergency Preparedness
- International Programs
- News & Events
- Training and Continuing Education
- Inspections/Compliance
- State & Local Officials
- Consumers
- Industry
- Health Professionals

U.S Department of **Health & Human Services**

**Links on this page:**

# Exhibit 7


**U.S Department of Health & Human Services**

U.S. Food & Drug Administration

## Inspections, Compliance, Enforcement, and Criminal Investigations

Home Inspections, Compliance, Enforcement, and Criminal Investigations Enforcement Actions Warning Letters

## Florida Bottling, Inc.


Department of Health and Human Services

Public Health Service
Food and Drug Administration
555 Winderley Pl., Ste. 200
Maitland, FL 32751

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**WARNING LETTER**

FLA-10-24

July 8, 2010

Mr. Thomas R. Fuhnnan
Florida Bottling, Inc
1035 NW 21st Terrace
Miami, FL 33127

Dear Mr. Fuhnnan:

The U.S. Food and Drug Administration (FDA) inspected your facility located at 1035 NW 21st Terrace, Miami, FL 33127 and established that your firm manufactures and distributes beverage products. The FDA also reviewed your website at www.lakewoodjuices.com [1] in June 2010 and have determined that this site constitutes labeling under section 201(m) of the Federal Food, Drug and Cosmetic Act (the Act). The FDA has determined that your Fresh Pressed Blueberry Blend, Pure Aloe, Pure Pomegranate (organic), and Tart Cherry juice products are in violation of the Act. You may find the Act and the Code of Federal Regulations for Food Labeling at FDA's home page at www.fda.gov [2].

**Unapproved New Drug**

Your product labels and your websites at www.lakewoodjuices.com [3] and www.floridabottling.com [4], promote your juice beverage products for conditions that cause them to be drugs under section 201(g)(1) of the Act [21 U.S.C. § 321(g)(1)]. The therapeutic claims on your website establish that the products are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of disease. The marketing of these products with these claims violates the Act. Examples of some of the disease claims on your product labels and observed on your website include:

Fresh Pressed Blueberry Blend label and webpage:

- "[R]educes infections"

Pure Pomegranate (organic) label and webpage:

- "Powerful antioxidant with anti-adhesion effects to fight artherosclerosis [sic]"
- "Ellagic acid to help inhibit the growth of cancer cells"

Pure Aloe:

- Label:

  o "Reduce Swelling in Joints"
  o "Healing Bums and Wounds"
  o "Effective Skin Emollient with Antibacterial, Antifungal and Antiviral Properties"

- Website:

o "Drinking aloe vera juice can aid in the healing of ... ulcers ...."

Tart Cherry label and webpage:

- "Reduce the Pain of Arthritis, Gout ..."

Your products are not generally recognized as safe and effective for the above referenced, uses; therefore, the products are "new drugs" under section 201(P) of the Act [21 U.S.C. § 321(P)]. New drugs may not be legally marketed in the US. without prior approval from the FDA, as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective. In addition, your products are offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; hence, adequate directions for use cannot be written so that a layperson can use these drugs safely for their intended use. Therefore, your products are also misbranded within the meaning of section 502(f)(1) of the Act, in that the labeling for these drugs fails to bear adequate directions for use [21 U.S.C. § 352(f)(1)].

## Unauthorized Health Claims

Even if your product labeling did not include claims that cause your products to be drugs, your Fresh Pressed Blueberry Blend and Tart Cherry juice beverage products are misbranded foods under section 403(r)(1)(B) of the Act [21 US.C. § 343(r)(1)(B)] because the labeling bears unauthorized health claims. Your product labels and your website, www.lakewoodjuices.com[5]. were reviewed and were found to contain a number of unauthorized health claims, including:

Fresh Pressed Blueberry Blend label and webpage:

- "Heart Healthy"
- "Reduction of risk factors related to Cancer, Heart Disease, Stroke & Alzheimer's"

Tart Cherry label and webpage:

- "Heart Healthy"
- "Reduce the Risk Factors Related to Heart Disease"

The claim "heart healthy" is an implied health claim that characterizes that relationship between these juice products and reduced risk of heart disease. All of the above claims are unauthorized health claims because there is no health claim authorized by regulation or the Act that provides for health claims that characterize the relationship between these juice products and heart disease, cancer, stroke, or Alzheimer's disease.

## Unauthorized Nutrient Content Claims

Under section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)], a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary. (and, by delegation, FDA) authorizing the use of such a claim. The use of a term not defined by regulation in food labeling to characterize the level of a nutrient misbrands a product under section 403(r)(1)(A) of the Act.

Nutrient content claims using the terms "high," "rich in," or "excellent source of" may be used on the label and in the labeling of foods provided that the food contains 20 percent or more of the reference daily intake (RDI) or the daily reference value (DRV) per reference amount customarily consumed (RACC) [21 CFR 101.54(b)(1)]. Therefore, claims made on the label and website for your Pure Aloe juice beverage product are unauthorized nutrient content claims because, according to the label, the product contains less than the required 20 percent RDI or DRV per RACC of the nutrient for which the claim is made. Specifically, your Pure Aloe product label and webpage bear the claim "Excellent sources of ... Fiber ...." The Nutrition Facts panel declares that a 4 fl oz serving of the product contains 8% of the Daily Value for fiber. The RACC for fruit juices is 240 mL, or 8 fl oz; therefore, this product contains only 16% of the Daily Value for fiber per RACC.

Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, an RDI must have been established for each of the nutrients that are the subject of the claim [21 CFR 101.54(g)(1)], and these nutrients must have recognized antioxidant activity [21 CFR 101.54(g)(2)]. The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e) [21 CFR 101.54(g)(3)]. Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity [21 CFR 101.54(g)(4)]. The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under 403(r) (1)(A) of the Act. Therefore, the claims "Super Anti-Oxidant" and "Tremendous Source of Anti-Oxidants" for your Pure Aloe product are unauthorized nutrient content claims because the source of the antioxidant is not identified with use of the term as required in 21 CFR 101.54(g) (4).

Your Tart Cherry product 'label bears the unauthorized nutrient content claims "Tremendous Source of Anti-Oxidants" and "Organic Grape Seed: Tremendous Anti-Oxidant Values." The terms "tremendous source" and "tremendous" characterize the level of antioxidant nutrients in the product and, therefore, these claims are nutrient content claims (see section 403(r)(1) of the Act and 21 CFR 101.13(b)). Even if we determined that the terms "tremendous source" and "tremendous" could be considered synonyms for a term defined by regulation (e.g., "good source" or "high"), nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). The above claims do not include the nutrients that are the subject of the claims or use a symbol to link the term "antioxidant" to those nutrients, as required by 21 CFR 101.54(g)(4). Thus, these unauthorized nutrient content claims cause your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

Your Tart Cherry product label also bears the unauthorized nutrient content claims "Enriched with: Organic Rose Hips: Rich in Bio-Flavonoids for free radical protection" and "Enriched with ... Organic Grape Seed," and your Pure Pomegranate (organic) label bears the unauthorized nutrient content claim "Rich in polyphenols & flavonoids to combat free radical damage." The terms "enriched" and "rich in" are defined by regulation and may be used to describe the level of certain substances for which an RDI or Daily Reference Value (DRV) has been established (21 CFR 101.54(b) and (e). Therefore, because rose hips, grape seed, polyphenols, and flavonoids do not have an established RDI or DRV, these claims are

unauthorized.

## Other Food Labeling Violations

Your Fresh Pressed Blueberry Blend, Pure Pomegranate (organic), Pure Aloe, and Tart Cherry juice beverage products are further misbranded within the meaning of Section 403(q)(1) of the Act [21 U.S.C. 343(q)(1)] because the nutrition facts information is not in the proper format as defined in 21 CFR 101.9. Specifically, the Pure Aloe, Pure Pomegranate (organic), Tart Cherry, and Fresh Pressed Blueberry Blend product labels fail to properly declare the serving size as specified by 21 CFR 101.9(b) and 101.12(b). The serving size for a fruit juice product is based on the RACC, which is 240 mL, or 8 fl oz. However, the Pure Pomegranate (organic), Pure Aloe, and Fresh Pressed Blueberry product labels declare a serving size of 4 fl oz, and the Tart Cherry label declares a serving size of 6 fl oz.

Your Organic Pure Aloe juice beverage product is misbranded within the meaning of section 403(i)(2) of the Act [21 U.S.C. § 343(i)(2)] because the percentage of fruit juice is declared in the incorrect format. Specifically, 21 CFR 101.30(e)(1) requires that the percent juice statement appear near the top of the information panel with no other printed label information appearing above the statement except the brand name, product name, logo, or universal product code. Your product label includes the statement "Contains Pure Aloe Vera Fortified & Enriched" above your percent juice statement.

The above violations are not meant to be an all-encompassing list of deficiencies in your products and their labeling. It is your responsibility to ensure that products marketed by your firm comply with the Act and its implementing regulations. We urge you to review your websites, product labels, and other labeling or promotional materials for your products to ensure that the claims you make for your products do not cause them to violate the Act. You should take prompt action to correct these violations and prevent their future recurrence. Failure to correct these violations may result in regulatory actions without further notice, such as seizure and/or injunction [21 U.S.C. §§ 332 and 334].

We also have the following additional comments regarding your labels:

- Your Fresh Pressed Blueberry Blend product label does not comply with the requirements for declaring the statement of identity. Specifically, in a diluted multiple-juice blend or blend of single-strength juices where one or more, but not all, of the juices are named on the label other than in the ingredient statement, and where the named juice is not the predominant juice, the common or usual name for the product shall either indicate that the named juice is present as a flavor or flavoring (21 CFR 102.33(d)(1)) or include the amount of the named juice, declared in a 5-percent range (21 CFR 102.33(d)(2)). The named juice in this product is blueberry juice, and the ingredient statement indicates that blueberry juice is not the predominant juice because it is not listed first in the ingredient statement. However, the statement of identity does not indicate that blueberry juice is present as a flavor or flavoring (e.g., "Apple and Blueberry Juice Beverage") or include the amount of blueberry juice.

- Your Fresh Pressed Blueberry Blend, Pure Pomegranate (organic), Pure Aloe, and Tart Cherry product labels declare a percent Daily Value (% DV) for *trans* fat on the "Nutrition Facts" panel. A % DV for *trans* fat has not been established; consequently, it cannot be declared on the label.

- The Organic Pure Aloe product label fails to bear a common or usual name that accurately describes the basic nature of the product or its characterizing properties or ingredients [21 CFR 102.5]. Since the ingredient statement contains "organic lemon juice" and "organic lime juice," it appears to be a juice in a blend of two other fruit juices, and the common or usual name should signify that the product is a juice blend.

- The information panel of your Organic Tart Cherry product label bears a logo that separates the Nutrition Facts panel from the name and place of business of the firm. Under 21 CFR 101.2(e), all information required to appear on the information panel must appear in one place without other intervening material.

- Your Fresh Pressed Blueberry Blend label expresses the number calories from fat as 2. Under 21 CFR 101.9(c)(1)(ii), the number of calories from fat must be expressed to the nearest 5-calorie increment, but amounts less than 5 calories may be expressed as zero. Except as provided under 21 CFR 101.9(f), if calories from fat are not required and are not declared, the statement "Not a significant source of calories from fat" must be placed at the bottom of the table of nutrient values in the same type size [21 CFR 101.9(c)(1)(ii)].

- According to their labels, your Fresh Pressed Blueberry Blend, Tart Cherry, and Pure Pomegranate (organic) products contain 1, 4, and 3 mg of sodium, respectively, per serving. Under 21 CFR 101.9(c)(4), the number of milligrams of sodium in a serving must be expressed as zero when the serving contains less than 5 mg of sodium.

- According to their labels, your Fresh Pressed Blueberry Blend and Pure Pomegranate (organic) products contain 0.5 g of protein per serving. The number of grams of protein in a serving must be expressed to the nearest gram; however, if a serving contains less than 1 gram, the statement "Contains less than 1 gram" or "less than 1 gram" may be used as an alternative [21 CFR 101.9(c)(7)].

- Your Pure Pomegranate (organic) product declares that each serving contains 0.5 grams of dietary fiber. Under 21 101.9(c)(6)(i), the number of grams of total dietary fiber per serving must be expressed to the nearest gram, except that if a serving contains less than 1 gram, declaration of dietary fiber is not required or, alternatively, the statement "Contains less than 1 gram" or "less than 1 gram" may be used [21 CFR 101.9(c)(6)(i)].

- Your Pure Aloe label does not express total calories to the nearest 5-calorie increment up to and including 50 calories, as required by 21 CFR 101.9(c)(1)]. Your product declares Total Calories as 4.

- Your Fresh Pressed Blueberry Blend, Pure Pomegranate (organic), and Tart Cherry juice products do not express all of the percentages for vitamins and minerals to the nearest 2-percent increment up to and including the 10-percent level, as required by 21 CFR 101.9(c)(8)(iii).

- Your Pure Aloe juice label does not list Vitamin A, calcium, and iron as required by 21 CFR 101.9(c)(8)(ii).

Please respond to this Warning Letter within fifteen (15) days from receipt with the actions you plan to take in response to this letter, including an explanation of each step being taken to correct the current violations and prevent similar violations. Include any documentation necessary to show that correction has been achieved. If you cannot complete the corrective actions within fifteen working days, state the reason for the delay and the

time within which you will complete the correction.

You should direct your written reply to the Food and Drug Administration, Attention: Carla A. Norris, Compliance Officer, Maitland District Office, 555 Winderley Place, Suite 200, Maitland, Florida, 32751. If you have questions regarding any issues in this letter, please contact Carla Norris at (407) 475-4730.

Sincerely,
/S/
Emma R. Singleton
Florida District Director

## Close out Letter

- Florida Bottling, Inc. Close out Letter 3/31/11 [6]

---

## Links on this page:

1. http://www.lakewoodjuices.com

2. http://www.fda.gov

3. http://www.lakewoodjuices.com

4. http://www.floridabottling.com

5. http://www.lakewoodjuices.com

6. /ICECI/EnforcementActions/WarningLetters/ucm250370.htm


- Accessibility
- Contact FDA
- Careers
- FDA Basics
- FOIA
- No Fear Act
- Site Map
- Transparency
- Website Policies


U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

- USA.gov
- 
- 
- 
- 
- 
- 

- For Government
- For Press

- Combination Products
- Advisory Committees
- Science & Research
- Regulatory Information
- Safety
- Emergency Preparedness
- International Programs
- News & Events
- Training and Continuing Education
- Inspections/Compliance
- State & Local Officials

- Consumers
- Industry
- Health Professionals

 U.S Department of **Health & Human Services**

---

Links on this page:

1. http://www.lakewoodjuices.com
2. http://www.fda.gov
3. http://www.lakewoodjuices.com
4. http://www.floridabottling.com
5. http://www.lakewoodjuices.com
6. /ICECI/EnforcementActions/WarningLetters/ucm250370.htm

Exhibit 8

 U.S Department of Health & Human Services

U.S. Food & Drug Administration

## Inspections, Compliance, Enforcement, and Criminal Investigations

Home•Inspections, Compliance, Enforcement, and Criminal Investigations Enforcement Actions Warning Letters

## Haelan Products 1/15/09

 **Department of Health and Human Services**

Public Health Service
Food and Drug Administration

Seattle District
Pacific Region
22201 23rd Drive SE
Bothell, WA 98021-4421

Telephone: 425-486-8788
FAX: 425-483-4996

January 15, 2009

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

In reply refer to Warning Letter SEA 09-10

Joseph E. Todesco, President
Haelan Products, Inc.
18568 142nd Avenue Northeast
Woodinville, Washington 98072-8520

**WARNING LETTER**

Dear Mr. Todesco:

During an inspection of your firm on September 10 and 11, 2008, an investigator from the United States Food and Drug Administration (FDA) collected your firm's label for the product Platinum Formula Haelan 951 Fermented Soy Beverage (Haelan 951). Our review of the product label noted that it lists your website at the Internet address www.haelan951.com. Although your product label and website describe Haelan 951 as a "beverage" (i.e., a conventional food) or "nutritional supplement," promotional claims on your website cause the product to be a drug under section 201(g)(1)(B) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. 321(g)(1)(B)]. You can find copies of the Act and FDA's regulations through links on FDA's website at www.fda.gov [1].

Under the Act, articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man are drugs [section 201(g)(1)(B) of the Act]. The labeling for Haelan 951 on your website bears the following claims demonstrating your product's intended use as a drug:

- "Clinical trials prove that Haelan's fermented soy beverages, when used in combination with chemotherapy and radiation, protect the cancer patient from the toxic side effects."
- "Haelan's protection from the adverse side effects of chemotherapy and radiation was excellent in a clinical study involving 318 patients (276 receiving chemotherapy and the balance radiation). Haelan's 951 reduced the toxicity of the side effects of the treatments and, in addition, none of the patients required a blood transfusion nor did anyone have to discontinue a scheduled course of treatment because of physical weakness."
- "Prior research indicates the combined use of Haelan 951 and chemothreapy [sic] will result in protected [sic] the cancer patient from the toxic effects of the chemothreapy [sic] treatments as well as increase the chemotherapy's cancer cell kill to a minimum of 8-10 times greater than is experienced from the use of chemothreapy [sic] by itself."
- "Haelan Research Foundation, Inc.... has committed to fund several clinical studies to facilitate research in te [sic] fermented soy based nutritional studies as an adjuvant to the .... current conventional based [t]reatment regimes for all types of cancers and HIV/AIDS Pilot and randomized clinical trials are being conducted to assess the impact of Haelan's fermented soy based nutritional supplementation on life extension and life enhancing threapies [sic] including, but not limited to, improvements in pain management, tumor reduction, immune functioning and quality of life."
- "We have secured an Investigational New Drug (IND) status from the FDA for formal clinical study of prostate cancer patients. Case studies of persons using Haelan 951 have been submitted for review to assess Haelan 951 merit and accepted by the National Cancer Institute (NCI) for their Best Case Series (BCS)."
- "Our research approach broadens the scope of our products, notably Haelan 951, to look at other disease states particularly chronic auto-immune disorders, degenerative diseases: cancers, heart disease, asthma, and diabetes."
- "[C]onsumption of soybeans significantly decreased chemically induced rodent mammary cancer.... Whether the soybeans were raw or cooked made no difference in the degree of inhibition of mammary cancer..."
- "Frequently Asked Questions... 4. If Haelan has many successes, why is it not more widely publicized as a cancer cure? There have been about 6,000 overall cases over the last eight years Haelan Products has been in business."

This list of claims is not intended to be all-inclusive, but represents the types of claims found on your product labeling.

These claims cause Haelan 951 to be a drug, as defined in section 201(g)(1)(B) of the Act [21 U.S.C. 321(g)(1)(B)]. Because Haelan 951 is not generally recognized as safe and effective for the above referenced uses, the product is also a "new drug" as defined in section 201(p) of the Act [21 U.S.C. 321(p)]. Under section 505(a) of the Act [21 U.S.C. 355(a)], a new drug may not be legally marketed in the United States without an approved New Drug Application (NDA). FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

Because this product is offered for conditions which are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners, adequate directions cannot be written so that a layman can use them safely for their intended uses. Therefore, Haelan 951 is also misbranded within the meaning of section 502(f)(1) of the Act, in that the labeling for this drug fails to bear adequate directions for use [21 U.S.C. 352(f)(1)].

Even if your product Haelan 951 did not include the above claims in its labeling that cause it to be a drug, Haelan 951 would still be misbranded as a food under section 403(a)(1) of the Act [21 U.S.C. 343(a)(1)] because of the following statement on your website www.haelan951.com: "Haelan 951 is approved by the Food and Drug Administration (FDA) for distribution as a nutritional supplement." This statement is false and misleading because FDA does not approve distribution of conventional foods or dietary supplements.

Further, because your product is an article used for food or drink by humans as described in section 201(f) of the Act [21 U.S.C. 321(f)] and does not meet the definition of a dietary supplement in section 201(ff) of the Act [21 U.S.C. 321(ff)], Haelan 951 is subject to regulation as a conventional food as well as a drug. Haelan 951 is not a dietary supplement for at least two reasons:

- Haelan 951 is represented as a conventional food [section 201(ff)(2)(B) of the Act] because it is characterized as a "beverage" on the product label and on your website, and because its label contains a "Nutrition Facts" panel applicable to conventional foods instead of a "Supplement Facts" panel applicable to dietary supplements. See also section 403(q)(5)(F) of the Act[21 U.S.C. 343(q)(5)(F)]; 21 CFR 101.9, 101.36.
- Haelan 951 is not labeled as a dietary supplement [section 201(ff)(2)(C) of the Act].

As a conventional food, your product is also misbranded under section 403(q) of the Act[21 U.S.C. § 343(q)] because of the following Nutrition Facts panel violations:

- Your product fails to declare trans fat in its Nutrition Facts panel as specified by 21 CFR 101.9(c)(2)(ii). Regulations requiring the declaration of trans fat went into effect on January 1, 2006 [see 21 CFR 101.9(c)(2)(ii); 68 FR 41433]. You should review all of your product labels to ensure they comply with these regulations. For additional information on trans fat labeling, go to http://www.cfsan.fda.gov/~dms/lab-cat.html#transfat.
- Your product fails to properly declare its serving size as specified by 21 CFR 101.9(b) and 101.12(b). Serving sizes are determined based on the Reference Amounts Customarily Consumed (RACC), which are set forth in 21 CFR 101.12(b). The Haelan 951 label declares the product's serving size as "4 fl oz (118ml)," but based on the RACC for "Beverages: Carbonated and noncarbonated beverages," the correct serving size is 8 fl oz (240 mL). 21 CFR 101.12(b), Table 2.

You should take prompt action to correct the violations cited in this letter. Failure to promptly correct these violations may result in legal action without further notice, including, without limitation, seizure and injunction. Other federal agencies may take this Warning Letter into account when considering the award of contracts.

Within fifteen (15) working days of receipt of this letter, please notify this office in writing of the specific steps you have taken to correct violations. Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

In addition to the above violations, we have the following comments:

- FDA reviewed other websites that include promotional claims that Haelan 951 cures," mitigates, treats, or prevents disease. Specifically, www.haelanproducts.com references Haelan 951 by name at the top of each page, includes your company's contact information, includes a printable order form for Haelan 951, includes certain text that is exactly the same as text on the www.haelan951.com website, and includes numerous promotional claims concerning use of Haelan 951 as a drug. If you own or control www.haelanproducts.com, it is your responsibility to ensure that statements on this website do not cause your product to violate the Act.
- Another website, www.haelanresearchfoundation.com, also references Haelan 951 by name and includes claims that the product cures, mitigates, treats or prevents disease. Haelan Research Foundation, Inc. and its research are also specifically referenced on your website (www.haelan951.com). The Haelan Research Foundation uses the same mailing address as your company, and you indicated to the FDA investigator that brochures stored in your facility belonged to the Haelan Research Foundation. If you own or control www.haelanresearchfoundation.com, it is your responsibility to ensure that statements on this website do not cause your product to violate the Act.
- "Your website states: "For those who cannot drink the beverage orally, Haelan 951 can be used as a retention enema." When intended for use as an enema, the product is not a conventional food or a dietary supplement because conventional foods and dietary supplements must be intended for ingestion. Promoting Haelan 951 for use as an enema subjects the product to regulation as a drug if it is intended for use either to diagnose, cure, mitigate, treat, or prevent disease [section 201(g)(1)(B) of the Act], as discussed above, or to affect the structure or function of the body [section 201(g)(1)(C) of the Act].

Your response should be sent to the Food and Drug Administration, Seattle District Office, 22201 23rd Drive SE, Bothell, Washington, 98021-4421, to the attention of Lisa M. Althar, Compliance Officer. Should you have any questions concerning this letter, you can contact Ms. Althar at (425) 483-4940.

Sincerely,

/S/

Charles M. Breen
District Director

**Links on this page:**

1. http://www.fda.gov

- Accessibility

- Contact FDA
- Careers
- FDA Basics
- FOIA
- No Fear Act
- Site Map
- Transparency
- Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

-  USA.gov
- 
- 
- 
- 
- 
- 
- For Government
- For Press

- Combination Products
- Advisory Committees
- Science & Research
- Regulatory Information
- Safety
- Emergency Preparedness
- International Programs
- News & Events
- Training and Continuing Education
- Inspections/Compliance
- State & Local Officials
- Consumers
- Industry
- Health Professionals

U.S Department of **Health & Human Services**

Links on this page:

1. http://www.fda.gov