Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA 95008
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSAN IVIE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KRAFT FOODS GLOBAL, INC., CADBURY ADAMS USA LLC, and BACK TO NATURE FOODS COMPANY,<br><br>Defendants. | Case No. CV 12-02554 RMW<br><br>**AMENDED CLASS ACTION AND REPRESENTATIVE ACTION**<br><br>**AMENDED COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Susan Ivie ("Plaintiff") through the undersigned attorneys, brings this lawsuit against Defendants Kraft Foods Global, Inc. ("Kraft FG"), Cadbury Adams USA LLC ("Cadbury"), , Back To Nature Foods Company ("Back to Nature")(collectively "Defendants") upon personal knowledge as to Plaintiff's own acts, and as to all other matters upon information and belief. In order to remedy the harm arising from Defendants' illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of a California class of consumers

who within the last four years purchased Defendants': (1) "sugar free" or "sugarless" gum, breath mints or hard candies, or (2) products labeled with the ingredient "evaporated cane juice" or 3) food products distributed or sold by Defendants that were A) labeled or advertised as "natural" or "all natural" despite containing artificial, synthetic or unnatural ingredients, flavorings, coloring, and/or chemical preservatives; B) labeled or advertised as having no artificial flavors, colors or preservatives despite containing artificial flavors, colors or preservatives; C) labeled or advertised with a nutrient content claim despite containing a disqualifying amount of fat, saturated fat, sodium or cholesterol exceeding the levels listed in 21 C.F.R. 101.13(h); D) labeled or advertised with a defined nutrient content term listed in 21 C.F.R. 101.54, but failing to satisfy the requirements for the use of that term; or E) labeled or advertised as healthy despite containing disqualifying nutrient levels exceeding the levels listed in 21 C.F.R.101.65 (referred to herein as "Misbranded Food Products").

## INTRODUCTION

1.      Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods. This case is about companies that that flout those laws. The law, however, is clear: "misbranded" food (defined below) cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their purchase price.

2.      Defendants are among the world's leading producers of food products. Defendants' Misbranded Food Products are sold to consumers through grocery stores and other retail stores throughout California.

3.      Defendants recognize that health claims drive sales, and actively promote the health benefits of their products. Defendants have promoted the health and nutritional profiles of their products by trying to highlight various purported attributes of their products. In doing so, however, they have violated a number of California and federal labeling laws that restrict a

company's ability to highlight health and nutritional claims of a suspect nature. Defendants have also run afoul of California and federal regulations that prohibit companies from touting supposedly positive nutritional aspects of their products while concealing or failing to disclose that those products contain disqualifying nutrients at levels the state and federal regulators have concluded raise the risk of a diet-related disease or health-related condition.

4.    In recent years, responding to consumer demand for natural, healthy, nutritious, sugar free, and low-calorie foods has become a central part of Defendants' business models and marketing strategies, even though Defendants' products are various forms of processed foods, snack food, candy and confectionery that (a) are not natural (b) fail to satisfy the regulatory requirements for Defendants' nutrient content and health claims; (c) lack the nutritional profiles consumers are seeking and (d) contain ingredients consumers seek to avoid.

5.    Defendants have realized that, based on the public's concern about natural and healthy foods, there is a financial benefit to be derived in selling products claiming to be  natural or healthy or to have ingredients or nutritional profiles consistent with such characteristics. Accordingly, Defendants have labeled and advertised their food products as natural or healthy or ingredients or nutritional profiles consistent with such characteristics even though such claims are in violation of California and federal food labeling laws.

6.    Defendants have also realized that, based on the public's concern about obesity and interest in low-calorie and dietetic foods, there is a financial benefit to be derived in selling products claiming to be "sugar free," "low-calorie" or "suitable for weight control." Accordingly, Defendants have labeled many of their candy and confectionery products such as their chewing gum, breath mints, and hard candies as "sugar free" even though such claims are in violation of California and federal food labeling laws. They have also concealed the presence of sugar in their products by using unlawful terms such as "evaporated cane juice."

7.    Defendants have also represented that their chewing gum, breath mints, and hard candy products are low-calorie and suitable for weight control when in fact the products are high calorie and unable to qualify as low-calorie or suitable for weight control as a matter of law as they exceed the maximum caloric level to do so.

8.      In furtherance of their scheme Defendants have misrepresented the actual serving sizes of some of their products so as to understate the actual amount of calories and sweeteners in those products.

9.      Defendants have pursued a Health and Nutrition strategy based on their assessment that nutritional awareness and the desire for improved health and wellness will increasingly drive consumer choice. Pursuant to this strategy, Defendants decided that they would renovate products for nutrition and health considerations and would seek to inform consumers about available healthy and nutritious options in using their products.

10.     In pursuing such a strategy, Defendants (a) decided their success and profitability was dependent on their ability to satisfy emerging consumer demand for healthy, nutritious and low-calorie foods and (b) were prepared to make health and nutrition arguments on behalf of "junk foods" like snack foods, gum, breath mints and hard candy when in fact such claims were not true and, in fact, were unlawful.

11.     Similarly, according to the most recent 10-K filing of Kraft Foods, Inc.:

We must correctly predict, identify and interpret changes in consumer preferences and demand, and offer new products to meet those changes. Consumer preferences for food products change continually. Our success depends on our ability to predict, identify and interpret the tastes and dietary habits of consumers and to offer products that appeal to consumer preferences. If we do not offer products that appeal to consumers, our sales and market share will decrease and our profitability could suffer.

We must distinguish among short-term fads, mid-term trends and long-term changes in consumer preferences. If we do not accurately predict which shifts in consumer preferences will be long-term, or if we fail to introduce new and improved products to satisfy those preferences, our sales could decline. In addition, because of our varied consumer base, we must offer an array of products sufficient to satisfy the broad spectrum of consumer preferences. If we fail to expand our product offerings successfully across product categories, or if we do not rapidly develop products in faster growing and more profitable categories, demand for our products will decrease and our profitability could suffer.

Prolonged negative perceptions concerning the health implications of certain food products could influence consumer preferences and acceptance of some of our products and marketing programs. For example, recently, consumers have been increasingly focused on health and wellness, including weight management and reducing sodium consumption. We strive to respond to consumer preferences and social expectations, but we may be unsuccessful in these efforts. Continued

negative perceptions and failure to satisfy consumer preferences could materially and adversely affect our product sales, financial condition and results of operations.

Kraft Foods Inc. 10-K filed 2/27/2012 at p. 13-14.

12. Defendants' key to achieving the goals of their health and nutrition strategy is to convince consumers that they can use Defendants' food products as part of a healthy and enjoyable diet. Recognizing that the success of Defendants depends on their ability to offer high-quality products that appeal to the consumer preferences, Defendants have repositioned their food products as healthy, nutritious and low calorie by making false and deceptive claims in violation of federal and state laws that govern the types of representations that can be made on food labels.

13. Defendants' product labeling also fails to accurately identify the ingredients of their product. For example, the "Nutrition Facts" Back to Nature 100% Natural Golden Honey Oat Graham Crackers (10 oz. box) and the Back to Nature 100% Natural Classic Granola (13.5 oz. bag) state that it contains a certain number of grams of sugar, but the ingredient section fails to list "sugar" or "dried cane syrup" as an ingredient. Instead, the label lists "Evaporated Cane Juice" as an ingredient, despite the fact that the FDA has specifically warned companies not to use the term "Evaporated Cane Juice" because (1) it is "false and misleading;" (2) its use is in violation of a number of labeling regulations designed to ensure that manufacturers label their products with the common and usual names of the ingredients they use and accurately describe the ingredients they utilize; and (3) the ingredient in question is not a juice.

14. Defendants know that "evaporated cane juice" is, in its ordinary and commonly understood term, "sugar."

15. Defendants' Misbranded Food Products are sold at a premium price.

16. If a manufacturer is going to make a claim on a food label or on its website, which is an extension of the label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled. As described more fully below, Defendants have made, and continue to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.

17. Under California law, which is identical to federal law, a number of the Defendants' food labeling practices are unlawful because they are deceptive and misleading to consumers:

A. Making unlawful nutrient content claims on the labels of food products that are false and fail to meet the minimum nutritional requirements legally required for the nutrient content claims being made;

B. Making unlawful claims healthy claims about their food products that fail to meet the minimum nutritional requirements legally required for the healthy claims being made;

C. Making unlawful evaporated cane juice claims;

D. Making unlawful sugar free claims and utilizing improper serving sizes; and

E. Failing to utilize the common or usual names of ingredients on their product labels.

18. These practices are not only illegal but they mislead consumers and deprive them of the information they need to make informed purchasing decisions. Thus, for example, a consumer who wants to purchase natural products or low calorie foods or avoid preservatives or sugar in their food would be misled by Defendants' practices and labeling.

19. Similarly, California and federal law have placed numerous requirements on food companies that were designed to ensure that the claims companies make about their products to consumers are truthful, accurate and backed by acceptable forms of scientific proof. When companies such as Defendants make unlawful natural, nutrient content, health and/or evaporated cane juice claims that are prohibited by regulation, consumers such as the Plaintiff are misled.

20. Under federal and California law, Defendants' Misbranded Food Products cannot legally be held or sold. These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits.

21. These laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only

positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

22. In particular, Defendants have engaged in a number of deceptive practices that are prohibited by California and federal law, including: (a) making unlawful natural, nutrient content and health claims that are prohibited by law; (b) misstating the true serving size of a food so as to falsely convey a product has less calories per serving than it actually has; (c) falsely claiming that products are low-calorie or suitable for weight control when they are not; and (d) making unlawful evaporated cane juice claims.

23. Defendants' false and misleading labeling practices stem from their global marketing strategy. Thus, the violations and misrepresentations are similar across product lines and product brands.

24. Defendants' false and misleading labeling practices are designed to increase sales and justify the premium prices of Defendants' products at issue.

25. In order to remedy the damages arising from Defendants' illegal conduct and which have resulted in unjust profits, Plaintiff brings this action on behalf of a California class of consumers who purchased Defendants' Misbranded Food Products.

26. Defendants continue to distribute and sell their Misbranded Food Products to the public even though Defendants (a) have violated California and federal law; (b) are not acting in accord with regulatory guidance such as the FDA *Guidance for Industry, A Food Labeling Guide*; and (c) are aware or should be aware of numerous regulatory warning letters to food manufacturers concerning the violations identical to the ones discussed herein.

27. Identical federal and California laws regulate the content of labels on packaged food. The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 109875, *et seq.* Under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or in its labeling. 21 U.S.C. § 343(a).

28.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, then the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951).  Under the FDCA, it is not necessary to prove that anyone was actually misled.

29.     In promoting the health benefits of their Misbranded Food Products, Defendants have adopted "responsible marketing and advertising policies."  Defendants claim to understand the importance of communicating responsibly about their products.  Nevertheless, Defendants have made, and continue to make, false and deceptive claims on their Misbranded Food Products in violation of federal and California laws that govern the types of representations that can be made on food labels.  In particular, in making their unlawful natural, nutrient content, and health claims, and in using an unlawful serving size on their Misbranded Food Products, and it making their unlawful evaporated cane juice claims, Defendants have violated nutrient content labeling regulations mandated by federal and California law which require a disclosure of items present in a food at a level that the FDA has concluded increases the risk of diet-related disease or health-related condition. Such a disclosure is required whenever a nutrient content claim is made.  Also, in making its unlawful "Evaporated Cane Juice" claims on their Misbranded Food Products, Defendants have violated labeling regulations mandated by California law by identifying sugar and/or sugar cane syrups as "Evaporated Cane Juice."  According to the FDA, the term "Evaporated Cane Juice" is not the common or usual name of any type of sweetener, including dried cane syrup.  Because cane syrup has a standard of identity defined by regulation in 21 CFR § 168.130, which has been adopted by California, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."  According to the FDA, sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "Evaporated Cane Juice."  The FDA considers such

representations to be "false and misleading" under section 403(a)(1) of the FDCA because they fail to reveal the basic nature of the food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21 CFR § 102.5, which has been adopted by California.

30.     Defendants have made and continue to make food label claims that are prohibited by federal and California law.  Under federal and California law, Defendants' Misbranded Food Products cannot legally be held or sold.  Defendants' false and misleading labeling practices stem from their marketing strategy.  The violations and misrepresentations are similar across product labels and product lines.

31.     Defendants' violations of law include: (a) the illegal advertising, marketing, distribution, delivery and sale of Defendants' Misbranded Food Products to consumers of California; (b) the failure to properly disclose the high levels of calories and disqualifying nutrients in their Misbranded Food Products on the Products' packaging and labeling as required by law; the failure to utilize the proper serving size on their nutritional content information; and (c) the failure to include statements on the Misbranded Food Products packaging and labeling that are mandated by law.

## **PARTIES**

32.     Plaintiff, Susan Ivie, is a resident of Morgan Hill, California who purchased Defendants' Misbranded Food Products in California during the four (4) years prior to the filing of the original Complaint (the "Class Period").

33.     Defendant Kraft FG is a Delaware corporation with its headquarters in Northfield, Illinois. Kraft FG is registered to do business and does business in California. Kraft FG promotes, markets, distributes and food products throughout the United States, including to tens of thousands of consumers in the State of California. During the Class Period, Defendant Kraft FG manufactured, marketed, advertised and sold Defendants' Misbranded Food Products.

34.     Defendant Cadbury is a Delaware corporation with its corporate headquarters and principal place of business in Parsippany, New Jersey.  Cadbury does business in the State of California. Cadbury promotes, markets, distributes and sells food products throughout the United States, including to tens of thousands of consumers in the State of California. During the Class

1   Period, Defendants Cadbury manufactured, marketed, advertised and sold Defendants'

2   Misbranded Food Products.

3       35.     Defendant Back to Nature is a Delaware corporation with its corporate

4   headquarters and principal place of business in Madison, Wisconsin. Back to Nature does

5   business in the State of California. Back to Nature promotes, markets, distributes and sells food

6   products throughout the United States, including to tens of thousands of consumers in the State of

7   California. During the Class Period, Defendant Back to Nature manufactured, marketed,

8   advertised and sold Defendants' Misbranded Food Products.

9       36.     Collectively, Defendants are leading producers of gum, breath mints and hard

10   candies and other products.  Defendants' Misbranded Food Products are sold to consumers

11   through grocery and other retail stores throughout the United States and California.

12       37.     Defendants promote their products through their websites.

13       38.     Defendants have pursued a common plan, design, and course of conduct, acted in

14   concert with, aided and abetted, and otherwise conspired with each other, in furtherance of their

15   common design or scheme to deceive and injure Plaintiff and Class members as described herein.

16   Defendants developed the unlawful scheme under which the Misbranded Food Products were

17   marketed and sold.

18       39.     At all times there has been a unity of interests between Defendants to carry out the

19   unlawful scheme described herein.

20       40.     At all times relevant to this lawsuit, Defendants participated in the scheme

21   described herein in cooperation with and as agents and instrumentalities of one another for the

22   purpose of deceiving and harming the Plaintiff and Class members as described herein.

23       41.     Defendants are juridically linked through contracts governing their management

24   and control, through which the scheme described herein has been implemented.

25       42.     Defendants, acting as juridically linked entities pursuant to agreements among

26   themselves, as each other's agents, and/or as co-conspirators, engaged in the practices described

27   herein.

28

43.     As described herein, Defendants are agents, alter-egos and co-conspirators of each other.

### JURISDICTION AND VENUE

44.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (a) there are over 100 members in the proposed class; (b) members of the proposed class have a different citizenship from Defendants and (c) the claims of the proposed class members exceed $5,000,000 in the aggregate.

45.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

46.     The Court has jurisdiction over the California claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

47.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

48.     The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendants are authorized to do business in California, have sufficient minimum contacts with California, and otherwise intentionally avail themselves of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

49.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendants, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

# FACTUAL ALLEGATIONS

## A.      Identical California And Federal Laws Regulate Food Labeling

50.     Food manufacturers are required to comply with federal and state laws and regulations that govern the labeling of food products.  First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

51.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code § 110100.

52.     In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.  For example, food products are misbranded under California Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of their value for that use; and are misbranded under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

## B.     __FDA Enforcement History__

53.     In recent years, the FDA has become increasingly concerned that food manufacturers have been disregarding food labeling regulations. To address this concern, the FDA elected to take steps to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.

54.     In October 2009, the FDA issued a Guidance For Industry: Letter Regarding Point Of Purchase Food Labeling, ("FOP Guidance") to address its concerns about front of package labels.  The 2009 FOP Guidance advised the food industry:

> FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading. The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

> It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

> … Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

55.   The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

56.   Despite the issuance of the 2009 FOP Guidance, Defendants did not remove the unlawful and misleading food labeling claims from their Misbranded Food Products.

57.   On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" ("Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages.  Our citizens appreciate that effort, and many use this nutrition information to make food choices.  Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States.  This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.
>
> With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs.  The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections . . . .
>
> As we move forward in those areas, I must note, however, that there is one area in which more progress is needed.  As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.
>
> At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations.  As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and

Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices . . For example:

- Nutrient content claims that FDA has authorized for use on foods for adults are not permitted on foods for children under two. Such claims are highly inappropriate when they appear on food for infants and toddlers because it is well known that the nutritional needs of the very young are different than those of adults.
- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.
- Products that claim to treat or mitigate disease are considered to be drugs and must meet the regulatory requirements for drugs, including the requirement to prove that the product is safe and effective for its intended use.
- Misleading "healthy" claims continue to appear on foods that do not meet the long- and well-established definition for use of that term.
- Juice products that mislead consumers into believing they consist entirely of a single juice are still on the market. Despite numerous admonitions from FDA over the years, we continue to see juice blends being inaccurately labeled as single-juice products.

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

58.    Notwithstanding the Open Letter, Defendants have continued to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter.

59.    In addition to its guidance to industry, the FDA has sent warning letters to the industry, including many of Defendants' peer food manufacturers, for the same types of unlawful nutrient content claims described above.

60.    In these letters dealing with unlawful nutrient content claims, the FDA indicated that, as a result of the same type of claims utilized by Defendants, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR § 101)" and "misbranded within the meaning of section 403(r)(1)(A) because the product label bears a nutrient content claim but does not meet the requirements to make the claim."    These warning letters were not isolated as the FDA has issued numerous warning letters to other companies for the same type of food labeling claims at issue in this case; the same being released as public records discoverable and downloadable from the internet.

61.    The FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other firms would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendants did not change the labels on their Misbranded Food Products despite that Defendants knew or should have known of these warning letters to other companies for the same type of violations that Defendants commit with their labels on the products subject to this litigation.

62.    Defendants have turned a blind eye to the FDA's Guidance for Industry, A Food Labeling Guide which details the FDA's guidance on how to make food labeling claims. Defendants continue to utilize unlawful claims on the labels of their Misbranded Food Products. Despite all of the available warnings and detailed instructions, Defendants' Misbranded Food Products continue to run afoul of FDA guidance as well as federal and California law.

63.     Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing unlawful food labeling claims without meeting the requirements to make them.

64.     Plaintiff did not know, and had no reason to know, that Defendants' Misbranded Food Products were misbranded and bore food labeling claims despite failing to meet the requirements to make those food labeling claims.  Similarly, Plaintiff did not, and had no reason to know, that Defendants' Misbranded Food Products were misbranded because the package labeling on the products purchased by Plaintiff was misleading and false.

**C.    Defendants' Food Products Are Misbranded**

**1.    Defendants Make Unlawful "All Natural" Claims**

65.     Defendants recognize that consumers are increasingly seeking natural food options. Rather than reformulate all of their food products so that they were only composed of the natural ingredients they knew consumers were seeking out, Defendants simply mislabeled a number of their unnatural products and placed false "natural" or "all natural" representations on these products' labels and labeling and falsely depicted these products in their advertising and marketing materials and on their websites as "natural" and "all natural."

66.     As part of this scheme, Defendants falsely represented to consumers that the products were made with all natural ingredients and did not contain any artificial ingredients or synthetic ingredients and did not contain any artificial flavors or preservatives. These representations were false as the products contained unnatural, artificial and synthetic ingredients. They also contained preservatives and artificial flavors. The Plaintiff bought Misbranded Food Products which Defendants falsely represented as being "natural" or "all natural" on the products' labels and labeling. These products were falsely labeled and misbranded because, contrary to the various false representations that they were "natural" or "all natural," they contained various ingredients such as added artificial colors that were unnatural.

67.     For example, the Kraft Mexican Style Four Cheese bought by the Plaintiff was labeled "natural cheese" but the cheese contained a number of unnatural and synthetic ingredients including annatto color (which has historically been used to camouflage inferior cheese), Vitamin

A palmitate, calcium sulfate, and cellulose powder. In addition, the cheese contained ingredients that, even if natural in origin, were not natural components of cheese such as potato starch and natamycin (an antimicrobial agent).

68.     In another example, the Crystal Light products purchased by Plaintiff were falsely represented as being "natural" but, in fact, were not. Moreover, the labels on these products were not only false but were designed to be intentionally misleading. For example, Plaintiff bought a Crystal Light  product labeled in large font size print "Natural Lemon Iced Tea" and underneath it in smaller print "flavor and other natural flavor." This product contained aspartame, acesulfame potassium, maltodextrin, magnesium oxide, Yellow No. 5, Blue No. 1, Red No. 40, and the preservative BHA (Butylated hydroxyanisole). Similarly, Plaintiff bought a Crystal Light  product labeled in large font size print "Natural Lemonade" and underneath it in smaller print "flavor and other natural flavor." This product contained potassium citrate, sodium citrate, aspartame, acesulfame potassium, maltodextrin, magnesium oxide, soy lecithin, citric acid, Yellow No. 5 and the preservative BHA (butylated hydroxyanisole). These labels were highly misleading as they were designed to mislead consumers like the Plaintiff that they were "Natural Lemon Iced Tea and "Natural Lemonade" despite being packed with artificial and synthetic chemicals, preservatives and coloring. These labels were false as the products were not natural as represented. In addition, these labels were false even with regard to their representations about natural flavor as they contained numerous chemicals such as sodium citrate, potassium citrate, acesulfame potassium, aspartame and maltodextrin which provided these products with artificial flavor.

69.     The products contained highly processed chemicals which do not exist in nature and which cannot be considered natural under even the most elastic definition of that term. These products also contained other ingredients like citric acid that are used as chemical preservatives and artificial flavorings in food and whose use as a food ingredient the FDA has repeatedly warned precludes any representation of naturalness about the food.

70.     In its rule-making and warning letters to manufacturers, the FDA has repeatedly stated its policy to restrict the use of the term "natural" in connection with added color, synthetic

substances and flavors as provided in 21 C.F.R. § 101.22 which has been adopted by California.

71.     The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.

72.     The FDA considers use of the term "natural" on a food label to be truthful and non-misleading when "nothing artificial or synthetic…has been included in, or has been added to, a food that would not normally be expected to be in the food."  See 58 FR 2302, 2407, January 6, 1993.

73.     Any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.  Further, the FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

74.     Defendants' "natural" and "all natural" labeling practices violate FDA Compliance Policy Guide Sec. 587.100, which states:  "[t]he use of the words 'food color added,' 'natural color,' or similar words containing the term 'food' or 'natural' may be erroneously interpreted to mean the color is a naturally occurring constituent in the food.  Since all added colors result in an artificially colored food, we would object to the declaration of any added color as 'food' or 'natural.'"

75.     Likewise, California Health & Safety Code § 110740 prohibits the use of artificial flavoring, artificial coloring and chemical preservatives unless those ingredients are adequately disclosed on the labeling.

76.     The FDA has sent out numerous warning letters concerning this issue.  *See, e.g.,* (August 16, 2001 FDA warning letter to Oak Tree Farm Dairy because there was citric acid in its all natural iced tea); (August 29, 2001 FDA warning letter to Hirzel Canning Company because there was citric acid or calcium chloride in its all natural tomato products); (August 2, 2001 FDA warning letter to GMP Manufacturing, Inc. stating: "[t]he products, Cytomax Exercise and Recovery Drink (Peachy Keen flavor) and Cytomax Lite (Lemon Iced Tea Flavor) are misbranded because they contain colors but are labeled using the term "no artificial colors.").

1 | Defendants are aware of these FDA warning letters.

2 |   77. Defendants have nonetheless unlawfully labeled a number of their food products

3 | as being "natural" or "all natural" when they actually contain artificial ingredients and flavorings,

4 | artificial coloring and chemical preservatives. Defendants' representations that their products

5 | contained no artificial colors, flavors or preservatives is a type of representation that the products

6 | were all natural and this is false when those products contain unnatural ingredients.

7 |   78. Defendants' mislabeling and misbranding of their food products is widespread and

8 | extends across product lines and brands.

9 |   79. A reasonable consumer would expect that when Defendants label their products as

10 | "natural" or "all natural," the product's ingredients would not be inconsistent with allowable uses

11 | of the term "natural" as understood by state and federal regulators.  A reasonable consumer would

12 | also expect that when Defendants label their products as "natural" or "all natural" the product

13 | ingredients are "natural" under the common use of that word.  A reasonable consumer would

14 | understand that "natural" or "all natural" products do not contain synthetic, artificial, or

15 | excessively processed ingredients. A reasonable consumer would also interpret Defendants'

16 | representations that their products contained no artificial colors, flavors or preservatives as a

17 | representation that the products were all natural.

18 |   80. Consumers such as the Plaintiff are thus misled into purchasing Defendants'

19 | products with synthetic and artificial and unnatural ingredients that are not "natural" or "all

20 | natural" as falsely represented on their labeling.  Defendants' products in this respect are

21 | misbranded under California and federal law.

22 |   81. Plaintiff relied on Defendants' "all natural" and "natural" label and website claims

23 | when making her purchase decisions over the last four years and was misled because she

24 | erroneously believed the express misrepresentations that the products she was purchasing were

25 | natural as represented. Purchasing natural products was important to Plaintiff in trying to buy

26 | "healthy" food products. Plaintiff would not have purchased these products had she known that

27 | Defendants' products were not natural as represented.

28 |

82.     For these reasons, Defendants' "all natural" and" natural" claims at issue in this Amended Complaint are false and misleading and in violation of identical California and federal law, and the products at issue are misbranded as a matter of law. Therefore, Defendants' Misbranded Food Products are misbranded as a matter of California and federal law and cannot be sold or held and thus are legally worthless. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

**2.      Defendants Violate California Law By Making Unlawful And False Claims That Their Misbranded Food Products Are Free Of Artificial Flavors, Sweeteners And Preservatives And By Failing To Disclose On Their Misbranded Food Products' Labels The Presence Of Preservatives And Artificial Ingredients In Those Products As Required By California Law**

83.     Despite the fact that their Misbranded Food Products contained artificial flavors, sweeteners and preservatives and other artificial ingredients, Defendants falsely represented on the labels of their Misbranded Food Products that the products were free of artificial flavors, sweeteners and preservatives. They made similar misrepresentations on their websites.

84.     These representations were false and misled consumers such as the Plaintiff who relied on the statements.

85.     For example, the Country Time Pink Lemonade purchased by the Plaintiff, bore such a false labeling statement. The label of this product stated it contained "no artificial sweeteners or flavors" In fact, this product contained sodium citrate, an artificial flavoring agent, and maltodextrin, an artificial sweetener (and flavoring agent) that is a highly processed chemical that does not exist in nature.

86.     In another example, the Crystal Light products purchased by Plaintiff were falsely represented as having only natural flavors but, in fact, did not. For example, Plaintiff bought a Crystal Light  product labeled in large font size print "Natural Lemon Iced Tea" and underneath it in smaller print "flavor and other natural flavor." This product contained aspartame, acesulfame potassium, maltodextrin, magnesium oxide, Yellow No. 5, Blue No. 1, Red No. 40, and the preservative BHA (Butylated hydroxyanisole). Similarly, Plaintiff bought a Crystal Light  product labeled in large font size print "Natural Lemonade" and underneath it in smaller print "flavor and

other natural flavor." This product contained potassium citrate, sodium citrate, aspartame, acesulfame potassium, maltodextrin, magnesium oxide, soy lecithin, citric acid, Yellow No. 5 and the preservative BHA (butylated hydroxyanisole). These labels were false with regard to their representations about natural flavor as they contained numerous chemicals such as sodium citrate, potassium citrate, acesulfame potassium, aspartame and maltodextrin which provided these products with artificial flavor.

87.     Similarly, for example, the labels of the Capri Sun Fruit Punch purchased by Plaintiff stated they had "no artificial colors, flavors or preservatives" despite containing a common food preservative, Alpha Tocopherol Acetate also known as Vitamin E Acetate. This product also contains high fructose corn syrup, a non-natural sweetener used to give the product its sweet flavor. Other products such Defendants' Back to Nature Classic Granola and Golden Honey Oat Graham Crackers purchased by the Plaintiff claimed to be 100% natural and to contain no artificial flavors or preservatives while containing the same chemical preservative used in Defendants' Capri Sun products. Similarly, Defendants represented a number of their Back to Nature cookies such as their Classic Creme, Fudge Mint and Fudge Striped as containing no artificial flavors or preservatives despite the fact that they contained cocoa processed with alkali, an artificial flavor.

88.     Pursuant to 21 C.F.R. § 101.22 which has been adopted by California, "[a] statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." 21 C.F.R. § 101.22 defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

89.     Defendant's Misbranded Food Products were misbranded because they contained chemical preservatives but failed to disclose that fact.

90.     For example, while Defendants' Capri Sun Fruit Punch purchased by the Plaintiff, contains Alpha Tocopherol Acetate which is used in that product as a preservative, the label lists this preservative as Vitamin E Acetate and fails to disclose the fact that it is being used as a preservative in the products by including a parenthetical such as (preservative) or (to retard spoilage) after the term Vitamin E Acetate in the ingredient statement. Because Defendants unlawfully fail to indicate this ingredient is being used as chemical preservative, a reasonable consumer would have no reason to doubt the preservative free claim.

91.     Plaintiff and reasonable consumers would expect that when Defendants made a representation on their products' labels that such products were free of artificial flavors, colors & preservatives that such a representation was true.  Plaintiff and reasonable consumers would also expect that when Defendants list their products' ingredients that they would make all disclosures required by law such as the disclosure of chemical preservatives, artificial flavoring and coloring mandated by identical California and federal law.

92.     Plaintiff saw Defendants' label and website representations that their products contained no artificial flavors, colors & preservatives and relied on them in the reasonable expectation that such a representation was true. Plaintiff relied on Defendants' no artificial flavors, colors or preservative claims when making her purchase decisions over the last four years and was misled because she erroneously believed the express misrepresentations that Defendants' products she was purchasing were natural as represented. Purchasing natural products was important to Plaintiff in trying to buy "healthy" food products. Plaintiff would not have purchased these products had she known that Defendants' products were not natural as represented.

93.     Plaintiff based her purchasing decisions in part on the erroneous belief that these products did not contain chemical preservatives or artificial flavors, colors or preservatives.

94.     Plaintiff did not know, and had no reason to know, that Defendants' Misbranded Food Products contained undisclosed chemical preservatives and other artificial ingredients because 1) Defendants falsely represented on their product labels websites that the products contained no artificial flavors, colors, or preservatives" and 2) failed to disclose those chemical preservatives and artificial ingredients as required by California and federal law.

95.     Consumers, like the Plaintiff, were thus misled into purchasing Defendants' products with false and misleading labeling statements and ingredient descriptions, which do not describe the basic nature of the ingredients, as  required by California Health & Safety Code § 110740 and  21 C.F.R. §§ 101.22 which has been adopted as law by California. Had Plaintiff been aware that the Misbranded Food Products she purchased contained chemical preservatives and artificial ingredients such as artificial flavors, colors, or preservatives she would not have purchased the products, or paid a premium for them. Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had cheaper alternatives.

96.     Because of their false label representations and omissions about chemical preservatives and artificial ingredients such as artificial flavors, colors or preservatives, Defendants' Misbranded Food Products are in this respect misbranded under identical federal and California law, including California Health & Safety Code § 110740.  Misbranded products cannot be legally sold and are legally worthless. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

**3.     California and Federal Law Regulate Unlawful Nutrient Content Claims**

97.     Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the regulations that authorize the use of such claims.  21 U.S.C. § 343(r)(1)(A).  California expressly adopted the requirements of  21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

98.     Nutrient content claims are claims about specific nutrients contained in a product. They are typically made on the front of packaging in a font large enough to be read by the average consumer.  Because consumers including the Plaintiff rely upon these claims when making purchasing decisions, the regulations govern what claims can be made in order to prevent misleading claims.

99.     Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied nutrient content claims on labels of food products that are intended for sale for human consumption.  21 C.F.R. § 101.13.

100. Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the regulations that authorize the use of such claims. 21 U.S.C. § 343(r)(1)(A). California expressly adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

101. Nutrient content claims are claims about specific nutrients contained in a product. They are typically made on the packaging in a font large enough to be read by the average consumer. Because these claims are relied upon by consumers when making purchasing decisions, the regulations govern what claims can be made in order to prevent misleading claims.

102. Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied nutrient content claims on labels of food products that are intended for sale for human consumption. *See* 21 C.F.R. § 101.13.

103. 21 C.F.R. § 101.13 provides the general requirements for nutrient content claims, which California has expressly adopted. *See* California Health & Safety Code § 110100.

104. 21 C.F.R. § 101.13 provides the general requirements for nutrient content claims, which California has expressly adopted. California Health & Safety Code § 110100. Among other requirements, 21 C.F.R. § 101.13 requires that manufacturers include certain disclosures when a nutrient claim is made and, at the same time, the product contains certain levels of unhealthy ingredients, such as fat and sodium. It also sets forth the manner in which that disclosure must be made, as follows:

>  (4)(i) The disclosure statement "See nutrition information for ___ content" shall be in easily legible boldface print or type, in distinct contrast to other printed or graphic matter, and in a size no less than that required by §101.105(i) for the net quantity of contents statement, except where the size of the claim is less than two times the required size of the net quantity of contents statement, in which case the disclosure statement shall be no less than one-half the size of the claim but no smaller than one-sixteenth of an inch, unless the package complies with §101.2(c)(2), in which case the disclosure statement may be in type of not less than one thirty-second of an inch.
>
> (ii) The disclosure statement shall be immediately adjacent to the nutrient content claim and may have no intervening material other than, if applicable, other information in the statement of identity or any other information that is required to be presented with the claim under this section (e.g., see paragraph (j)(2) of this section) or under a regulation in subpart D of this part (e.g., see §§101.54 and 101.62). If the nutrient content claim appears on more than one panel of the label, the disclosure statement shall be adjacent to the claim on each panel except for the

panel that bears the nutrition information where it may be omitted.

105. An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories"). *See* 21 C.F.R. § 101.13(b)(1).

106. An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat"). 21 C.F.R. § 101.13(b)(2)(i-ii).

107. The California and federal nutrient content claims regulations authorize the use of a limited number of defined nutrient content claims. In addition to authorizing the use of only a limited set of defined nutrient content terms on food labels, these regulations authorize the use of only certain synonyms for these defined terms. If a nutrient content claim or its synonym is not included in the food labeling regulations it cannot be used on a label. Only those claims, or their synonyms, that are specifically defined in the regulations may be used. All other claims are prohibited. 21 CFR § 101.13(b).

108. Only approved nutrient content claims will be permitted on the food label, and all other nutrient content claims will misbrand a food. It is thus clear which types of claims are prohibited and which are permitted. Manufacturers are on notice that the use of an unapproved nutrient content claim is prohibited conduct. 58 FR 2302. In addition, 21 U.S.C. § 343(r)(2) prohibits using unauthorized undefined terms and declares foods that do so to be misbranded.

109. Similarly, the regulations specify absolute and comparative levels at which foods qualify to make these claims for particular nutrients (*e.g.*, low fat . . . more vitamin C) and list synonyms that may be used in lieu of the defined terms. Certain implied nutrient content claims (*e.g.*, healthy) also are defined. The daily values ("DVs") for nutrients that the FDA has established for nutrition labeling purposes have application for nutrient content claims, as well. Claims are defined under current regulations for use with nutrients having established DVs;

moreover, relative claims are defined in terms of a difference in the percent DV of a nutrient provided by one food as compared to another. *See e.g.*, 21 C.F.R. §§ 101.13 and 101.54.

### a.     Defendants Makes Unlawful Defined Nutrient Content Claims

110.    In order to appeal to consumer preferences, Defendants have repeatedly made false and unlawful nutrient content claims about nutrients that fail to utilize one of the limited defined terms properly. These nutrient content claims are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which are incorporated in California's Sherman Law.

111.     For example, Defendants' make nutrient content claims about their Capri Sun drinks claiming that they are "an excellent source of vitamins C and E." This claim is false because Defendants' use of a defined term is in effect a claim that the products have met the minimum nutritional requirements for the use of the defined term when they have not.

112.    The nutrient content claims that Defendants make about the Vitamin C and E content of their Capri Sun drinks are false and unlawful.  Contrary to Defendants' claims, the Capri Sun drink purchased by the Plaintiff was not an "excellent source" of Vitamin C or E because the Vitamin C & E content of the Capri Sun drink purchased by the Plaintiff fell far short of the 20% DV threshold required by law for an "excellent" source claim.

113.    FDA enforcement actions targeting identical or similar claims to those made by Defendants have made clear the unlawfulness of such claims.

114.    The nutrient content claims regulations discussed above are intended to ensure that consumers are not misled as to the actual or relative levels of nutrients in food products.

115.    Plaintiff saw and  relied on Defendants' nutrient content claims including their website claims when making her purchase decisions and was misled because she erroneously believed the implicit misrepresentation that  Defendants' Capri Sun products she was purchasing met the minimum nutritional threshold to make such claims. She was also deceived by the Defendants express false statements into erroneously believing that Capri Sun was an "an excellent source of vitamins C and E" when it was not. Plaintiff would not have purchased these products had she known that Defendants' Capri Sun products were not "an excellent source of

1    vitamins C and E" and did not in fact satisfy such minimum nutritional requirements with regard

2    to the claimed nutrients. Plaintiff had other food alternatives that satisfied such standards and

3    Plaintiff also had cheaper alternatives.

4         116.    For these reasons, Defendants' nutrient content claims at issue in this Amended

5    Complaint are false and misleading and in violation of 21 C.F.R. §§ 101.13 and 101.54 and

6    identical California law, and the products at issue are misbranded as a matter of law. Defendants

7    have violated these referenced regulations. Therefore, Defendants' Misbranded Food Products are

8    misbranded as a matter of federal and California law and cannot be sold or held  and thus are

9    legally worthless.

10        117.    Plaintiff was thus misled by Defendants' unlawful labeling and advertising

11   practices and actions into purchasing products she would not have otherwise purchased had she

12   known the truth about those products. Plaintiff had other food alternatives that that satisfied such

13   standards and Plaintiff also had cheaper alternatives.

14        118.    Defendants' claims in this respect are false and misleading and the products are in

15   this respect misbranded under identical federal and California laws. Plaintiff and members of the

16   Class who purchased these products paid an unwarranted premium.

17        b.   **Defendants Make Unlawful Nutrient Content Claims On Products Containing
18             Disqualifying Levels Of Fat, Saturated Fat, Cholesterol Or Sodium**

19        119.    To appeal to consumer preferences, Defendants have repeatedly made improper

20   nutrient content claims on products containing disqualifying levels of fat, saturated fat,

21   cholesterol or sodium.  These nutrient content claims were improper because they have failed to

22   include disclosure statements required by law that are designed to inform consumers of the

23   inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has

24   been incorporated in California's Sherman Law.

25        120.    21 C.F.R. § 101.13 (h)(l) provides that:

26             If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams
               (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed,
27             per labeled serving, or, for a food with a reference amount customarily consumed of 30 g
               or less … per 50 g … then that food must bear a statement disclosing that the nutrient
28             exceeding the specified level is present in the food as follows: "See nutrition information
               for __ content" with the blank filled in with the identity of the nutrient exceeding the

specified level, e.g., "See nutrition information for fat content."

121.    Defendants repeatedly violate this provision. Defendants' Misbranded Food Products' packaging and labeling prominently makes nutrient content claims despite disqualifying levels of fat, saturated fat, and sodium that far exceed the regulatory gram disclosure threshold.

122.    Pursuant to 21 C.F.R. § 101.13(h), Defendants are prohibited from making unqualified nutrient claims like "good source of protein" or "0 grams Trans Fat" on their food products if their products contain fat in excess of 13 grams, saturated fat in excess of 4 grams, cholesterol in excess of 60 milligrams, or sodium in excess of 480mg per 50 grams, unless the product also displays a disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels.

123.    These regulations are intended to ensure that consumers are not misled to believe that a product that claims, for instance, to be low in trans fat, but actually has other unhealthy fat levels, is a healthy choice, because of the lack of trans fats.

124.    Nevertheless, Defendants' labeling and advertising utilize unlawful nutrient content claims without such a disclosure even though their Misbranded Food Products contain disqualifying levels of fat, saturated fat and sodium.

125.    For example, the Planters Nut-trition Wholesome Nut Mix purchased by Plaintiff bore an unlawful "good source of 5 vitamins and minerals" claim and an unlawful wholesome (healthy) nutrient content claim despite having a disqualifying amount of fat.  The Kraft Deli Deluxe Cheese slices purchased by the Plaintiff bore an unlawful vitamin "added" claim despite having disqualifying levels of fat, saturated fat and sodium. Similarly, The Mexican Style Four Cheese purchased by the Plaintiff bore unlawful fat related nutrient content claims despite having disqualifying saturated fat levels. While the packaging of this product did bear a disclosure statement it was inadequate as it was nearly invisible due to its font size, placement and contrasting background color and failed to satisfy the minimum disclosure requirement.

126.    Defendants continue to make their unlawful nutrient content  claims despite the express guidance of the FDA in the Open Letter warning that "claims that a product is free of

trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat [or sodium, cholesterol or total fat], and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel."

127.    Defendants also continue to ignore the FDA's Guidance for Industry, A Food Labeling Guide, which detailed the FDA's guidance on how to make nutrient content and other labeling claims about food products that contain "one or more nutrients [like total fat at levels] in the food that may increase the risk of disease or health related condition that is diet related." Defendants continue to utilize improper nutrient claims on the labels of their Misbranded Food Products.   As such, Defendants' Misbranded Food Products continue to run afoul of FDA guidance as well as California and federal law.

128.    In addition to its guidance to industry, the FDA has sent warning letters to the industry, including many of Defendants' peer food manufacturers, for the same types of improper unlawful nutrient content claims described above. In these letters dealing with unlawful nutrient content claims, the FDA indicated that, as a result of the same type of unlawful nutrient content claims utilized by Defendants, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR § 101)" and "misbranded within the meaning of section 403(r)(1)(A) because the product label bears a nutrient content claim but does not meet the requirements to make the claim."

129.    Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing improper nutrient content and other unlawful food labeling claims without meeting the requirements to make them.

130.    In addition to failing to make mandated disclosures informing consumers that their Misbranded Food Products contained unhealthy components, such as fat, saturated fat, cholesterol and sodium at levels that the FDA has concluded increases the risk of diet-related disease or health-related condition, Defendants also disseminated materials designed to convince consumers that the unhealthy levels of fat in their products were not a problem, notwithstanding the FDA

1   position that such high levels of fat were unhealthy and increased the risk of diet-related disease

2   or health-related condition. Defendants claimed their Misbranded Food Products contained

3   mostly good" fats. Similarly, Defendants claimed that, far from being a problem, high levels of

4   fat could actually play a role in a healthy diet.

5       131.   Based on the fat, saturated fat, cholesterol and sodium content of Defendants'

6   products, pursuant to federal and California law, Defendants must include a warning statement

7   meeting regulatory requirements adjacent to the nutrient claims they make on their products like

8   the Planters' nut and Kraft cheese products mentioned above that informs consumers of the high

9   levels of fat, saturated fat, cholesterol or sodium in those products.  No such disclosure statement

10  currently exists on Defendants' Misbranded Food Products.

11      132.   The Plaintiff bought Misbranded Food Products whose labels and labeling bore

12  unlawful nutrient content claims. These products were falsely labeled and misbranded because

13  there were ineligible to bear such nutrient content claims and by bearing them in violation of the

14  rules they unlawfully deceived Plaintiff into the erroneous belief that they made only positive

15  dietary contributions and did not contain disqualifying nutrients at levels deemed by the FDA to

16  pose a risk of a diet related disease or condition. These false implicit representations of health

17  were misleading and unlawful.

18      133.    The Plaintiff bought a number of products bearing such unlawful nutrient content

19  claims. For example, the Planters Nut-trition Wholesome Nut Mix purchased by Plaintiff bore an

20  unlawful "good source of 5 vitamins and minerals" claim and an unlawful wholesome (healthy)

21  claim despite having a disqualifying amount of fat.  The Kraft Deli Deluxe Cheese slices

22  purchased by the Plaintiff bore an unlawful vitamin "added" claim despite having disqualifying

23  levels of fat, saturated fat and sodium. Similarly, The Mexican Style Four Cheese purchased by

24  the Plaintiff bore unlawful fat related nutrient content claims despite having disqualifying

25  saturated fat levels. While the packaging of this product did bear a disclosure statement it was

26  inadequate as it was nearly invisible due to its font size, placement and contrasting background

27  color.

28      134.   A reasonable consumer would expect that when Defendants label their products

with a nutrient content claim the product would be eligible to bear such a claim and meets the minimum nutritional requirements to make such a claim and that Defendants would not be using nutrient content claim in a way deemed misleading by the FDA or other regulator.  A reasonable consumer would understand that products bearing nutrient content claims do not contain disqualifying levels of harmful nutrients that preclude the claim and that all required warnings and disclosures would be made as required.

135.    Consumers such as the Plaintiff are thus misled into purchasing Defendants' purportedly healthy products bearing nutrient content claims but  that fail to adequately warn of their risks and falsely are depicted as healthier dietary components than they actually are. Defendants' products in this respect are misbranded under federal and California law.

136.    Plaintiff saw and relied on Defendants' unlawful nutrient content claims when making her purchase decisions over the last four years and was misled because she erroneously believed the express misrepresentations that Defendants' products she was purchasing 1) lacked undisclosed disqualifying nutrient levels, and 2) were healthier dietary components than they actually were. Purchasing such products was important to Plaintiff in trying to buy "healthy" food products. Plaintiff would not have purchased these products had she known that Defendants' products  were ineligible to bear the nutrient content claims because of disqualifying nutrient levels of  potentially harmful nutrients deemed to place consumers at an elevated risk  of a diet related disease or condition.

137.    For these reasons, Defendants' unlawful nutrient content claims at issue in this Amended Complaint are false and misleading and in violation of identical California and federal law.  Therefore, Defendants' Misbranded Food Products are misbranded as a matter of California and federal law and cannot be sold or held and thus are legally worthless. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

**c.**       **Defendants Make Unlawful Health Claims**

138.    Defendants have violated identical California and federal law by making numerous unapproved "healthy" claims about their  products.

139.    The use of the term "healthy" is not a health claim but rather an implied nutrient

content claim about general nutrition that is defined by FDA regulation. In general, the term may be used in labeling an individual food product that:

>Qualifies as both low fat and low saturated fat;

>Contains 480 mg or less of sodium per reference amount and per labeled serving, and per 50 g (as prepared for typically rehydrated foods) if the food has a reference amount of 30 g or 2 tbsps or less;

>Does not exceed the disclosure level for cholesterol (e.g., for most individual food products, 60 mg or less per reference amount and per labeled serving size); and

>Except for raw fruits and vegetables, certain frozen or canned fruits and vegetables, and enriched cereal-grain products that conform to a standard of identity, provides at least 10% of the daily value (DV) of vitamin A, vitamin C, calcium, iron, protein, or fiber per reference amount. Where eligibility is based on a nutrient that has been added to the food, such fortification must comply with FDA's fortification policy.

21 C.F.R. § 101.65(d)(2).

The FDA's regulation on the use of the term healthy also encompasses other, derivative uses of the term health (e.g., healthful, healthier) in food labeling. 21 C.F.R. § 101.65(d). This provision would include in its scope uses of a term like wholesome which is merely a synonym for healthy and is defined as "health giving: beneficial to physical health."

140.    Defendants have violated the provisions of 21 C.F.R. §101.65 by including certain "healthy" or "wholesome" claims on their product labeling and website.

141.    Despite being aware of the criteria and restrictions that pertain to "healthy" claims, Defendants make numerous unlawful "healthy" claims about their Misbranded Food Products and their components. Defendants indicate that these products and their ingredients are "healthy or "wholesome" or can be an important part of a healthier diet. Defendants do this in violation of 21 C.F.R. §101.65 which has been adopted by California and which precludes the use of these terms about Defendants products such as the Planters' nuts and Capri-Sun drinks purchased by Plaintiff which have disqualifying levels of unhealthy nutrients like fat in the case of the Planters' nuts and lack the minimum nutritional requirements in the case of the Capri Sun drinks.

142.    Plaintiff saw such healthy and claims and relied on Defendants' healthy and wholesome claims which influenced their decision to purchase Defendants' products. Plaintiff

1    would not have bought the products had she known Defendants' claims were unlawful because

2    the products failed to meet the definition of healthy and that the products were thus misbranded.

3        143.    Plaintiff and members of the Class were misled into the belief that such products

4    were healthy and wholesome. Because this was not the case, Plaintiff and members of the Class

5    have been deceived.

6        144.    Plaintiff and members of the Class have been misled by Defendants' unlawful

7    labeling practices and actions into purchasing products they would not have otherwise purchased

8    had they known the truth about these products. Plaintiff and members of the Class who purchased

9    these products paid an unwarranted premium for these products.

10       145.    Defendants' healthy claims are false and misleading and the products are in this

11   respect misbranded under identical California and federal laws. Misbranded products cannot be

12   legally sold and thus are legally worthless.

13       d.    **Defendants Violate California Law By Making Unlawful "Sugar Free"
              or "Sugarless" Nutrient Claims**

14

15       146.    Federal and California regulations regulate sugar free claims as a particular type of

16   nutrient content claim.  Specifically, 21 C.F.R. § 101.60 contains special requirements for nutrient

17   claims that use the term "sugar free."  Pursuant to the Sherman Law, California has expressly

18   adopted the federal labeling requirements of 21 C.F.R. § 101.60 as its own.  California Health &

19   Safety Code § 110100.

20       147.    21 C.F.R. § 101.60(c)(1) provides that:

21       Sugar content claims—(1) Use of terms such as "sugar free," "free of sugar," "no
22   sugar," "zero sugar," "without sugar," "sugarless," "trivial source of sugar,"
     "negligible source of sugar," or "dietary insignificant source of sugar." Consumers
23   may reasonably be expected to regard terms that represent that the food contains
     no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product
24   which is low in calories or significantly reduced in calories. Consequently, except
     as provided in paragraph (c)(2) of this section, a food may not be labeled with such
25   terms unless: (i) The food contains less than 0.5 g of sugars, as defined in §
     101.9(c)(6)(ii), per reference amount customarily consumed and per labeled
26   serving or, in the case of a meal product or main dish product, less than 0.5 g of
     sugars per labeled serving; and (ii) The food contains no ingredient that is a sugar
27   or that is generally understood by consumers to contain sugars unless the listing of
     the ingredient in the ingredient statement is followed by an asterisk that refers to
28

the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietary insignificant amount of sugar;" and (iii)(A) It is labeled "low-calorie" or "reduced calorie" or bears a relative claim of special dietary usefulness labeled in compliance with paragraphs (b)(2), (b)(3), (b)(4), or (b)(5) of this section, or, if a dietary supplement, it meets the definition in paragraph (b)(2) of this section for ''low calorie'' but is prohibited by §§101.13(b)(5) and101.60(a)(4) from bearing the claim or (B) Such term is immediately accompanied, each time it is used, by either the statement "not a reduced calorie food," "not a low-calorie food," or "not for weight control."

148.    21 C.F.R. § 101.60(b)(2) provides that:

The terms "low-calorie," "few calories," "contains a small amount of calories," "low source of calories," or "low in calories" may be used on the label or in labeling of foods, except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that: (i)(A) The food has a reference amount customarily consumed greater than 30 grams (g) or greater than 2 tablespoons and does not provide more than 40 calories per reference amount customarily consumed; or (B) The food has a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and does not provide more than 40 calories per reference amount customarily consumed and, except for sugar substitutes, per 50 g ….(ii) If a food meets these conditions without the benefit of special processing, alteration, formulation, or reformulation to vary the caloric content, it is labeled to clearly refer to all foods of its type and not merely to the particular brand to which the label attaches (e.g., "celery, a low-calorie food").

149.    None of Defendants' "sugar free" and "sugarless" gum are low-calorie or suitable for weight control as they all contain more than the 40 calories per 50 grams which is the maximum amount allowed under 21 C.F.R. § 101.60(b)(2).  None of Defendants' sugar free and sugarless gum, breath mints and hard candies  are low calorie or suitable for weight control as they all contain than the 40 calories per 50 grams which is the maximum amount allowed under 21 C.F.R. § 101.60(b)(2). Most of Defendants' sugar free and sugarless gum, breath mints and hard candies exceed the low calorie cutoff by more than two or three times.

150.    For example, Dentyne mints contain 130 calories per 50 grams. Similarly, Halls Refresh Sugar Free Drops have 100 calories. Virtually all varieties of Defendants' sugar free and sugarless gums have more than 80 calories per 50 grams as well.

151.    For example, Defendants' Trident White Spearmint Sugar Free Gum has 83 calories per 50 grams.

152.    In addition, Defendants' Dentyne Ice Mint Medley Sugarless Gum has 83 calories per 50 grams.

153.    None of Defendants' sugar free gum, breath mints and hard candies are low-calorie or suitable for weight control as they all contain more than the 40 calories per 50 grams which is the maximum amount allowed under 21 C.F.R. § 101.60(b)(2). Moreover, they are not capable of satisfying the requirements for a claim of dietary usefulness that would allow the Defendants to avoid having to place a disclaimer net to the term sugar fee each time it appeared on the label.

154.    For example, as discussed *infra,* because of their failure to use the mandated serving size on their mints, Defendants have failed to comply with the nutritional labeling requirement of 21 C.F.R. § 101.9 which is a prerequisite for making a sugar free claim or a statement of dietary usefulness. Similarly, Defendants have failed to include on any of their sugar free products a "conspicuous" statement of dietary usefulness explaining the basis for the claim which also precludes the use of such a claim. Similarly, Defendants have also failed indicate on any of their product labels the fact that their products are sweetened with nutritive and non-nutritive sweeteners or to detail the percentage of the product that non-nutritive components comprise as required by regulation.

155.    Defendants thus place a prominent sugar free claim on the principal display panel of their sugar free gums. This is what is visible to consumers. Defendants hide their purported statement of dietary usefulness on the back of the package where it is invisible to the consumer as it is either underneath or in back of the panel invisible from the consumers' view. This is contrary to the rules for statements of dietary usefulness as well as other labeling provisions governing conspicuousness and information placement. The whole point of the labeling rules is to provide useful information to consumers not hide it away from them.

156.    Rather than clearly disclose that their products have calories, Defendants have resorted to false statements to conceal this fact.

157.    Building on such deception, Defendants have repeatedly represented through their advertising campaigns that their sugar free products sweetened with calorific sweeteners are low-

calorie.

158. This is false, as Defendants sugar free products including their sugar free gums all provide more than 40 calories per 50 grams. All varieties of Defendants' sugar free gum and hard candy have more than 80 calories per 50 grams as well. Yet the label on each of these products contains a statement "sugar free" without the FDA required disclosure "not a reduced calorie food," "not a low-calorie food," or "not for weight control."

159. Notwithstanding the fact that 21 C.F.R. § 101.60(c)(1) bars the use of the terms "sugar free" on foods that are not low-calorie unless they bear an express warning immediately adjacent to each use of the terms that discloses that the food is "not a reduced calorie food," or "not a low-calorie food," or "not for weight control," Defendants have touted their non low-calorie products as sugar free and chosen to omit the mandated disclosure statement.

160. In doing so Defendants have ignored the language of 21 C.F.R. § 101.60(c)(1) that states that:

> Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories.

161. Because consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners (e.g., "sugar free" or "sugarless") as indicating a product which is low in calories or significantly reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law are falsely represented to be low-calorie through the unlawful use of terms like "sugar free" or "sugarless" that they are not allowed to bear due to their high calorific levels and absence of mandated disclosure statements.

162. The labeling for Defendants' products violates California law and federal law. For these reasons, Defendants' sugar free claims at issue in this Amended Complaint are misleading and in violation of 21 C.F.R. § 101.60 and California law, and the products at issue are misbranded as a matter of law. Misbranded products cannot be legally sold and are legally worthless.

163. Defendants have also made the same illegal claims on their websites and advertising in violation of federal and California law.

164.   In September 2007, the FDA issued a guidance letter to the food industry that indicated the FDA was concerned about unlawful sugar free type claims "that fail to bear the required disclaimer statement when these foods are not "low" or "reduced in" calories or fail to bear the required disclaimer statement in the location or with the conspicuousness required by regulation." The letter stated:

Dear Manufacturer:

The Food and Drug Administration (FDA) is concerned about the number of products we have seen that contain claims regarding the absence of sugar, such as, "sugar free" but that fail to bear the required disclaimer statement when these foods are not "low" or "reduced in" calories or fail to bear the required disclaimer statement in the location or with the conspicuousness required by regulation. As part of our continuing effort to reduce the incidence of obesity in the United States, FDA wants to ensure that consumers are provided with the label information they need to make informed choices for maintaining a healthy diet. We are highlighting accurate claims about the absence of sugar as a regulatory priority. The agency intends to take appropriate action against products that we encounter that bear a claim about the absence of sugar (e.g., sugar free) but that fail to meet each of the requirements of the regulation that defines "sugar free." We intend to pay particular attention to those foods that are required to bear a disclaimer statement under the regulation that defines "sugar free," but that fail to do so or otherwise fail to comply with the regulation, 21 CFR 101.60(c). Therefore, we are taking this opportunity to remind food manufacturers and distributors of conventional food products that the definition of "sugar free" includes several requirements.

Under the authority of the Nutrition Labeling and Education Act of 1990, FDA issued regulations for the nutrient content claim "sugar free" 58 Federal Register (FR) 2302 at 2415. "Sugar free" is defined in Title 21 of the Code of Federal Regulations 101.60(c) …

FDA has historically taken the position that consumers may associate claims regarding the absence of sugar with weight control and with foods that are low-calorie or that have been altered to reduce calories significantly. Therefore, the definition for "sugar free" includes the requirement that any food that is not low or reduced in calorie disclose that fact. Without such information some consumers might think the food was offered for weight control. See 56 FR 60421 at 60435. Consequently, the definition for "sugar free" includes the requirement that the food be labeled with the claim "low-calorie" or "reduced calorie" or bear a relative claim of special dietary usefulness labeled in compliance with 21 CFR 101.60(b)(2), (b)(3), (b)(4), or (b)(5) or such claim is immediately accompanied, each time it is used, by one of the following disclaimer statements: "not a reduced calorie food," "not a low-calorie food," or "not for weight control" (see 21 CFR 101.60(c)(1)(iii)). The disclaimer statement, when required, must accompany the claim each time it is used. In addition, the disclaimer statement is subject to the requirements of 21 CFR

101.2(c) and must appear prominently and conspicuously but in no case may the letters be less than one-sixteenth inch in height.

FDA encourages food manufacturers and distributors to review their labels and ensure that any food that bears a claim regarding the absence of sugar meet each of the requirements for that claim including the placement and conspicuousness of the disclaimer statement in 21 CFR 101.60(c)(1)(iii) when required. FDA will take appropriate action, consistent with our priorities and resources, when we find problems with the use of nutrient content claims regarding the absence of sugar in foods.

165.    Defendants ignored this FDA guidance and engaged in the exact labeling practices the FDA sought to eliminate.

166.    In addition to the industry guidance Defendants ignored, the FDA has repeatedly taken enforcement action and issued warning letters against several other companies addressing the type of misleading sugar free nutrient content claims described above.

167.    The enforcement actions and warning letters were hardly isolated, as the FDA has taken action against several other companies finding that the products were misbranded within the meaning of section 403 because the products' labels bore "sugar free" claims but did not meet the requirements to make such a claim.

168.    Defendants ignored the FDA's repeated enforcement actions and issuance of warning letters and continued to use unlawful sugar free claims on their product labels and in their advertising and marketing materials when they were prohibited from doing so.

169.    The Plaintiff saw and relied on Defendants' unlawful "sugar free" and/or "sugar less" nutrient content claims and based her purchasing decisions in part on such claims. Had Plaintiff been aware that Defendants sugar free representations were unlawful and that the products were not calories free and contained calories at levels that required a disclosure statement she would not have purchased Defendants' products.

170.    Plaintiff did not know, and had no reason to know, that Defendants' Misbranded Food Products were misbranded, and bore false low calorie nutrient claims despite failing to meet the requirements to make those nutrient claims. Plaintiff was equally unaware that Defendants' Misbranded Food Products contained calories at levels that required a disclaimer or disclosure.

Plaintiff and members of the Class who purchased the Misbranded Food Products paid an unwarranted premium for these products. Because of Defendants' labeling violations these products were misbranded and could not be legally held or sold. They were worthless.

**e.** **Defendants Violate California Law By Using Unlawful Serving Sizes**

171. In order to ensure uniformity and protect consumers from misleading schemes, Federal and California regulations regulate the serving sizes that can be utilized on food labels. These regulations prohibit food manufacturers from understating the serving sizes of their products because such a practice would mislead consumers into the erroneous belief that a particular product had fewer calories and lower levels of undesirable nutrients like sugar or calories per serving than it actually did. Specifically, 21 C.F.R. § 101.9 contains special requirements for the manner in which nutritional information is conveyed. 21 C.F.R. § 101.9(b)(2) provides that serving size declared on a product label shall be determined from the "Reference Amounts Customarily Consumed Per Eating Occasion * * * *" (reference amounts) that appear in [21 C.F.R. §] 101.12(b).

172. 21 C.F.R. § 101.12 provides that the serving size for breath mints is 2 grams.

Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements of 21 C.F.R. § 101.9 and 21 C.F.R. § 101.12 as its own. California Health & Safety Code § 110100.

173. In furtherance of their health and nutrition strategy Defendants have chosen not to use the correct serving size mandated by law in order to understate the calories in some of their breath mint products and call the product "sugar free" or "sugarless."

174. In March 2004, the FDA issued a guidance letter to the food industry that indicated the FDA was concerned about the use of unlawful serving sizes. The letter stated:

Dear Food Manufacturer:

As you are aware, the Food and Drug Administration (FDA) is involved in an initiative to give consumers helpful information that will enable them to make more informed choices about their diets and lifestyle in an effort to reduce the incidence of overweight and obesity in the United States A key component in providing nutrient information to consumers is the "Nutrition Facts" panel on food packages. In order for this nutrition information to be useful to consumers, it

must be accurate and based on a meaningful amount of food. After the Nutrition Labeling and Education Act was enacted, thereby mandating nutrition labeling, FDA promulgated regulations that specify how serving size must be derived from an appropriate reference amount for the food commodity in question. We recognize that these regulations are very technical. However, FDA has determined that as part of the Obesity Initiative the agency will highlight accurate serving size declarations on food products as a priority. As a result, FDA intends to take appropriate action against violative products, especially when we encounter products that declare a serving size on its label that is substantially different than what it should be by regulation. Therefore, we are taking this opportunity to remind the food industry about the rules for determining an appropriate serving size.

Manufacturers must use the information provided in Title 21 of the Code of Federal Regulations (CFR) sections 101.9(b) and 101.12 to determine a specific serving size for their products….

FDA encourages the food industry to review their nutrition information and assure that the serving size declared is appropriate for the commodity in question. FDA also encourages manufacturers to refer to our guidance documents at www.cfsan.fda.gov for additional information on serving sizes. FDA intends to make accurate serving size declarations one of our priorities and we will advise manufacturers when we encounter apparent errors in declared serving sizes.

175.    Defendants ignored this FDA guidance and engaged in the exact unlawful serving size practices the FDA sought to eliminate.

176.    In addition to the industry guidance Defendants ignored, the FDA has repeatedly taken enforcement action and issued warning letters addressing the type of misleading serving size representations described above.

177.    Defendants ignored the FDA's repeated enforcement actions and issuance of warning letters and continued to use unlawful serving size claims on their product labels and in their advertising and marketing materials when they were prohibited from doing so.

178.    Plaintiff did not know, and had no reason to know, that Defendants' Misbranded Food Products were misbranded, and bore serving size claims. Plaintiff was equally unaware that the serving size used by Defendants understated calories per serving and that Defendants' Misbranded Food Products contained calories at levels that required a disclaimer or disclosure. Plaintiff and members of the Class who purchased the Misbranded Food Products paid an unwarranted premium for these products. Because of Defendants' labeling violations these products were misbranded and could not be legally held or sold. They were worthless.

1
2

**D.**   **Defendants' Makes Unlawful and Misleading Evaporated Cane Juice Claims**

3   179.   As discussed herein, evaporated cane juice is an unlawful term as it is merely a

4   false and misleading name for another food or ingredient that has a common or usual name,

5   namely sugar or dried cane syrup.

6   180.   Such products mislead consumers into paying a premium price for products that do

7   not satisfy the minimum standards established by law for those products and for inferior or

8   undesirable ingredients or for products that contain ingredients not listed on the label.

9   181.   Defendants' false, unlawful, and misleading product descriptions and ingredient

10   listings render products misbranded under California law.  Misbranded products cannot be legally

11   sold and are legally worthless.  Plaintiff and the class paid a premium price for the Misbranded

12   Food Products.

13   182.   Defendants have also made the same illegal claims on their websites and

14   advertising in violation of California law.

15   183.   21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California, prohibit

16   manufacturers from referring to foods by anything other than their common and usual names.  21

17   C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers from referring to

18   ingredients by anything other than their common and usual names.  Defendants have violated

19   these provisions by failing to use the common or usual name for ingredients mandated by law, or

20   because the products lacked the ingredient entirely.  In particular, Defendants used the unlawful

21   term evaporated cane juice on it products in violation of numerous labeling regulations designed

22   to protect consumers from misleading labeling practices.  Defendants' practices also violated

23   express FDA policies.

24   184.   In October of 2009, the FDA issued Guidance for Industry: Ingredients Declared

25   as Evaporated Cane Juice, which advised industry and that:

26
27
28

[T]he term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term

falsely suggests that the sweeteners are juice…

"Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." …

As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . . ." The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))…

Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)…

The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.htm

185.    Despite the issuance of the 2009 FDA Guidance, Defendants did not remove the unlawful and misleading food labeling ingredients from their Misbranded Food Products.

186.    Defendants often list ingredients with unlawful and misleading names.    The Nutrition Facts label of the Misbranded Food Products list "Organic Evaporated Cane Juice" as an ingredient.    According to the FDA, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup."    The FDA provides that "cane syrup has a

standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.' "

187.    Various FDA warning letters have made it clear that the use of the term evaporated cane juice is unlawful because the term does not represent the common or usual name of a food or ingredient. These warning letters indicate that foods that bear labels that contain the term evaporated cane juice are misbranded.

188.    Such products mislead consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

189.    Defendants' false, unlawful, and misleading ingredient listings render products misbranded under California law. Misbranded products cannot be legally sold and are legally worthless. Plaintiff and the class paid a premium price for the Misbranded Food Products.

190.    Defendants have also made the same illegal claims on their websites and advertising in violation of California law.

**E.    Defendants Have Violated California Law By Using Misleading Containers That Are Slack Filled**

191.    Pursuant to C.F.R. 100.100 which has been adopted by California.

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both

significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

192.    Defendants routinely employed slack filled packaging to mislead consumers into believing they were receiving more than they actually were.

193.    Defendants lacked any lawful justification for doing so.

194.    Plaintiff and members of the Class relied on and were deceived by Defendants' misleading slack filled packaging.

195.    The Plaintiffs purchased slack filled packages of Defendants' Stove Top Cornbread Stuffing Mix, Jell-O Sugar Free Strawberry, and Easy Mac.

196.    Plaintiff did not know, and had no reason to know, that Defendants' Misbranded Food Products were slack filled and misbranded. Plaintiff and members of the Class who purchased the Misbranded Food Products paid an unwarranted premium for these products. Because of Defendants' slack fill packaging violations these products were misbranded and could not be legally held or sold. They were worthless.

**F.    Defendants Have Violated California Law**

197.    Defendants have manufactured, advertised, distributed and sold products that are misbranded under California law. Misbranded products cannot be legally manufactured, advertised, distributed or sold and are legally worthless as a matter of law.

198.    Defendants have violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

199.    Defendants have violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

200. Defendants have violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

201. Defendants have violated California Health & Safety Code § 110660 because their labeling is false and misleading in one or more ways.

202. Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto.

203. Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto.

204. Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

205. Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110735 because they purport to be or are represented for special dietary uses, and their labels fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

206. Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110740 because they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

207. Defendants have violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

208. Defendants have violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

209. Defendants have violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

210. Defendants have violated the standard set by 21 C.F.R. § 101.2, which has been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

211. Defendants have violated and continue to violate the standards set by 21 CFR §§ 100.100, 101.13, 101.54, 101.60, 101.65 and 105.66, which have been adopted by reference in the Sherman Law, by including unauthorized nutrient content, healthy, sugar free, sugarless and low-calorie claims on their products and labeling and by utilizing slack filled containers.

212. Defendants have violated and continue to violate the standard set by 21 CFR §101.9 which have been adopted by reference in the Sherman Law by failing to disclose nutrient information in accordance with the correct serving size of the principal food mandated by law. By using an incorrect smaller serving size, Defendants have sought to obscure that their food products actually have a higher number of calories per serving size than they advertise and depict on their product labels and that theirs food products are not low-calorie products and are not suitable for weight control purposes as a matter of law.

213. Defendants have violated and continue to violate the standard set by 21 CFR §101.12 which have been adopted by reference in the Sherman Law by failing to use the correct serving size for food products like breath mints.

214. Defendants have violated and continue to violate the standard set by 21 CFR §101.18 which have been adopted by reference in the Sherman Law, by misrepresenting theirs non-low-calorie food products as low-calorie alternatives to other food products.

215. Defendants have violated and continue to violate the standard set by 21 CFR §101.60 which have been adopted by reference in the Sherman Law, by representing either expressly or implicitly that theirs products are low-calorie and or lack sugar when they fail to meet the requirements for making such claims.

216.    By selling products that (a) bear unauthorized and unlawful sugar free and sugarless claims; (b) utilize unauthorized and unlawful serving sizes; and (c) are not low-calorie but fail to properly disclose that fact, Defendants have violated and continue to violate federal laws and regulations prohibiting the misbranding of food products including those in 21 U.S.C. § 343, which have been adopted by reference in the Sherman Law.

217.    Defendants have manufactured, distributed, advertised, marketed and sold products misbranded in violation of the standards contained in 21 U.S.C. § 343(q), which has been incorporated in the Sherman Law, and continue to do so.  Pursuant to 21 U.S.C. § 343(q), food is misbranded if, as here, it fails to utilize a proper serving size despite being mandated to do so.  *See* California Health and Safety Code § 110665.

218.    Defendants have manufactured, distributed, advertised, marketed and sold products misbranded in violation of the standards contained in 21 U.S.C. § 343(r), which has been incorporated in the Sherman Law, and continue to do so.  Pursuant to 21 U.S.C. § 343(r), food is misbranded if, as here, it bears a nutrient content claim despite failing to meet the requirements for making that claim.  *See* California Health and Safety Code § 110670.

219.    Defendants violated California law by utilizing unlawfully small serving sizes and unlawful sugar-related claims (*e.g.*, false/unlawful no sugar added claims) to make their products appear healthier than they in fact were.

220.    In addition to Defendants' violation of sections (q) and (r) of 21 U.S.C. § 343, Defendants have manufactured, distributed, advertised, marketed and sold products misbranded in violation of the standard set by sections a, f, and j of 21 U.S.C. § 343 which has been adopted by reference in the Sherman Law, and continue to do so.  Pursuant to 21 U.S.C. § 343 food shall be deemed to be misbranded if, as in the instant case:

(a) it bears a false or misleading label …
(f) its label fails to conspicuously depict any word, statement, or other information required to appear on the label or labeling and be prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use; …
 (j) it purports to be or is represented for special dietary uses, and its label fails to

bear such information concerning its vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

221.    Each of the federal requirements has been expressly adopted by the State of California and thus each of Defendants' violations of these federal standards constitutes an independent violation of state law.

### G.    Plaintiff Purchased Defendants' Misbranded Food Products

222.    Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

223.    Plaintiff purchased Defendants' Misbranded Food Products at issue in this Amended Complaint since 2008 and throughout the Class Period, including:

A.    Trident Spearmint Sugar Free Gum

B.    Dentyne Ice Peppermint Sugar Free Gum

C.    Back to Nature 100% Natural Golden Honey Oat Graham Crackers

D.    Back to Nature 100% Natural Classic Granola

E.    Capri Sun Fruit Punch

F.    Kraft Deli Deluxe American, 72 slices

G.    Planters Nut-rition Wholesome Nut Mix

H.    Country Time Pink Lemonade

J.    Stove Top Cornbread Stuffing Mix

K.    Jell-O Sugar Free Strawberry

L.    Easy Mac

M.    Crystal Light Natural Lemonade

N.    Crystal Light Natural Lemon Iced Tea

O.    Kraft Mexican Style Four Cheese

224.    During the Class Period, Plaintiff spent more than twenty-five dollars ($25.00) on Defendants' Misbranded Food Products.    Plaintiff purchased Defendants' Misbranded Food

1  Products since 2008, and throughout the Class Period.

2  225. Plaintiff read the labels on Defendants' products, including the statement of

3  identity, ingredients, serving sizes, "sugar free" claims, evaporated cane juice, natural, health and

4  nutrient content claims, where applicable, before purchasing them. Defendants' failure to disclose

5  the presence of risk-increasing nutrients and their utilization of false and improper labeling claims

6  was deceptive because it falsely conveyed to the Plaintiff the net impression that the Misbranded

7  Food Product she bought made only positive contribution to a diet, and did not contain any

8  nutrients or calories at levels that raised the risk of diet-related disease or health related condition.

9  Defendants' failure to adhere to the standards of identity for their products and to use common

10 and usual names to refer to their products ingredients misled the Plaintiff with respect to the

11 nature of the products she was purchasing. Defendants' utilization of unlawful and unauthorized

12 nutrient content and healthy claims also misled the Plaintiff with respect to the nature, nutritional

13 content and healthiness of the products she was purchasing. Defendants' utilization of unlawful

14 and unauthorized nutrient content and healthy claims also misled the Plaintiff with respect to the

15 nature, nutritional content and healthiness of the products she was purchasing. Defendants'

16 natural and preservative free claims misled Plaintiff as to the true nature, characteristics,

17 desirability and worth of the products. Defendants' deceptive slack filled packaging misled

18 Plaintiff as to the economic value she was getting from her purchases of Defendants' products.

19 226. Plaintiff relied on Defendants' package labeling, package labeling, and website

20 claims including the statement of identity, ingredients, serving sizes, "sugar free" claims,

21 evaporated cane juice, and natural, preservative free, health and nutrient content claims, package

22 size and based and justified the decision to purchase Defendants' products in substantial part on

23 Defendants' package labeling, packaging and website claims. Plaintiff would have foregone

24 purchasing Defendants' products and bought other products readily available at a lower price.

25 227. At point of sale, Plaintiff did not know, and had no reason to know, that

26 Defendants' products were misbranded as set forth herein, and would not have bought the

27 products had she known the truth about them.

28 228. As a result of Defendants' misrepresentations, Plaintiff and thousands of others in

California and the United States purchased the products at issue.

229.     Defendants' labeling, advertising and marketing as alleged herein are false and misleading and designed to increase sales of the products at issue. Defendants' misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' representations in determining whether to purchase the products at issue.

230.     A reasonable person would also attach importance to whether Defendants' Misbranded Food Products were legally salable, and capable of legal possession, and to Defendants' representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendants' Misbranded Food Products had she known they were not capable of being legally sold or held and did not possess the characteristics or nutritional attributes they were falsely represented to have by Defendants.

## CLASS ACTION ALLEGATIONS

231.     Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons in California who purchased Defendants': (1) "sugar free" or "sugarless" gum, breath mints or hard candies or (2) products labeled with the ingredient "evaporated cane juice" or 3) food products distributed or sold by the Defendants that were A) labeled or advertised as "natural" or "all natural" despite containing artificial, synthetic or unnatural ingredients, flavorings, coloring, and/or chemical preservatives; B) labeled or advertised as having no artificial flavors, colors or preservatives despite containing artificial flavors, colors or preservatives; C) labeled or advertised with a nutrient content claim a disqualifying amount of fat, saturated fat, sodium or cholesterol exceeding the levels listed in 21 C.F.R. 101.13(h); D) labeled or advertised with a defined nutrient content term listed in 21 C.F.R. 101.54 but failing to satisfy the requirements for the use of that term; or labeled or advertised as healthy despite containing disqualifying nutrient levels exceeding the levels listed in 21 C.F.R.101.65 in the last four years (the "Class").

232.     The following persons are expressly excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

233.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

234.   Numerosity:  Based upon Defendants' publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class number in the thousands, and that joinder of all Class members is impracticable.

235.   Common Questions Predominate:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, for example:

a.   Whether Defendants engaged in unlawful and misleading business practices by failing to properly package and label their Misbranded Food Products sold to consumers;

b.   Whether the food products at issue were misbranded or unlawfully packaged and labeled as a matter of law;

c.   Whether Defendants made unlawful and misleading sugar free or sugarless claims with respect to their food products sold to consumers;

d.   Whether Defendants made unlawful and misleading natural or nutrient content claims with respect to their food products sold to consumers;

e.   Whether Defendants used unlawful and misleading nutritional or ingredient information and failed to adhere to the requirements of statements of identity;

f.   Whether Defendants violated California Bus. & Prof. Code § 17200, California Bus. & Prof. Code § 17500, and the Sherman Law;

g.   Whether Plaintiff and the Class is entitled to equitable and/or injunctive relief;

h.   Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

i.   Whether Defendants were unjustly enriched by their deceptive practices.

236.   Typicality:   Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendants' Misbranded Food Products during the Class Period.  Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendants' wrongful conduct.  In addition, the

1  factual underpinning of Defendants' misconduct is common to all Class members and represents

2  a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims

3  arise from the same practices and course of conduct that give rise to the claims of the Class

4  members and are based on the same legal theories.

5     237. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class.

6  Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to

7  the interests of the Class members. Plaintiff has retained highly competent and experienced class

8  action attorneys to represent their interests and those of the members of the Class. Plaintiff and

9  Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate

10  this class action, and Plaintiff and her counsel are aware of their fiduciary responsibilities to the

11  Class members and will diligently discharge those duties by vigorously seeking the maximum

12  possible recovery for the Class.

13     238. <u>Superiority</u>: There is no plain, speedy or adequate remedy other than by

14  maintenance of this class action. The prosecution of individual remedies by members of the

15  Class will tend to establish inconsistent standards of conduct for Defendants and result in the

16  impairment of Class members' rights and the disposition of their interests through actions to

17  which they were not parties. Class action treatment will permit a large number of similarly

18  situated persons to prosecute their common claims in a single forum simultaneously, efficiently

19  and without the unnecessary duplication of effort and expense that numerous individual actions

20  would engender. Further, as the damages suffered by individual members of the Class may be

21  relatively small, the expense and burden of individual litigation would make it difficult or

22  impossible for individual members of the Class to redress the wrongs done to them, while an

23  important public interest will be served by addressing the matter as a class action. Class

24  treatment of common questions of law and fact would also be superior to multiple individual

25  actions or piecemeal litigation in that class treatment will conserve the resources of the Court and

26  the litigants, and will promote consistency and efficiency of adjudication.

27     239. The prerequisites to maintaining a class action for injunctive or equitable relief

28  pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds

1  generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

2  with respect to the Class as a whole.

3       240.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

4  are met as questions of law or fact common to class members predominate over any questions

5  affecting only individual members, and a class action is superior to other available methods for

6  fairly and efficiently adjudicating the controversy.

7       241.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be

8  encountered in the management of this action that would preclude its maintenance as a class

9  action.

10  **CAUSES OF ACTION**

11  **FIRST CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
12  **Unlawful Business Acts and Practices**

13

14       242.   Plaintiff incorporates by reference each allegation set forth above.

15       243.   Defendants' conduct constitutes unlawful business acts and practices.

16       244.   Defendants sold Misbranded Food Products nationwide and in California.

17       245.   Defendants are corporations and, therefore are "persons" within the meaning of the

18  Sherman Law.

19       246.   Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of

20  Defendants' violations of  the advertising provisions of the Sherman Law (Article 3) and the

21  misbranded food provisions of the Sherman Law (Article 6).

22       247.   Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of

23  Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

24  Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants'

25  violations of § the Consumer Legal Remedies Act, Cal Civ. Code § 17500, *et seq.*

26       248.   Defendants sold Plaintiff and the Class Misbranded Food Products that were not

27  capable of being sold legally and which were legally worthless. Plaintiff and the Class paid a

28  premium price for the Misbranded Food Products.

249.　As a result of Defendants' illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

250.　Defendants' unlawful business acts present a threat and reasonable continued likelihood of deception to Plaintiff and the Class.

251.　As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.*
Unfair Business Acts and Practices**

252.　Plaintiff incorporates by reference each allegation set forth above.

253.　Defendants' conduct as set forth herein constitutes unfair business acts and practices.

254.　Defendants sold Misbranded Food Products nationwide and in California during the Class Period.

255.　Defendants' deceptive marketing, advertising, packaging and labeling of their Misbranded Food Products was of no benefit to consumers, and the harm and injury to consumers and competition is substantial. Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendants' Misbranded Food Products that they would not have purchased absent Defendants' illegal conduct as set forth herein.

256.　Defendants' sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products. Plaintiff and the Class who purchased

1    Defendants' Misbranded Food Products had no way of reasonably knowing that the products

2    were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus

3    could not have reasonably avoided the injury each of them suffered.

4         257.   The consequences of Defendants' conduct as set forth herein outweighs any

5    justification, motive or reason therefore.  Defendants' conduct is and continues to be immoral,

6    unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and

7    the Class.

8         258.   As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business

9    and Professions Code § 17203, are entitled to an order enjoining such future conduct by

10   Defendants, and such other orders and judgments which may be necessary to disgorge

11   Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food

12   Products by Plaintiff and the Class.

13                          **THIRD CAUSE OF ACTION**
                    **Business and Professions Code § 17200, *et seq.***
14                    <u>**Fraudulent Business Acts and Practices**</u>

15        259.   Plaintiff incorporates by reference each allegation set forth above.

16        260.   Defendants' conduct as set forth herein constitutes fraudulent business practices

17   under California Business and Professions Code sections § 17200, *et seq.*

18        261.   Defendants sold Misbranded Food Products nationwide and in California during

19   the Class Period.

20        262.   Defendants' misleading marketing, advertising, packaging and labeling of the

21   Misbranded Food Products and their misrepresentations that the products at issue were salable,

22   capable of legal possession and not misbranded were likely to deceive reasonable consumers, and

23   in fact, Plaintiff and members of the Class were deceived.  Defendants have engaged in fraudulent

24   business acts and practices.

25        263.   Defendants' fraud and deception caused Plaintiff and the Class to purchase

26   Defendants' Misbranded Food Products that they would otherwise not have purchased had they

27   known the true nature of those products.

28

264.    Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

265.    As a result of Defendants' conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

## FOURTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### Misleading and Deceptive Advertising

266.    Plaintiff incorporates by reference each allegation set forth above.

267.    Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendants.

268.    Defendants sold Misbranded Food Products nationwide and in California during the Class Period.

269.    Defendants engaged in a scheme of offering Defendants' Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Food Products.  Defendants' advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products and are statements disseminated by Defendants to Plaintiff and the Class that were intended to reach members of the Class.  Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

270.    In furtherance of their plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the ingredients contained in and the nature of Defendants' Misbranded Food Products.  Plaintiff and the Class necessarily and reasonably relied on Defendants' materials, and were the intended targets of such representations.

271.    Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true ingredients and nature of Defendants' Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

272.    As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.  Misbranded products cannot be legally sold and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

273.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**<u>Untrue Advertising</u>**

274.    Plaintiff incorporates by reference each allegation set forth above.

275.    Plaintiff asserts this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

276.    Defendants sold mislabeled and Misbranded Food Products nationwide and in California during the Class Period.

277.    Defendants engaged in a scheme of offering Defendants' Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other

promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Food Products. Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products, and are statements disseminated by Defendants to Plaintiff and the Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

278. In furtherance of their plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the ingredients contained in Defendants' Misbranded Food Products, and falsely misrepresented the nature of those products. Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

279. Defendants' conduct in disseminating untrue advertising throughout California and nationwide deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Defendants' Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

280. As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

281. Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

### SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

282. Plaintiff incorporates by reference each allegation set forth above.

283. This cause of action is brought pursuant to the CLRA. Defendants' violations of the CLRA were and are willful, oppressive and fraudulent, thus supporting an award of punitive damages.

284. Plaintiff and the Class are entitled to actual and punitive damages against Defendants for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

285. Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

286. Defendants sold Misbranded Food Products in California during the Class Period.

287. Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

288. Defendants' Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

289. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5), of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular ingredients, characteristics, uses, benefits and quantities of the goods.

290. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresent the particular standard, quality or grade of the goods.

291. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants advertise goods with the intent not to sell the goods as advertised.

292.    By engaging in the conduct set forth herein, Defendants have violated and continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants represent that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

293.    Plaintiff requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).   If Defendants are not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

294.    Pursuant to Section 1782(a) of the CLRA, on May 18, 2012, Plaintiff's counsel served Wrigley with notice of Wrigley's violations of the CLRA.   As authorized by Wrigley's counsel, Plaintiff's counsel served Wrigley by certified mail, return receipt requested.   Wrigley has not responded.

295.    Defendants have failed to provide appropriate relief for their violations of the CLRA within 30 days of their receipt of the CLRA demand notice.   Accordingly, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiff is entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

296.    Plaintiff makes certain claims in this Amended Complaint that were not included in the original Complaint filed on May 17, 2012, and were not included in Plaintiff's CLRA demand notice.

292.    This cause of action does not currently seek monetary relief and is limited solely to injunctive relief, as to Defendants' violations of the CLRA not included in the original Complaint.   Plaintiff intends to amend this Complaint to seek monetary relief in accordance with the CLRA after providing Defendants with notice of Plaintiff's new claims pursuant to Cal. Civ. Code § 1782.

297.    At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

298.    Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendants for their violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

**SEVENTH CAUSE OF ACTION**
**<u>Restitution Based on Unjust Enrichment/Quasi-Contract</u>**

299.    Plaintiff incorporates by reference each allegation set forth above.

300.    As a result of Defendants' unlawful, fraudulent and misleading labeling, advertising, marketing and sales of Defendants' Misbranded Food Products, Defendants were enriched at the expense of Plaintiff and the Class.

301.    Defendants sold Misbranded Food Products to Plaintiff and the Class that were not capable of being sold or held legally and which were legally worthless.  It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiff and the Class, in light of the fact that the products were not what Defendants purported them to be.  Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendants for the products at issue.

302.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**<u>Beverly-Song Act (Cal. Civ. Code § 1790, *et seq.*)</u>**

303.    Plaintiff incorporates by reference each allegation set forth above.

304.    Plaintiff and members of the Class are "buyers" as defined by Cal. Civ. Code § 1791(b).

305.    Defendants are "manufacturers" and "sellers" as defined by Cal. Civ. Code § 1791(j) & (l).

306.   Defendants' non-gum food products are "consumables" as defined by Cal. Civ. Code § 1791(d).

307.   Defendants' natural and nutrient content claims constitute "express warranties" as defined by Cal. Civ. Code § 1791.2.

308.   Defendants, through their package labels, create express warranties by making the affirmation of fact and promising that their Misbranded Food Products comply with food labeling regulations under federal and California law.

309.   Despite Defendants' express warranties regarding their food products, the products do not comply with food labeling regulations under federal and California law.

310.   Defendants breached their express warranties regarding Defendants' Misbranded Food Products in violation of Cal. Civ. Code § 1790, *et seq.*

311.   Defendants sold Plaintiff and members of the Class Defendants' Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless. As such, Defendants' Misbranded Food Products breached their implied warranties to the Plaintiff and other members of the Class.

312.   As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

313.   Defendants' breaches of warranty were willful, warranting the recovery of civil penalties pursuant to Cal. Civ. Code § 1794.

**NINTH CAUSE OF ACTION**
**Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)**

314.   Plaintiff incorporates by reference each allegation set forth above.

315.   Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

316.   Defendants are "suppliers" and "warrantors" as defined by 15 U.S.C. § 2301(4) & (5).

317.   Defendants' food products are "consumer products" as defined by 15 U.S.C. § 2301(1).

318.    Defendants' natural and nutrient content claims constitute "express warranties."

319.    Defendants, through their package labels, create express warranties by making the affirmation of fact and promising that their Misbranded Food Products comply with food labeling regulations under federal and California law.

320.    Despite Defendants' express warranties regarding their food products, the products do not comply with food labeling regulations under federal and California law.

321.    Defendants breached their express warranties regarding their Misbranded Food Products in violation of 15 U.S.C. §§ 2301, *et seq.*

322.    Defendants sold Plaintiff and members of the Class Defendants' Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless. As such, Defendants' Misbranded Food Products breached their implied warranties to the Plaintiff and other members of the Class.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

323.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of her claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendants as follows:

A.     For an order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

B.     For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action;

C.     For an order requiring Defendants to immediately cease and desist from selling their Misbranded Food Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

1    D.    For all remedies available pursuant to Cal. Civ. Code § 1780;

2    E.    For an order awarding attorneys' fees and costs;

3    F.    For an order awarding punitive damages;

4    G.    For an order awarding pre-and post-judgment interest; and

5    H.    For an order providing such further relief as this Court deems proper.

6

7    Dated:  August 20, 2012                Respectfully submitted,

8

9

10

11

12                                          /S/ Ben F. Pierce Gore
                                            Ben F. Pierce Gore (SBN 128515)
13                                          PRATT & ASSOCIATES
                                            1901 S. Bascom Avenue, Suite 350
14                                          Campbell, CA  95008
                                            Telephone:  (408) 429-6506
15                                          Fax:  (408) 369-0752
                                            pgore@prattattorneys.com
16

17

18

19

20

21

22

23

24

25

26

27

28