1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSAN IVIE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KRAFT FOODS GLOBAL, INC., CADBURY ADAMS USA LLC, and BACK TO NATURE FOOD COMPANY,<br><br>Defendants. | Case No. C-12-02554-RMW<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>**[Re Docket No. 31]** |

Plaintiff sued defendants Kraft Foods Global, Inc., Cadbury Adams USA LLC, and Back

to Nature Food Company (collectively "defendants") under California's unfair completion law

Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL") (counts 1-3), fair advertising law, *id*. § 17500 *et*

*seq*. ("FAL") (counts 4-5), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

("CLRA") (count 6); for restitution based on unjust enrichment (count 7); and under California's

Song-Beverly Consumer Warranty Act (count 8) and the federal Magnuson-Moss Warranty Act

(count 9).   The laws alleged to be violated as a predicate for the "unlawful" prong of plaintiffs'

UCL claim include provisions of the state Sherman Food, Drug, and Cosmetic Laws ("Sherman

Laws") and California Health & Safety Code § 109875 *et seq.*  Defendants move to dismiss all counts for failure to state a claim.  Having considered the arguments of the parties, and for the reasons set forth below, this court GRANTS-IN-PART and DENIES-IN-PART defendants' motion to dismiss.

# I. BACKGROUND

## A.  Statutory and Regulatory Framework

In 1938, Congress enacted the Federal Food, Drug, and Cosmetic Act ("FDCA"), codified at 21 U.S.C. § 301 *et seq.*.  "The [FDCA] gives the [United States Food and Drug Administration ("FDA")] the responsibility to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled,' 21 U.S.C. § 393(b)(2)(A), and the FDA has promulgated regulations pursuant to this authority, *see, e.g.*, 21 C.F.R. § 101.1 *et seq.*" *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009).   "There is no private right of action under the FDCA." *Id.* (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 810 (1986)).  Rather, "the FDA enforces the FDCA and its regulations through administrative proceedings." *Id.*

In 1990, Congress enacted the Nutrition Labeling and Education Act ("NLEA"), codified in scattered sections of 21 U.S.C., amending the FDCA.  "The NLEA aimed to 'clarify and . . . strengthen the [FDA's] authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods.'" *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1116 (N.D. Cal. 2010) (quoting H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337).  For example, 21 U.S.C. § 343 provides that a "food shall be deemed misbranded" if, *inter alia*, it contains a "false or misleading label," § 343(a); if information required on the label is "not prominently placed" on the label in comparison with other words, § 343(f); if it "bears or contains any artificial flavoring, artificial coloring, or chemical preservative" without "bear[ing] labeling stating that fact," § 343(k); if it does not properly identify nutrition information, for example, serving size, number of servings,

1  calories, and certain nutrients, § 343(q); or if it contains improper "nutrition levels and health

2  related claims," § 343(r) ("nutrient content claims").

3       The NLEA also "amended the FDCA by adding [21 U.S.C. § 343-1(a),] an express

4  preemption provision." *Lockwood*, 597 F. Supp. 2d at 1030.  Section 343-1(a) provides in

5  relevant part that:

> [N]o State or political subdivision of a State may directly or indirectly establish
> under any authority or continue in effect as to any food in interstate commerce--
> . . .
>       (3) any requirement for the labeling of food of the type required by section
> . . . 343(d) [misleading container], 343(f) [prominence of information on label],
> 343(h) [representations as to standards of quality and fill of container], . . . or
> 343(k) [artificial flavoring, artificial coloring, or chemical preservatives] of this
> title *that is not identical* to the requirement of such section
> . . .
>       (4) any requirement for nutrition labeling of food *that is not identical* to the
> requirement of section 343(q) [nutrition information] of this title
> . . .
>       (5) any requirement respecting any claim of the type described in section
> 343(r)(1) [nutrient content claims] of this title, made in the label or labeling of
> food *that is not identical* to the requirement of section 343(r) of this title . . . .

6
7
8
9
10
11
12
13
14

15  21 U.S.C. § 343-1(a)(3)-(5) (emphases added).  The express preemption provisions "reach[]

16  beyond positive enactments like statutes and regulations, to embrace common-law duties and

17  judge-made rules." *Chacanaca*, 752 F. Supp. 2d at 1118 (citing *Bates v. Dow Agrosciences, LLC*,

18  544 U.S. 431, 443 (2005)).  The NLEA, however, does not "preempt any provision of State law"

19  not "expressly preempted under [21 U.S.C. § 343-1(a)]." *Id.* (quoting Pub. L. No. 101-535,

20  § 6(c)(1), 104 Stat. 2353, 2364).

21
22       **B.  California State Laws**

23       California's Sherman Laws adopt the federal labeling requirements as the food labeling

24  requirements of the state.  Cal. Health & Safety Code § 110100 ("All food labeling regulations

25  and any amendments to those regulations adopted pursuant to the federal act, in effect on January

26  1, 1993, or adopted on or after that date shall be the food regulations of this state.").  In addition

27  to this blanket provision, the Sherman Laws specifically adopted certain provisions that mirror or

28

incorporate by reference the FDCA and NLEA food labeling and packing requirements, including

the following provisions that, *inter alia*, form the basis for the "unlawful" prong of plaintiff's

UCL claim:

> Any food is misbranded if its labeling is false or misleading in any particular, *id.* § 110660;

> Any food is *misbranded if its labeling does not conform with the requirements for nutrition labeling set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulations adopted pursuant thereto*, *id.* § 110665 (emphasis added);

> Any food is *misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto*, *id.* § 110670 (emphasis added);

> Any food is misbranded if any word, statement, or other information required pursuant to this part to appear on the label or labeling is not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use, *id.* § 110705;

> Any food is misbranded if it purports to be, or is represented, for special dietary uses . . . and its label does not bear information concerning any vitamin or mineral content, or other dietary property as the department prescribes, by regulation, as necessary to fully inform purchasers as to the food's value for that use, *id.* § 110735; and

> Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact. Exemptions may be established by the department, *id.* § 110740.

*See* Amended Complaint ("AC") ¶¶ 52, 198-218.

### C.  The Products and Labels at Issue

The plaintiff's claims are based on allegedly unlawful and misleading labels or packaging

on a variety of defendants' consumer food products, including gum, crackers, granola, fruit punch,

cheese, nut mix, lemonade, stuffing mix, Jell-O, and Easy Mac.  *See* AC ¶ 223.  The plaintiff

alleges that the following representations on the product packaging or product websites were

unlawful and misleading in violation of the Sherman Laws: (1) "natural" or "all natural" claims; (2) "no artificial" colors/sweeteners/flavors/preservatives/ingredients claims; (3) nutrient content claims; (4) health claims; (5) "sugar free" or "sugarless" claims; (6) stated serving sizes; and (7) "evaporated cane juice" claims.  Opp. Br. 3, Dkt. No. 39.   Plaintiff alleges that she "read the labels," and was "misled . . . with respect to the nature, nutritional content and healthiness of the products she was purchasing." *Id.* ¶ 225.  Plaintiff further alleges that she "based and justified the decision to purchase [d]efendants' products in substantial part on [d]efendants' package labeling, packaging and website claims," and "would have foregone purchasing [d]efendants' products and bought other products readily available at a lower price." *Id.* ¶ 226.

The claims are also based on certain products that plaintiff did not purchase but bearing similar labels to those products that she purchased, including Back to Nature Classic Cream Cookes, Fudge Mint Cookies, and Fudge Striped Cookies ("no artificial flavors or preservatives" claims), *id.* ¶ 87; Halls Refresh Sugar Free Drops, *id.* ¶ 150 ("sugar free" claims); and (4) Trident White Spearmint Sugar Free Gum, *id.* ¶ 151 ("sugar free" claims).

## II. ANALYSIS

### A.  Legal Standard

"After the pleadings are closed[,] . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  When considering a motion for judgment on the pleadings, the court takes all factual allegations in the complaint as true and construes them in a light most favorable to the plaintiff.  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012).   To survive a motion to dismiss for failure to state a claim, the facts pled need only give rise to "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "However, this principle is innapplicable to legal conclusions; 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are not taken as true." *Delacruz*

1  *v. Cytosport, Inc.*, No 11-3532, 2012 WL 2563857, *5 (N.D. Cal. June 28, 2012) (quoting
2  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

3  **B.  Judicial Notice**

4  The court takes judicial notice of exhibits 1-25, filed by defendants in support of this
5  motion.  Dkt. 33.  Exhibits 1-21 depict the packaging of the products plaintiff challenged in the
6  AC.  Exhibits 22-23 portray unchallenged product packaging bearing similar labels to the
7  challenged products, where the images are available on the internet.  Exhibits 24 and 25 are
8  publicly available FDA publications on the FDA website.
9  The court also takes judicial notice of exhibit A, filed by defendant in support of their
10  reply brief, which is a picture of the Kraft Mexican Style Four Cheese package at issue in the AC.
11  Dkt. 45-1.

12  **C.  Standing under the UCL, FAL and CLRA**
13
14  Article III standing, for purposes of a motion to dismiss, requires a plaintiff to plead
15  "injury in fact," "a causal connection between the injury and the conduct complained of," and a
16  likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of*
17  *Wildlife*, 504 U.S. 555, 561 (1992).  In particular, the injury must be "an invasion of a legally
18  protected interest which is (a) concrete and particularized and (b) actual or imminent, not
19  conjectural or hypothetical."  *Id.*  (interal quotation marks omitted).
20
21  California's UCL and FAL incorporate Article III standing requirements, and additionally
22  require that the plaintiff plead an economic injury.  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310,
23  322-23 (2011); *see also TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1 (9th Cir.
24  2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury . . . and
25  'immediate' causation. . . .  Neither is required for Article III standing." (internal citations
26  omitted)).  Under the UCL and FAL, "a plaintiff suffers 'injury in fact' . . . when he or she has: (1)

expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." *Chacanaca*, 752 F. Supp. 2d at 1125.  To satisfy the injury-in-fact requirement for unfair competition claims, "courts in California require that plaintiffs demonstrate the purchase of products as a result of deceptive advertising." *Id.* (citing *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005)).

### 1.  Whether plaintiff suffered cognizable injury

Defendants allege that plaintiff suffered no injury-in-fact because "[p]laintiff's alleged harm is not real harm; it is merely a legal construct.  Plaintiff paid for gum and nuts and sweet beverages.  The goods were not tainted, spoiled, adulterated, or contaminated. . . .  And Plaintiff consumed the products without incident or physical injury." Mot. 29, Dkt. No. 31.   Here, defendants' argument misses the mark, because plaintiff's injury is based on the allegation that she would not have *purchased* the product if she had known that the labels were unlawful.  The alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair competition claims.  *See  Chacanaca*, 752 F. Supp. 2d at 1125; *Chaves v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x 359, 360-61 (9th Cir. 2009); *Kashin v. Hershey Co.*, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9, 2012); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159381, at *2-3 (N.D. Cal. Jan. 10, 2011).  To the extent the injury alleged is reliance on *misleading*, as opposed to unlawful, labels, whether plaintiff was actually misled is a factual question that is an inappropriate basis for dismissal at this stage.  *See Kashin*, 2012 WL 5471153, at *7 ("[T]he issues Defendant raise ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is . . . beyond the scope of this Rule 12 (b)(6) motion."); *Astiana v. Ben & Jerry's Homemade, Inc.* ("*Ben & Jerry's*"), 2011 WL 2111796,

1    *4 (N.D. Cal. May 26, 2011) (same).

2              **2.  Products plaintiff did not purchase**

3              Defendants further argue that plaintiff lacks standing to sue based on products that she did

4    not herself purchase.  Although courts are split as to whether actual purchase is required to

5    establish the requisite injury-in-fact, *see Miller v. Ghirardelli Chocolate Co.*, 2012 WL 6096593,

6    at *6-7 (N.D. Cal. Dec. 7, 2012) (recognizing split and analyzing cases), in this case, the court

7    agrees with defendants that there can be no requisite *pecuniary* injury where plaintiff did not

8    herself purchase the product at issue.  The alleged injury in this case is that plaintiff "based and

9    justified the decision *to purchase* [d]efendants' products in substantial part on [d]efendants'

10   package labeling, packaging and website claims" and "*would have foregone purchasing*

11   [*d*]*efendants' products* and bought other products readily available at a lower price."  AC ¶ 226

12   (emphases added).  *See Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11,

13   2012) ("[C]laims related to products not purchased must be dismissed for lack of standing.");

14

15   *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) (same);

16   *Mlejnecky v. Olympus Imaging Am. Inc.*, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011)

17   (same); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10,

18   2011) (same); *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) ("[P]laintiff

19   cannot expand the scope of h[er] claims to include a product [s]he did not purchase or

20   advertisements relating to a product that [s]he did not rely upon.").  The court dismisses all claims

21

22   related to products plaintiff did not herself purchase, with leave to amend.

23

24             **D.  Primary jurisdiction doctrine**

25             "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a

26   complaint without prejudice pending the resolution of an issue within the special competence of

27   an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

28   The doctrine "is committed to the sound discretion of the court when 'protection of the integrity

1  of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'"

2  *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, (9th Cir. 2002) (quoting *United*

3  *States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)).  Courts consider the

4  following non-exaustive factors in deciding whether the doctrine of primary jurisdiction applies:

5  "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an

6  administrative body having regulatory authority (3) pursuant to a statute that subjects an industry

7  or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in

8  administration."  *Id.*  The doctrine "is to be used only if a claim 'requires resolution of an issue of

9  first impression, or of a particularly complicated issue that Congress has committed to a

10  regulatory agency."  *Time Warner*, 523 F.3d at 1114 (quoting *Brown v. MCI WorldCom Network*

11  *Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)).

12       Defendants first argue that plaintiff's claims are mere attempts to privately enforce

13  provisions of the FDCA and NLEA, federal acts whose enforcement is within the express

14  jurisdiction of the FDA.   Defendants rely primarily on the Ninth Circuit Court of Appeal's

15  decision in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), where the

16  court of appeals dismissed federal Lanham act claims implicitly on the basis of primary

17  jurisdiction with the FDA.  In *Pom*, a juice manufacturer, Pom Wonderful, brought claims against

18  Coca-Cola under the Lanham Act and under California's UCL and FAL for unfair competition

19  and false advertising based on the alleged use of a deceptive name and label for its juice product.

20  679 F.3d at 1176.  The Ninth Circuit found that Coca-Cola's product name and labeling, to the

21  best the court could tell, complied with the FDCA, and thus allowing Pom to proceed with the

22  Lanham Act claim would "undermine the FDA's regulations and expert judgments."  *Id.* at 1176-

23  77 ("If the FDA believes that more should be done to prevent deception, or that Coca–Cola's label

24  misleads consumers, it can act.  But, under our precedent, for a court to act when the FDA has

25  not—despite regulating extensively in this area—would risk undercutting the FDA's expert

26  judgments and authority.").  To the extent Coca-Cola's compliance was unclear, the court held

27  that it is impermissible for the "court originally to interpret ambiguous FDA regulations, because

28  rendering such an interpretation would usurp the FDA's interprative authority."  *Id.* at 1176.  The

court of appeals, however, did not resolve Pom's state law UCL and FAL claims, and remanded

those claims to the district court to rule on standing.  *Id.* at 1178-79.

Defendants argue that *Pom*'s holding is equally applicable to plaintiff's state law claims

here because, just like Pom's claims under the Lanham Act , "allowing such a suit [under the

UCL, FAL or CLRA] would undermine Congress's decision to limit enforcement of the FDCA to

the federal government.'" Mot. 5 (quoting *Pom*, 679 F.3d at 1176).   In *Astiana v. Hain Celestial*

*Grp.* ("*Hain Celestial*"), --F. Supp. 2d --, 2012 WL 5873585 (N.D. Cal. Nov. 19, 2012), this court

recently extended the court of appeal's reasoning in *Pom* to state law unfair competition claims.

In *Hain Celestial*, the issue was whether the defendant's cosmetic products bearing the terms "all

natural," "pure natural," and "pure, natural, and organic" were false and misleading for the

purposes of state law UCL, FAL and CLRA claims.  *Id.* at *1.  The *Hain Celestial* court relied on

*Pom Wonderful*, holding that:

> In the absence of any FDA rules or regulations (or even informal policy
> statements) regarding the use of the word "natural" on cosmetics labels, the court
> declines to make any independent determination of whether defendants' use of
> "natural" was false or misleading.  Doing so would 'risk undercutting the FDA's
> expert judgments and authority.' *Pom* at 1177.  Thus, the court finds that plaintiff's
> claims are barred under the primary jurisdiction doctrine.

*Hain Celestial*, 2012 WL 5873585, *3.   Thus, where the FDA has yet to speak on whether a

particular label or claim on a consumer product is unlawful or misleading, it may be appropriate

to dismiss a plaintiff's state law unfair competition claims based on that particular label or claim

under the primary jurisdiciton doctrine.  *See id.*  In contrast, however, where FDA policy is

clearly established with respect to what constitutes an unlawful or misleading label, the primary

jurisdiction doctrine is inapplicable because there is little risk that the courts will undermine the

FDA's expertise.  *See id.* at *1 (explaining that courts "regularly decide whether conduct is false

or misleading" when such a decision would not "'undermin[e], through private litigation, the

FDA's considered judgments'" (quoting *Pom Wonderful*, 679 F.3d at 1178)).

Here, the primary jurisdiction doctrine is inapplicable to the vast majority of plaintiff's

state UCL, FAL and CLRA claims, which, as explained *infra*, are predicated on California state law violations that mirror or are identical to FDA provisions which require no original interpretation by this court.  *See* Part II.E *infra* (explaining that the FDA policy is already known with respect to the majority of the alleged unlawful or misleading labels).

With respect to the "one mint" serving size claims, however, the FDA is currently engaged in rulemaking procedures to *change* its existing requirements for breath mints, and thus the doctrine of primary jurisdiction is appropriate.  Plaintiff alleges that she relied on unlawful and deceptive labels in purchasing Dentyne breath mint packages containing a "one mint" serving size claim.  According to plaintiff, the serving size should be stated as two grams (four mints), and not 0.5 grams (one mint), based on a 1993 regulation providing a "reference amount" (i.e., "Reference Amounts Customarily Consumed Per Eating Occasssion" ("RACC")) of two grams for hard candies and breath mints.  21 C.F.R. § 101.12(b); 58 Fed. Reg. 2229, 2297 (Jan. 6, 1993).  In 1997, however, the FDA proposed a regulation (the "1997 proposal") to change the RACC for small breath mints because that "the data suggest[ed] that serving sizes near 2 g are too large for small breath mint products."  62 Fed. Reg. 67775, 67776 (proposed Dec. 30, 1997).  Because the data showed that small breath mints, like those at issue here, are "designed to be consumed singly or in small numbers, and that consumers do in fact, limit their consumption to such amounts," the FDA propsed requiring the serving size on the label of all breath mints to be declared as one mint to more accurately reflect consumption across the broad spectrum of breath mint sizes . . . "  *Id.*  The FDA heard notice and comments on the 1997 proposal in 2005, and in February 2012, included the proposed rule on its regulatory agenda for the year.  Dept. of Health & Human Servs., Regulatory Agenda, 77 Fed. Reg. 7946-01, 7955 (Feb. 13, 2012).  Because the FDA is currently in the process of amending its serving size regulations with respect to small breath mints, which includes those at issue here, the court declines to usurp the FDA's expertise in

this area.  *See Taradejna v. General Mills, Inc.*, ---F. Supp. 2d ---, 2012 WL 6113146, at *5 (D.

Minn. 2012) (dismissing a claim under the primary jurisdiciton doctrine because, "given that the

FDA has issued its 2009 Proposed Rule on the standard of identity for yogurt, it would be

imprudent for the Court, at this juncture, to substitute its judgment for that of the Agency's while

revision of the standard of identity is pending."); *Gordon v. Church & Dwight Co.*, 2010 WL

1341184, at *2 (N.D. Cal. Apr. 2, 2010) (dismissing UCL, FAL and CLRA claims where, *inter*

*alia*, "the FDA has stated that it is still considering public comments and other data in connection

with warnings similar to those that plaintiffs seek to have the court impose").  The court dismisses

plaintiff's state law claims based on "one mint" serving size labels under the primary jurisdiction

doctrine.

      **E.  Express preemption**

      Defendants also argue that the plaintiff's claims are preempted under 21 U.S.C. § 343-1,

the FDCA's express preemption provision.  According to defendants, because each and every

food label at issue is in *compliance* with federal law, a judgment in plaintiff's favor would impose

different or additional requirements than those of the FDCA and NLEA, and thus express

preemption applies.  Plaintiff counters that each and every label or package at issue actually

violates exisiting FDA policies, and thus, plaintiff seeks to impose nothing more than what the

FDA already requires.

      Here, plaintiff's state UCL, FAL and CLRA claims are predicated not on the FDCA or

NLEA, but rather on California's Sherman Laws, including California Health & Safety Code

§§ 110100, 110660, 110665, 110670, 110705, 110735, and 110740, which as discussed above,

mirror or incorporate the relevant FDCA and NLEA provisions and implementing regulations by

reference.  California courts generally hold that there is no bar to bring suits to enforce California

laws.  *See, e.g.*, *Kashin*, 2012 WL 5471153, at *5 ("In this case . . . Plaintiff does not bring a

cause of action based on the federal FDCA or NLEA but rather based on state laws; as such, the *Pom Wonderful* holding is inapplicable as to whether section 337(a) preempts the claims based upon California state law."); *In Re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1084 n.5 (2008) ("There is no dispute that, under California law, private parties may assert UCL claims based on violations of the Sherman Law.").  "[T]he state duties in such a case 'parallel' rather than add to, federal requirements." *Reigel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008).

Courts in this district generally find express preemption under the FDCA only when: (1) the FDA requirements with respect to a particular food label or package is clear; and (2) the product label or package at issue is compliance with that policy, such that plaintiff necessarily seeks to enforce requirements in excess of what the FDCA, NLEA, and the implementing regulations require.  *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1102-03 (N.D. Cal. 2012) (finding express preemption where the defendant's uses of the terms "fruit flavored" and "naturally flavored" on fruit snacks were in compliance with FDA regulations); *Chacanaca*, 752 F. Supp. 2d at 1118-23 (finding express preemption where the defendant's uses of the terms "cholesterol free" and "0g Trans Fat" were in compliance with FDA regulations); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1119-20 (C.D. Cal. 2010) (finding express preemption  where plaintiff's state law claims imposed an obligation for trans fat disclosure that was not required by federal law ); *Red v. The Kroger Co.*, No. 10-1025, 2010 WL 4262037, at *4-7 (C.D. Cal Sept. 2, 2010) (finding express preemption where defendant's products were FDA regulations-compliant).

The court first determines whether the labels and packages subject to explicit FDCA and NLEA provisions (and FDA regulations implementing the same) are expressly preempted.  These are: **(1)** the "natural lemon [lemondade] flavor" claims on the Crystal Light products; **(2)** the "no artificial sweeteners or flavors" claims on the Country Time Pink Lemonade Drink Mix; **(3)** the

nutrient content claims (a) "good source" and "wholesome" on Planter's Nut-trition Wholesome Nut Mix and (b) "with added . . . vitamin D" and "Reduced Fat" on Kraft cheese products; **(4)** the "sugar free" and "sugarless" claims on various gum and mint products; and **(5)** slack fill packaging on Easy Mac, Jell-O Sugar Free Strawberry, and Stove Top Cornbread Stuffing Mix.

The court then determines whether **(6)** the "evaporated cane juice" claims on Back to Nature granola and crackers and **(7)** the "all natural"-type labels on, *inter alia*, on Kraft Mexican Style Four Cheese, Back to Nature granola and crackers, and the Crystal Light products are preempted.  There are no federal laws or regulations directly on point governing "evaporated cane juice" claims or "all natural" type claims, but the FDA has nevertheless articulated a policy position with respect to each.

### 1.  "Natural lemon [lemonade] flavor" claims

Plaintiff alleges that the "natural lemon [lemonade] flavor with other natural flavor" labels on defendants' Crystal Light products are misleading because the products are "packed with artificial and synthetic chemicals, preservatives and coloring."  Opp. Br. 14 (citing AC ¶ 68).  FDA regulations expressly govern the use of "natural flavor" labels.  Under 21 C.F.R. § 101.22(i)(1), a product may contain a "natural flavor" label even if the product contains artificial, non-flavoring coloring or preservatives, as long as the "characterizing flavor" is, in fact, natural.  *Lam*, 859 F. Supp. 2d at 1103 ("So long as that product 'contains natural flavor' which is 'derived from' the 'characterizing food ingredient,' it will not run afoul of the regulation.").  Here, defendants' "natural flavor" labels appear to be in compliance with 21 C.F.R. § 101.22(i)(1) because, as defendants' assert and plaintiff does not dispute in the opposition brief, the purchased Crystal Light Products contain a natural characterizing flavor derived from lemon.  *See* 21 C.F.R. § 101.22(a)(3) and § 182.20 ("[N]atural flavor or natural flavoring means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any products of roasting,

heating or enzymolysis, which contains the flavoring consitutents derived from [lemon or lemon juice].").

Under 21 C.F.R. § 101.22(i)(2), however, if the product contains "any *artificial flavor* which simulates, resembles or reinforces the characterizing flavor . . . the name of the characterizing flavor shall be accompanied by the words 'artificial' or 'artificially flavored'" (emphasis added).  The FDA defines "artificial flavor" in 21 C.F.R. §§ 101.22(a)(1):

> The term artificial flavor or artificial flavoring means any substance, the function of which is to impart flavor, which is not derived from a [natural product]. . . . Artificial flavor includes the substances listed in §§ 172.515(b) and 182.60 of this chapter except where these are derived from natural sources.

Although plaintiff does state that certain compounds "provided [the Crystal Light] products with artificial flavor," AC ¶ 68, none of those compounds are actually listed at §§ 172.515(b) and 182.60 as "artificial flavors."  Even if these compounds could be artificial flavors, the court need not answer that question because plaintiff does not allege *any* cognizable claim that these ingredients actually "simulate[], resemble[], or reinforce[] the characterizing [lemon] flavor," which would be necessary to adequately plead any violation of 21 C.F.R. § 101.22(i)(2).  *See Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that  a defendant has acted unlawfully.");  *Twombly*, 550 U.S. at 561 ("Factual allegation must be enough to raise a right to relieve above the speculative level.").  Moreover, at oral argument, the plaintiff's counsel focused their argument exclusively on the presence of unnatural *ingredients* generally, rather than unnatural flavors, making it clear to the court that plaintiff did not even intend to plead a violation of 21 C.F.R. § 101.22(i)(2).   This case is like *Lam*, where "[t]he crux of the []AC is that the [products'] labeling is deceptive because the products' *ingredients, not their flavors*, are unnatural."   859 F. Supp. 2d at 1102 (emphasis added).   The *Lam* court held that such allegations were insufficient to state any violation of the FDA regulations because "a product may

be labeled as 'fruit flavored' or 'naturally flavored,' even if it does not contain fruit or natural

ingredients . . . [s]o long as that product 'contains natural flavor' which is 'derived from' the

'characterizing food ingredient.'"  *Id.* at 1102-03.  Because there is no dispute here that the lemon

flavor in the Crystal Light product is a natural flavor under the regulations, the natural lemon

flavor labels are in compliance with FDA regulation.  Like in *Lam*, plaintiff's claims concerning

the "natural lemon *flavor*" labels are preempted by the FDCA, *see id.* at 1103, and dismissed with

leave to amend.

### 2.  "No artificial sweeteners or flavors"

Plaintiff alleges that she relied on unlawful and deceptive "no artificial sweeteners or

flavors" labels in purchasing Country Time Pink Lemonade Drink Mix.  According to plaintiff,

the drink mix contains maltodextrin, an artificial sweetner, and sodium citrate, an artificial

flavoring agent, and thus the "no artificial" labels are false and misleading.  *See* Cal. Health &

Safety Code § 110740 (which mirrors 21 U.S.C. § 343(k), requiring any product that "bears or

contains any artificial flavoring, artificial coloring, or chemical preservatives . . . [to] bear[]

labeling stating that fact"); AC ¶ 85.  Defendants counter that these claims are expressly

preempted because, under FDA regulations, maltodextrin is not a sweetener and sodium citrate is

not a flavoring agent, and thus the labels comply with all FDA regulations on point.  Defendants

rely on: (1) 21 C.F.R. § 184.1444, which defines "maltodextrin" as "a nonsweet nutritive

saccharide polymer"; and (2) the FDA's "Listing of Specific Substances Affirmed as [Generally

Recognized as Safe ("GRAS")], which defines "sodium citrate" as "the sodium salt of citric acid,"

21 C.F.R. § 184.1751, and "citric acid" as "a naturally occurring consitutent of plant and animal

tissues."  21 C.F.R. § 184.1033.

The FDA's definitions of maltodextrin and sodium citrate in the list of GRAS substances

do not exclude the possibility that these ingredients could be used in the drink mix at issue as

sweetening or flavoring agents, which would require disclosure under California Health & Safety Code § 110740.  Similar to the "natural flavor" anlaysis *supra*, the factual determinations of whether maltodextrin is used as a sweetener and/or sodium citrate is used as a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the "no artificial sweeteners or preservatives" label, are inappropriate for determination on a motion to dismiss.  Because defendant does not seek to impose any requirements in excess 21 U.S.C. § 343(k), the claims based on "no artificial sweeteners or flavors" labels on the challenged drink mix are not preempted and survive the motion to dismiss.

### 3.  Nutrient content claims

Plaintiff alleges that the nutrient content claims (a) "good source" and "wholesome" on Planter's Nut-rition Wholesome Nut Mix and (b) "with added . . . vitamin D" and "reduced fat" on Kraft cheese products are unlawful and misleading nutrient content claims under California law. *See, e.g.*, Cal. Health & Safety Code § 110665 (which incorporates by reference 21 U.S.C. § 343(r) (nutrient content claims) and the regulations implemented thereto); AC ¶¶ 119, 125. Defendants counter that these claims are in compliance with the FDA regulations governing nutrient content claims, and thus plaintiff's claims seeking more are expressly preempted.

#### a.  "Good source" and "wholesome"

Plaintiff alleges that the "good source of 5 vitamins and minerals" and "wholesome" labels on Platner's Nut-rition Wholesome Nut Mix are unlawful because, although the product admittedly does bear the required referral statement disclosing fat content pursuant to 21 C.F.R. §§ 101.13(h)(1), that statement "[i]s inadequate as it [i]s nearly invisible due to its font size, placement and contrasting background color."  AC ¶ 133.  Upon apparently realizing that the product at issue does, in fact, contain the required referral statement, in the opposition brief, plaintiff now makes the hyper-technical argument that the referral statements on the packaging

violate 21 C.F.R. §§ 101.13(h)(4)(i) and (ii), which respectively require that the referral

statement: (1) "be in easily legible boldface print or type" and (2) "immediately adjacent to the

nutrient content claim" on each panel of the label bearing the nutrient content claim.  There is no

specific allegation in the AC, however, establishing non-compliance with either of these

regulations.  In evaluating whether plaintiff has stated a claim, the court is limited to the

pleadings, and "*may not* look beyond the complaint to a plaintiff's moving papers, such as a

memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of

Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original).   Because the

products at issue contain the required referral statement, they comply with FDA regulations in

this regard, and are thus expressly preempted by the NLEA.

> *b.  "With added . . . vitamin D" and "reduced fat"*

Plaintiff alleges that the "with added . . . vitamin D" and "reduced fat" labels on Kraft's

Mexican Style Four Cheese and Kraft Deli Deluxe Cheese products are unlawful for failure to

include the required disclosure statement of: "See nutrition information for fat content" (required

when the fat content per reference amount exceeds 13.0 grams of fat or 4.0 grams of saturated

fat). 21 C.F.R. § 101.13(h)(1).  The Kraft Mexican Style Four Cheese Blend does, in fact, contain

the required referral statement.  Reply, Ex. A.  For the same reasons discussed above, plaintiffs do

not sufficiently plead any claim for a violation of the FDA's prominence and placement

requirements for referral statements.   Accordingly, the Kraft Mexican Style Four Cheese Blend

complies with FDA regulations and plaintiff's claims based on this product are expressly

preempted.  With respect to the Deli Deluxe cheese product, however, which does not contain the

required referral statement, plaintiff seeks nothing more than the FDA regulation, 21 C.F.R.

§ 101.13(h), requires, and the court cannot dismiss the claims based on the Kraft Deli Deluxe

label at this stage.

1

### 4.  "Sugar Free" claims

2

Plaintiff alleges that the "sugar free" and "sugarless" claims on the challenged gum and

3

mint products are unlawful and misleading because they are not accompanied by the required

4

disclosures for products that contain 0.5 grams or more of sugar per reference amount.  *See* 21

5

C.F.R. § 101.60(c)(1)(iii)(A) (requiring either "low calorie" or "reduced calorie" labels or that the

6

product "bears a claim of special dietary usefulness"); *id.* § 101.60(c)(1)(iii)(B) (requiring that the

7

"sugar free" term, each time it is used, be accompanied with: "'not a reduced calorie food,' 'not a

8

low calorie food,' or 'not for weight control.'"); AC ¶¶ 153-60.  To the extent the challenged

9

products do contain disclosures pursuant to § 101.60(c)(1)(iii)(B), plaintiff alleges that those

10

disclosures do not comply with 21 C.F.R. § 101.2(b).  This section provides that claims of dietary

11

usefulness under "Subpart D of section 101," which includes 21 C.F.R. § 101.60, "shall appear

12

either on the principal display panel or on the information panel, unless otherwise specified by

13

regulations in this chapter."  Plaintiff explicitly alleges non-compliance with the prominence and

14

placement requirements of these regulations.  AC ¶¶ 155, 159-61.  Again, compliance with this

15

regulation is a factual issue inappropriate for resolution on a motion to dismiss on the pleadings,

16

and plaintiff seeks to impose nothing more than the FDA requirements.  Accordingly, the court

17

cannot dismiss the claims based on unlawful "sugar free" and "sugarless" labels at this stage.

18

### 5.  Slack fill packaging

19

Plaintiff alleges that she relied on unlawful and deceptive slack fill packaging in

20

purchasing Easy Mac, Jell-O Sugar Free Strawberry, and Stove Top Cornbread Stuffing Mix.

21

Defendants counter that express preemption applies because plaintiff fails to allege that these

22

slack fill packages actually violate FDA policy, which permits functional slack fill packaging.  In

23

contrast to defendants' assertion, plaintiff *does* allege that the slack fill packaging was unlawful.

24

AC ¶¶ 192-93 ("Defendants routinely employed slack filled packaging to mislead consumers"

25

26

27

28

and "*lacked any lawful justification for doing so*.").  Because plaintiff does not ask the court to require anything different than the FDA requirements, specifically 21 C.F.R. ¶ 100.100, *see* AC ¶ 191, the claims relying on unlawful slack fill packaging are not preempted.

### 6.  "Evaporated cane juice"

Plaintiff alleges that the Back to Nature granola and crackers at issue contain misleading "evaporated cane juice" claims.  Plaintiff argues that, according to the FDA's published policy, "evaporated cane juice" is merely a type of sugar, and as such, it is false and misleading to characterize it as a type of "juice."

In 2009, the FDA published a document titled "Draft Guidance for the Industry: Ingredients Declared as Evaporated Cane Juice" informing the industry:

> The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup.

> Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5.

2009 WL 3288507 (Oct. 2009).  The FDA's position is thus clear that it considers "evaporated cane juice" labels to be "false and misleading" under 21 U.S.C. 343(a)(1).  Defendants' argument that this FDA document "do[es] not establish legally enforceable responsibilitites," Mot.  23 (citing the draft guidance), while correct, is inapposite because this claim can nevertheless go forward at this early stage under the "deceptive" prong of the UCL.  The FDA's 2009 industry guidance statement is relevant to the issue of whether these labels could be deceptive or misleading to a reasonable consumer, and there is no risk of undermining the FDA's rulemaking

1   expertise in allowing a fact finder to make this determination.

2   ### 7. "Natural" claims

3       Plaintiff alleges that the "natural cheese" and "100% natural" labels on Kraft Mexican

4   Style Four Cheese and Back to Nature granola and crackers respectively are false and misleading

5   because these products contain numerous artificial ingredients. *See* AC ¶¶ 67, 87. According to

6   plaintiff, FDA policy is clear that such "natural" labels are misleading where the products, in fact,

7   contain artificial or synthetic ingredients. *See* 58 Fed. Reg. 2302, 2307 (Jan. 6, 1993) (permitting

8   "natural" labels only when "nothing artificial or synthetic (including all color addities regardless

9   of source) has been included in, or has been added to, a food that would not normally be expected

10  in the food"). Defendants counter that the labels comply with FDA policy and are not plausibly

11  deceptive or misleading to any reasonable consumer.

12      Numerous courts in this district have rejected the idea that unfair competition claims

13

14  based on "natural" type labels are expressly preempted by FDA regulations. *See Lam*, 859 F.

15  Supp. 2d at 1104-05 (rejecting express preemption with respect to "made with real fruit" labels

16  because there was a factual question as to whether a reasonable consumer might be misled by the

17  label); *Lockwood*, 597 F. Supp. 2d at 1031 (rejecting express preemption and also rejecting field

18  preemption with respect to the use of the term "all natural" because the FDA's decision *not* to

19  adopt a regulation regarding the use of the term "natural" indicates "an intent *not* to occupy the

20

21  field" (emphasis added)); *Ben & Jerry's*, 2011 WL 2111796, at *10 (rejecting express preemption

22  with respect to the use of the term "natural" where no FDA regulation exists to preempt state

23  law). In 1993, the FDA declined to adopt a specific regulation controlling "natural" labels on

24  foods, and instead stated the following:

25

26

27          After reviewing and considering the comments, the agency continues to believe
            that if the term "natural" is adequately defined, the ambiguity surrounding use of
28          this term that results in misleading claims could be abated. However, as the
            comments reflect, there are many facets of this issue that the agency will have to

1
2
3
4
5
6
7

carefully consider if it undertakes a rulemaking to define the term "natural." Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for "natural" at this time. *The agency will maintain its current policy* (as discussed in the general principles proposal (56 FR 60421 at 60466)) *not to restrict the use of the term "natural" except for added color, synthetic substances, and flavors as provided in § 101.22.* Additionally, *the agency will maintain its policy* (Ref. 32) *regarding the use of "natural," as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food*. Further, at this time *the agency will continue to distinguish between natural and artificial flavors as outlined in § 101.22*.

8
9

58 Fed. Reg. 2302, 2407 (1993) (emphases added).  Like the analysis *supra* with respect to

10

"evaporated cane juice" labels, the FDA's position is sufficiently clear with respect to "natural"

11

labels.  Whether an ingredient is "artificial or synthetic" under FDA policy is a factual

12

determination on a product-by-product basis.  *See, e.g.*, *Astiana v. Dryer's Grand Ice Cream Inc.*,

13

2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (finding a question of fact as to whether a

14

reasonable consumer would normally expect potassium carbonate—an alkalizing agent—to be

15

present in Haagen–Dazs ice cream, based on the FDA's policy statement).  Permitting a factual

16
17

determination to go forward with respect to whether the challenged "natural" labels in this case

18

would deceive a reasonable consumer is not akin to defining FDA policy, but rather is a finding

19

of fact with respect to this particular plaintiff and product, and would not risk undermining the

20

agency's expertise in this area.  The court thus denies defendants' motion to dismiss the UCL,

21

FAL and CLRA claims under based on allegedly decpetive "natural" labels.

22

## F.  Restitution Based on Unjust Enrichment

23
24

"The doctrine [of unjust enrichment] applies where plaintiffs, while having no enforceable

25

contract, nonetheless have conferred a benefit on defendant which defendant has knowingly

26

accepted under circumstances that make it inequitable for the defendant to retain the benefit

27

without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (Cal. Ct. App.

28

2009).  Here, plaintiff's claim for unjust enrichment is based on the same allegations as the UCL,

FAL and CLRA claims.  *See* AC ¶ 300 ("As a result of Defendants' unlawful, fraudulent and misleading labeling, advertising, marketing and sales of Defendants' Misbranded Food Products, Defendants were enriched at the expense of Plaintiff and the Class.").  This claim is simply a reformulation of plaintiff's UCL, FAL and CLRA claims.  Restitution is already a remedy under the UCL, so plaintiff's restitution claim is superfluous.  *Barocio v. Bank of Am.*, 2012 WL 3945535, at *4 (N.D. Cal. Sept. 10 2012).  "[P]laintiff[] cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims."  *Id.* (quoting *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (citing cases)).  The court, therefore, dismisses the restitution claim without leave to amend.

### G.  Song-Beverly Consumer Warranty Act

The Song-Beverly Consumer Warranty Act gives the "buyer of consumer goods" a right of action for express warranty violations.  Cal. Civ. Code § 1794.  The Song-Beverly Act defines an express warranty as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance."  Cal. Civ. Code § 1791.2.  The Act defines a "consumer good" as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purpose*, except for . . . consumables*."  *Id.* § 1791(a) (emphasis added).  "Consumables" means "any product that is intended for consumption by individuals."  *Id.* § 1791(d).  Because plaintiff does not dispute the fact that all products at issue are consumables, and because express warranties under the Act do not apply to consumables, the court dismisses plaintiff's claim under the Song-Beverly Act without leave to amend.

### H.  Magnuson-Moss Warranty Act

Plaintiff's Magnuson–Moss Act claim also fails.  The Act defines a written warranty as any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.  15 U.S.C. § 2301(6)(A).  Food labels, such as those at issue here, do not constitute warranties against a product defect.  *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766 at *3 (N.D. Cal. July 20, 2012); *Jones v. ConAgra Foods, Inc.*, 2012 WL 6569393, *12-13 (N.D. Cal. Dec. 17, 2012).  They "are 'product descriptions' rather than promises that [the products are] defect-free, or guarantees of specific performance levels" over a specified time period.  *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012); *see also Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) ("A product information disclosure without a specified time period to which the disclosure relates is . . . not a written warranty.").  Since plaintiffs do not allege that the statements on defendants' labels affirm that their products are "defect free," the court dismisses plaintiff's Magnuson–Moss Act claim without leave to amend.

### III.  ORDER

The court GRANTS defendants' motion to dismiss with prejudice with respect to: (1) plaintiff's restitution claims; (2) the Song-Beverly Act claims; and (3) the Magnuson-Moss Warranty Act claims.

The court GRANTS defendants' motion to dismiss with leave to amend with respect to plaintiff's state law UCL, FAL and CLRA claims based on: (1) any products not purchased by plaintiff ; (2) the "one mint" serving size label; (3) the "natural lemon [lemonade] flavor" labels on defendants' crystal light products; (4) the "good source" and "wholesome" labels on Planter's Nut-rition Wholesome Nut Mix; and (5) the "with added . . . vitamin D" and "reduced fat" labels

1   on Kraft Deli Deluxe Cheese.

2        The court DENIES defendants' motion to dismiss with respect to the remaining state law

3   UCL, FAL and CLRA claims.

4        The court hereby sets an initial case management conference for April 19, 2013.

5

6

7   Dated:  February 25, 2013

8                                            Ronald M. Whyte
                                            United States District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28