1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| 12 SUSAN IVIE, individually and on behalf of all others similarly situated, | Case No. C-12-02554-RMW |
| 13 | |
| 14 Plaintiff, | **ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| 15 v. | |
| 16 KRAFT FOODS GLOBAL, INC., CADBURY ADAMS USA LLC, and BACK TO NATURE FOOD COMPANY, | |
| 17 | **[Re Docket No. 56]** |
| 18 Defendants. | |

19

20          Plaintiff alleges that defendants Kraft Foods Global, Inc., Cadbury Adams USA LLC, and

21 Back to Nature Food Company (collectively "defendants") violate California's unfair completion

22 law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL") (counts 1-3), fair advertising law, *id.* §

23 17500 *et seq.* ("FAL") (counts 4-5), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750,

24 *et seq.* ("CLRA") (count 6).  Second Amended Compl. ("SAC"), Dkt. No. 53.  The laws alleged

25 to be violated as a predicate for the "unlawful" prong of plaintiff's UCL claim include provisions

26 of the state Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code § 109875

27 *et seq.* ("Sherman Laws").  On February 25, 2013 the court dismissed all of plaintiff's claims

28

1   based on restitution, the Song-Beverly Consumer Warranty Act, and the Magnuson–Moss

2   Warranty Act with prejudice, and some of plaintiff's UCL, FAL, and CLRA claims with leave to

3   amend.  Dkt. No. 49.  The SAC (1) amends the previously dismissed UCL, FAL, and CLRA

4   claims based on allegedly unlawful or deceptive labels and (2) adds a host of new claims based on

5   defendants' unpurchased products that bear the same or similar labels as those that plaintiff

6   purchased.  Defendants move to dismiss the amended claims, the new claims based on products

7   that plaintiff did not herself purchase, and plaintiff's claims based on certain statements plaintiff

8   allegedly viewed on defendants' website only.   Having considered the arguments of the parties,

9   and for the reasons set forth below, this court GRANTS-IN-PART and DENIES-IN-PART

10  defendants' motion to dismiss.

## I. BACKGROUND

### A.  Statutory and Regulatory Framework

13       In 1938, Congress enacted the Federal Food, Drug, and Cosmetic Act ("FDCA"), codified

14  at 21 U.S.C. § 301 *et seq.*.  "The [FDCA] gives the [United States Food and Drug Administration

15  ("FDA")] the responsibility to protect the public health by ensuring that 'foods are safe,

16  wholesome, sanitary, and properly labeled,' 21 U.S.C. § 393(b)(2)(A), and the FDA has

17  promulgated regulations pursuant to this authority, *see, e.g.*, 21 C.F.R. § 101.1 *et seq.*"

18  *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009).   "There is no

19  private right of action under the FDCA." *Id.* (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478

20  U.S. 804, 810 (1986)).  Rather, "the FDA enforces the FDCA and its regulations through

21  administrative proceedings."  *Id.*

22       In 1990, Congress enacted the Nutrition Labeling and Education Act ("NLEA"), codified

23  in scattered sections of 21 U.S.C., amending the FDCA.  "The NLEA aimed to 'clarify and

24  . . . strengthen the [FDA's] authority to require nutrition labeling on foods, and to establish the

25  circumstances under which claims may be made about nutrients in foods.'" *Chacanaca v. Quaker

26  Oats Co.*, 752 F. Supp. 2d 1111, 1116 (N.D. Cal. 2010) (quoting H.R. Rep. No. 101-538, at 7

27  (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337).  For example, 21 U.S.C. § 343 provides that

28  a "food shall be deemed misbranded" if, *inter alia*, it contains a "false or misleading label,"

§ 343(a); if information required on the label is "not prominently placed" on the label in comparison with other words, § 343(f); if it "bears or contains any artificial flavoring, artificial coloring, or chemical preservative" without "bear[ing] labeling stating that fact," § 343(k); if it does not properly identify nutrition information, for example, serving size, number of servings, calories, and certain nutrients, § 343(q); or if it contains improper "nutrition levels and health related claims," § 343(r) ("nutrient content claims").

The NLEA also "amended the FDCA by adding [21 U.S.C. § 343-1(a),] an express preemption provision." *Lockwood*, 597 F. Supp. 2d at 1030. Section 343-1(a) provides in relevant part that:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce--
>       . . .
>       (3) any requirement for the labeling of food of the type required by section . . . 343(d) [misleading container], 343(f) [prominence of information on label], 343(h) [representations as to standards of quality and fill of container], . . . or 343(k) [artificial flavoring, artificial coloring, or chemical preservatives] of this title *that is not identical* to the requirement of such section
>       . . .
>       (4) any requirement for nutrition labeling of food *that is not identical* to the requirement of section 343(q) [nutrition information] of this title
>       . . .
>       (5) any requirement respecting any claim of the type described in section 343(r)(1) [nutrient content claims] of this title, made in the label or labeling of food *that is not identical* to the requirement of section 343(r) of this title . . . .

21 U.S.C. § 343-1(a)(3)-(5) (emphases added). The express preemption provisions "reach[] beyond positive enactments like statutes and regulations, to embrace common-law duties and judge-made rules." *Chacanaca*, 752 F. Supp. 2d at 1118 (citing *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 443 (2005)). The NLEA, however, does not "preempt any provision of State law" not "expressly preempted under [21 U.S.C. § 343-1(a)]." *Id.* (quoting Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364).

**B. California State Laws**

California's Sherman Laws adopt the federal labeling requirements as the food labeling requirements of the state. Cal. Health & Safety Code § 110100 ("All food labeling regulations

and any amendments to those regulations adopted pursuant to the federal act, in effect on January

1, 1993, or adopted on or after that date shall be the food regulations of this state.").  In addition

to this blanket provision, the Sherman Laws specifically adopt certain provisions that mirror or

incorporate by reference the FDCA and NLEA food labeling and packing requirements, including

the following provisions that, *inter alia*, form the basis for the "unlawful" prong of plaintiff's

UCL claims:

>Any food is misbranded if its labeling is false or misleading in any
>particular, *id.* § 110660;
>
>Any food is *misbranded if its labeling does not conform with the
>requirements for nutrition labeling set forth in Section 403(q) (21 U.S.C. Sec.
>343(q)) of the federal act and the regulations adopted pursuant thereto*, *id.*
>§ 110665 (emphasis added);
>
>Any food is *misbranded if its labeling does not conform with the
>requirements for nutrient content or health claims set forth in Section 403(r) (21
>U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant
>thereto*, *id.* § 110670 (emphasis added);
>
>Any food is misbranded if any word, statement, or other information
>required pursuant to this part to appear on the label or labeling is not prominently
>placed upon the label or labeling with conspicuousness, as compared with other
>words, statements, designs, or devices in the labeling and in terms as to render it
>likely to be read and understood by the ordinary individual under customary
>conditions of purchase and use, *id.* § 110705;
>
>Any food is misbranded if it purports to be, or is represented, for special
>dietary uses . . . and its label does not bear information concerning any vitamin or
>mineral content, or other dietary property as the department prescribes, by
>regulation, as necessary to fully inform purchasers as to the food's value for that
>use, *id.* § 110735; and
>
>Any food is misbranded if it bears or contains any artificial flavoring,
>artificial coloring, or chemical preservative, unless its labeling states that fact.
>Exemptions may be established by the department, *id.* § 110740.

See SAC ¶¶ 49, 187-208.

### C.  The Products and Labels at Issue on the Second Motion to Dismiss

The labels primarily at issue in defendants' second motion to dismiss are: (1) the "natural

lemon [lemondade] flavor" claims on the Crystal Light products; and (2) the nutrient content

claims "good source" and "wholesome" on Planter's Nut-trition Wholesome Nut Mix; and (3) the

1   fat-related nutrient content claims on Kraft's Mexican Style Four Cheese Blend.  The issue is

2   whether plaintiff has cured the pleading to sufficiently allege a violation of the applicable FDA

3   regulations that would render these labels unlawful and misleading to a reasonable consumer.

4       Plaintiff also raises a host of new claims with respect to "essentially identical" or "similar"

5   packaging and labels on products allegedly purchased by other class members, including:

6       (1) all Trident sugarless gum flavors ("essentially identical"), SAC ¶ 224;

7       (2) other lines of Trident gum ("similar"), *id.*;

8       (3) all Dentyne Ice and Dentyne Fire sugarless gum flavors ("essentially identical"), *id.*

9   ¶ 225;

10      (4) all varieties of defendants' Back to Nature cookies, graham crackers, and granola with

11  the "natural" or "evaporated cane juice" claims ("similar"), *id.* ¶¶ 226-27;

12      (5) all original Capri Sun flavors (all "share a uniform size and shape [and] on casual

13  inspection, the only obvious difference between them is their flavor, and all flavors bear the same

14  challenged label"), *id.* ¶ 228;

15      (6) all Capri-Sun Sunrise flavors ("essentially the same" packaging as the original Capri-

16  Sun flavors and "the same challenged label"), *id.*;

17      (7) all Capri-Sun Roarn' Waters flavors ("substantially similar" packaging and challenged

18  label), *id.*;

19      (8) all varieties of Planters Nut-trition line ("while the nutrient content claims may vary,

20  all make the prominent and explicit 'healthy' claims" without the required disclosure statement on

21  the front panel), *id*. ¶ 229;

22      (9) all Country Time lemonade products ("similar packages" and the "same label"), *id.* ¶

23  230;

24      (10) all Stovetop Stuffing varieties ("similar packaging" and the same slack fill), *id.* ¶ 231;

25      (11) all Jell-O Sugar Free flavors ("similar packaging" and the same slack fill), *id.* ¶ 232;

26      (12) all Crystal Light products bearing the "natural and other natural flavor labels" (all

27  "share a uniform size and shape [and] on casual inspection, the only obvious difference between

28  them is their flavor, and all flavors bear the same challenged label"), *id.* ¶ 233;

1    (13) all Kraft cheese varieties bearing the "natural cheese" label ("similar packaging"), *id.*

2    ¶ 234;

3    (14) all varieties of defendants' Back to Nature Cookies ("the only obvious difference

4    between them is their flavor, and all flavors bear the same challenged label"), *id.* ¶ 235.

5    Finally, there is an issue whether claims based on statements plaintiff allegedly saw only

6    on defendants' website are pled with sufficient particularity.

7    **II. ANALYSIS**

8    **A. Legal Standard**

9    "After the pleadings are closed[,] . . . a party may move for judgment on the pleadings."

10   Fed. R. Civ. P. 12(c). When considering a motion for judgment on the pleadings, the court takes

11   all factual allegations in the complaint as true and construes them in a light most favorable to the

12   plaintiff. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012). To survive

13   a motion to dismiss for failure to state a claim, the facts pled need only give rise to "a claim to

14   relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

15   "However, this principle is innapplicable to legal conclusions; 'threadbare recitals of the elements

16   of a cause of action, supported by mere conclusory statements,' are not taken as true." *Delacruz*

17   *v. Cytosport, Inc.*, No 11-3532, 2012 WL 2563857, at *5 (N.D. Cal. June 28, 2012) (quoting

18   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

19   **B. Judicial Notice**

20   The court takes judicial notice of exhibits 1-6, filed by defendants in support of this

21   motion. Dkt. No. 57. Exhibits 1-6 depict the packaging of the products plaintiff challenged in the

22   SAC. *See Bronson v. Johnson & Johnson, Inc.*, No. 12-4104, 2013 WL 1629191, at *1 n.1 (N.D.

23   Cal. Apr. 16, 2013) (explaining that judicial notice of the food product packaging relied upon in

24   the complaint is appropriate and does not convert a motion to dismiss into a motion for summary

25   judgment).

26   Plaintiff asks the court to take judicial notice of three public documents in other cases that

27   demonstrate the FDA's position on the issue of whether the FDCA preempts a private action to

28   enforce state requirements that are identical to the FDCA. Dkt. No. 60. The court need not take

1  judicial notice of these documents but, to the extent the court finds them helpful or persuasive, the

2  court will consider them as it would consider any other published authority. *See Feezor v. Excel*

3  *Stockton, LLC.*, No. 12-0156, 2013 WL 2485623, at *3 (E.D. Cal. June 10, 2013) ("As these

4  materials are not themselves facts, they are not subject to judicial notice.").

5  **C. Plaintiff's Amended UCL Claims Based on "Unlawful" Labels**

6      Defendants move to dismiss the amended claims on the grounds that: (1) they are still

7  expressly preempted by 21 U.S.C. § 343-1(a) because the product labels comply with FDA

8  regulations; (2) they are impliedly preempted because they are based solely on alleged violations

9  of the Federal Food, Drug, and Cosmetic Act ("FDCA") and conflict with the FDCA's

10  enforcement scheme; (3) the FDA has primary jurisdiction over the claims because the FDA can

11  better determine the technical issues of font size and placement; and (4) the labels are unlikely to

12  deceive a reasonable consumer, and therefore plaintiff has no standing. Defendants also ask the

13  court to dismiss the new claims based on products that plaintiff did not herself purchase. Finally,

14  defendants ask the court to dismiss plaintiff's claims based on certain statements plaintiff

15  allegedly viewed on defendants' website only.

16  **1.  Express preemption**

17      Defendants argue that plaintiff's amended UCL claims are preempted under 21 U.S.C.

18  § 343-1, the FDCA's express preemption provision. According to defendants, because these food

19  labels at issue are in compliance or, at least in substantial compliance, with federal law, a

20  judgment in plaintiff's favor would impose different or additional requirements than those of the

21  FDCA and NLEA, and thus the claims are expressly preempted. Plaintiff counters that these

22  labels actually violate existing FDA policies, and thus, plaintiff seeks to impose nothing more

23  than what the FDA already requires.

24      **(a)  "Natural lemon [lemonade] flavor" claims on the purchased
25                     Crystal Light products**

26      Plaintiff first claims that the purchased Crystal Light products contain artificial flavors

27  which "simulate, resemble, or reinforce the characterizing flavor, including sodium citrate and

28  potassium citrate." SAC ¶ 66. Therefore, plaintiff argues, the product is not eligible to bear the

1   "natural flavors" label under 21 C.F.R. § 101.22(i)(2) ("[I]f the food contains any artificial flavor

2   which simulates, resembles or reinforces the characterizing flavor . . . the name of the

3   characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored.'").

4   Neither party disputes the fact that the purchased Crystal Light products do, in fact, contain a

5   natural lemon flavor within the meaning of 21 C.F.R. § 101.22(a)(3).  The issue then, is whether

6   the product contains *additional* artificial flavors that simulate, resemble, or reinforce the natural

7   lemon flavor.  The court concludes that the product does not contain any such additional artificial

8   flavors.

9        In the SAC, plaintiff only points to two specific ingredients which she alleges are

10  "artificial" flavors: potassium citrate and sodium citrate. SAC ¶ 66.  While these substances may

11  be artificial *ingredients*, nothing in the FDA regulations suggests that these ingredients are

12  *flavors*, artificial or otherwise.   Potassium citrate is listed by the FDA as being used in the

13  pasteurization of certain cheese products (as emulsifying agents), *see* 21 C.F.R. §§ 133.169,

14  133.171, 133.179, and sodium citrate is described by the regulations as an artificial sweetener in

15  jams and preserves, *see* 21 C.F.R. §§ 150.161.  Neither product, however, is included in the

16  FDA's list of artificial flavors.  *See* 21 C.F.R. § 172.515(b), 182.60; *see also Viggiano v. Hansen*

17  *Natural Corp.*, No. 12-10747, 2013 WL 2005430, at *7 (C.D. Cal. May 13, 2013) (finding that

18  sucralose was not a flavor when FDA regulations listed it only as a sweetener and did not list it as

19  an artificial flavor).  A bare, conclusory assertion that these two ingredients "simulate[],

20  resemble[], or reinforce[] the characterizing [lemon] flavor," without any basis for such a

21  conclusion in the FDA regulations or otherwise, is insufficient to state a claim that these labels

22  violate 21 C.F.R. § 101.22(i)(2).   *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and

23  conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a

24  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

25  (internal quotation omitted)).  Since the Crystal Light products refer specifically to the natural

26

27

28

*lemon flavor*, rather than natural ingredients generally, the fact that the product contains some allegedly unnatural substances like potassium citrate and sodium citrate does not render the label false or misleading under FDA guidelines.[1] *See, e.g.*, *Viggiano*, 2013 WL 2005430 at *7 ("Hansen's soda can refer specifically to natural *flavors* . . . the fact that [some ingredients] are allegedly unnatural does not render Hansen's 'all natural flavors' label false or misleading under FDA guidelines."). The court also concludes that the "natural lemon [lemonade] flavor" claims are in compliance with FDA regulations concerning font size and placement because the word "flavor" appears to be printed in at least 1/2 the font size of the phrase "natural lemon [lemonade]." *See* 21 C.F.R. § 101.22(i)(1)(iii). Because the Crystal Light labels are therefore wholly in compliance with FDA regulations, they are expressly preempted by the FDCA.

       Allowing plaintiff's state-law claim to proceed would mean reading California's Sherman Laws to impose an additional or different regulatory requirement on defendants' product, in violation of the FDCA's express preemption provision. *See Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002) ("[W]hen a state-law claim, however couched, would effectively require a manufacturer to include additional or different information on a federally approved label, it is preempted."); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121-23 (N.D. Cal. 2010) (finding express preemption of UCL and other state-law claims that sought to impose labeling requirements that were not identical to FDA regulations regarding the use of the terms "0g Trans Fat" and "good source" of calcium and fiber). Thus, plaintiff's claims against the purchased Crystal Light products are expressly preempted. Because the defendants were unable to cure the claims, and any further attempts would be futile, this dismissal is with prejudice.

---

[1] The court is not persuaded that the "natural lemon [lemonade]" label can be viewed in isolation of the word flavor immediately below, which is in compliance with the FDA regulation pertaining to "natural flavor" claims. The court rejects plaintiff's attempt to characterize these claims as "all natural" claims in isolation of the flavor claims.

1

2

**(b)      Nutrient content claims "good source" and "wholesome" on Planter's Nut-trition Wholesome Nut Mix**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Plaintiff next alleges that defendants' nut mix product is misbranded because the disclosure statement concerning the nutrient content claims ("good source of 5 vitamins and minerals" and "wholesome") does not comply with FDA regulations concerning typeface and placement.  SAC ¶ 133.  While the disclosure is indeed present on the Nutrition Facts panel on the *back* of the product, it does not appear adjacent to the nutrient content claims placed on the *front* of the label, and is thus in technical violation of 21 C.F.R. § 101.13(4)(ii) ("[T]he disclosure statement shall be immediately adjacent to the nutrient content claim and may have no intervening material . . . .  If the nutrient content claim appears on more than one panel of the label, the disclosure statement shall be adjacent to the claim on each panel.").  In addition to violating the FDA's placement requirement, the Ninth Circuit has also held that "reasonable consumers" would not necessarily look beyond the front of the packaging to discover the requisite disclosure statement.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("[W]e disagree . . . that reasonable consumers should be asked to look beyond misleading representations on the front of the box to discover the truth.").  Thus, the disclosure statement is potentially misleading based both on the FDA's "objective criteria," *see Delacruz*, 2012 WL 2563857, at *18 ("The FDA regulations may lend objective criteria by which to determine whether certain words and phrases used on the labels are misleading."), and under the reasoning in *Williams*.

21

22

23

24

25

26

27

28

Courts have found that where plaintiffs are only seeking to impose state law requirements that are *identical* to federal regulations, there is no express preemption under the FDCA.  *See, e.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586, 2013 WL 1320468, at *7 (N.D. Cal. Apr. 1, 2013); *Brazil v. Dole Food Co.*, No. 12-01831, 2013 WL 1209955, at *4 (N.D. Cal. Mar. 25, 2013); *Lanovaz v. Twinings N. Am., Inc.*, No. 12-02646, 2013 WL 675929, at *3 (N.D. Cal. Feb. 25, 2013); *Kosta v. Del Monte Corp.*, 12-01722, 2013 WL 2147413, at *7 (N.D. Cal. May 15, 2013).  Since California's Sherman Laws fully adopt federal food labeling law, allowing plaintiff's state law UCL claims to proceed based on the "unlawfulness" of the nut mix label

1   imposes no other requirement than what FDA regulations already require.  Whether or not

2   defendants' label is also *misleading* for the purposes of the UCL is another issue discussed later in

3   this order, but for the purposes of preemption, plaintiff's claim is not expressly preempted and

4   cannot be dismissed on that basis.

5          **(c)      Fat-related nutrient content claims on Kraft's Mexican Style
                        Four Cheese Blend**

6

7          The same analysis applies to the fat-related nutrient content claims on defendants' cheese

8   product.  Plaintiff has cured the pleadings and now sufficiently alleges that defendants' cheese

9   product is in technical violation of FDA regulations concerning the size and placement of the

10  requisite disclosure statement.  SAC ¶ 134; *see* 21 C.F.R. § 101.13(h)(4)(i).  While the label does

11  bear the requisite disclosure statement, it is not immediately adjacent to the claim at the top of the

12  label, and is arguably not in "bold or easily legible typeface or print" as required by the

13  regulation.  The fact that this label does not comply with FDA regulations precludes express

14  preemption because, as explained, allowing plaintiff's claim to proceed imposes no other

15  requirements than what the FDA and applicable state Sherman Laws already require.  Therefore,

16  plaintiff's claim regarding the fat-related nutrient content claim on the cheese product cannot be

17  dismissed on the basis of express preemption.

    **2.      Implied Preemption**

18

19         Defendants also argue that plaintiff's claims are impliedly preempted because they are

20  based solely on alleged violations of the FDCA, and conflict with the FDCA's enforcement

21  scheme, citing the Ninth Circuit's recent decision in *Perez v. Nidek*, 711 F.3d 1109 (9th Cir.

22  2013).  Defendants argue that, under *Perez*, it is the FDA, not private plaintiffs, that must be

23  responsible for enforcing FDA regulations, and that plaintiff's claims therefore do not fit through

24  the "narrow gap" through which a state law claim must squeeze to avoid implied preemption.

25  Reply 9, Dkt. No. 63.

26         In *Perez*, plaintiff brought several state-law claims against a group of physicians for

27  failing to disclose that a laser medical device used on the plaintiff had not received FDA pre-

28  approval.  *Perez*, 711 F.3d at 1112.  The medical device at issue was subject to device-specific

ORDER RE: DEFS.' MOTION TO DISMISS
CASE NO. C-12-02554-RMW                            - 11 -
ALG / GH

1    requirements under the FDA's pre-market approval regime.  *Id.* at 1118.  The Ninth Circuit held

2    that plaintiff's state-law claims were expressly preempted because they depended on a state law

3    requirement "in addition to those federal requirements . . . that physicians and medical device

4    companies *must affirmatively tell patients* when medical devices have not been approved for a

5    certain use."  *Id.* at 1118-19 (emphasis added).  Because FDA regulations did not specifically

6    require this disclosure, the circuit court held that allowing plaintiff's state-law claims to proceed

7    would have meant imposing an additional regulatory requirement on the defendants, which was

8    expressly precluded by the preemption provision of the FDCA.  *Id.* at 1119.

9            However, the Ninth Circuit went on to note that plaintiff's claims were also *impliedly*

10   preempted, i.e., would be precluded even absent an express preemption provision in the FDCA,

11   because allowing the state claims to proceed would have undermined the FDCA's enforcement

12   scheme.  *Id.* at 1119.  This is the basis for defendants' second preemption argument.  But the

13   Ninth Circuit's conclusion on this issue was still based on the fact that plaintiff's state-law claims

14   would have imposed an additional disclosure requirement on the defendants that was not required

15   by federal regulations.  Because the FDA was still in the midst of investigating whether or not the

16   failure to disclose actually constituted a violation of the FDCA (and the FDA has primary

17   responsibility for enforcing the FDCA), the circuit court held that allowing plaintiff's state-law

18   fraud-by-omissions claims to proceed could have potentially undermined the FDA's enforcement

19   authority if the FDA reached a different conclusion.  *Id.* at 1120.

20           However, nowhere in its opinion did the Ninth Circuit argue that allowing plaintiffs to

21   bring state-law claims based on state laws that *parallel* federal requirements would constitute

22   "private enforcement" of FDA regulations that would conflict with the FDA's regulatory

23   authority.   In fact, it noted the opposite: state-law claims are not impliedly preempted "insofar as

24   the state-law duty parallels a federal-law duty."  *Id.* at 1118 (internal citations omitted).  While

25   the Ninth Circuit was speaking only in the context of the Medical Devices Amendments to the

26   FDCA, lower courts, including this district, have repeatedly extended this reasoning to violations

27   of FDA food labeling regulations more generally if there is a regulation directly on point.  *See,*

28   *e.g.*, *Wilson*, 2013 WL 1320468, at *7; *Brazil*, 2013 WL 1209955, at *4.

1    Unlike the situation in *Perez*, here, plaintiff's claims rest entirely on violations of

2    California's Sherman Law counterparts that *parallel* federal requirements, and which do not

3    require this court to create new requirements or interpret the scope of currently existing

4    regulations.  Here, the court need only determine whether defendants' labels actually comply with

5    existing and well-understood FDA regulations, "a determination that would not risk undercutting

6    the FDA's expert judgments and authority."  *Astiana v. Hain Celestial Grp.*, No. 11-6342, 2012

7    WL 5873585, at *3 (N.D. Cal. Nov. 19, 2012) (internal citations omitted).  The court must "start

8    from a presumption against preemption."  *Kosta*, 2013 WL 2147413, at *9.  Where, as here, there

9    is no conflict between state and federal law that might interfere with FDA regulatory authority,

10   the court declines to find that plaintiff's claims are impliedly preempted.  The motion to dismiss

11   on the basis of implied preemption is therefore denied.

12                   **3.      The primary jurisdiction doctrine does not apply to the remaining
                              claims**

13

14   Similar reasoning applies to defendants' argument that this court should dismiss on the

15   basis of primary jurisdiction.  "The primary jurisdiction doctrine allows courts to stay proceedings

16   or to dismiss a complaint without prejudice pending the resolution of an issue within the special

17   competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114

18   (9th Cir. 2008).  The doctrine "is committed to the sound discretion of the court when 'protection

19   of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers

20   the scheme.'"  *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir.

21   2002) (quoting *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)).

22   Courts consider the following non-exhaustive factors in deciding whether the doctrine of primary

23   jurisdiction applies: "(1) the need to resolve an issue that (2) has been placed by Congress within

24   the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that

25   subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise

26   or uniformity in administration."  *Id.*  The doctrine "is to be used only if a claim 'requires

27   resolution of an issue of first impression, or of a particularly complicated issue that Congress has

28

1   committed to a regulatory agency.'" *Time Warner*, 523 F.3d at 1114 (quoting *Brown v. MCI*

2   *WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)).

3          As previously noted, plaintiff's case does not require this court to determine difficult

4   issues of first impression better left to the FDA's expertise, but instead only requires the

5   application of well-understood FDA regulations directly on point.  "[T]he FDA's expertise…is

6   not necessary to determine whether the labels are misleading, [and the] reasonable consumer

7   determination and other issues involved in [this] lawsuit are within the expertise of the courts to

8   resolve." *Delacruz*, 2012 WL 2563857, at *10; *see also Brazil,* 2013 WL 1209955, at *10-11

9   (holding that primary jurisdiction did not apply to claims of violation of FDA regulations and

10  guidance concerning "all natural," fresh, antioxidant, and other nutrient claims); *Astiana v. Ben &*

11  *Jerry's Homemade, Inc.*, No. 10-4387, 2011 WL 2111796, at *15 (N.D. Cal. May 26, 2011)

12  (holding that primary jurisdiction did not apply where the court had to determine whether

13  defendant's "All Natural" claims were misleading); *Chacanaca*, 752 F. Supp. 2d at 1124

14  ("[Plaintiffs] assert that defendant has violated FDA regulations and marketed a product that

15  could mislead a reasonable consumer.  This is a question courts are well-equipped to handle.").

16  Defendants' motion to dismiss on the basis of primary jurisdiction is denied.

17              **4.      Standing**

18          Finally, defendants argue that plaintiff's remaining claims should be dismissed because the

19  labels, even if in technical violation of FDA regulations, are unlikely to deceive a reasonable

20  consumer, and plaintiff therefore has no standing.  According to defendants, because plaintiff

21  could not have *known* about the FDA's regulations regarding the font size and placement of the

22  disclosure statements, she could not have relied on or been deceived by the alleged violations.

23          In order to bring a claim under the UCL or FAL, a plaintiff must establish: (1) "a loss or

24  deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*"; and

25  (2) "that that economic injury was the result of, i.e., *caused by,* the unfair business practice or

26  false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court,* 51 Cal. 4th

27  310, 322 (2011) (emphases in original).  In order to satisfy the causation prong of the standing

28

1    requirement, plaintiff must demonstrate "a causal connection or reliance on the alleged

2    misrepresentation."  *Id.* at 326 (quotation omitted).

3         The court disagrees with defendants that a plaintiff would be required to *know* of the

4    particular FDA or state law regulations in order for violations thereof to cause an *economic*

5    injury.  Plaintiff's claim is essentially that, because defendants' labels did not comply with state

6    and federal requirements regarding the font-size and placement of the disclosure statement, she

7    could not see or did not understand the disclosures, and therefore was misled by the unlawful

8    packaging and purchased the product based thereon.  SAC ¶¶ 79, 212-13.  Plaintiff satisfies the

9    UCL and FAL's standing requirements: the court has already determined that defendants' products

10   are technically misbranded, plaintiff alleges she was misled as a result of the misbranding and has

11   suffered economic injury because she purchased a product she otherwise would not have.  As the

12   court previously held with respect to defendants' first motion to dismiss ("1st MTD Order"),

13   "[t]he alleged purchase of a product that plaintiff would not otherwise have purchased but for the

14   alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair

15   competition claims."  1st MTD Order 7, Dkt. No. 49 (citing cases).[2]

16        **D.  Products Plaintiff Did Not Purchase**

17        Defendants further argue that plaintiff lacks standing to sue based on products that she did

18   not herself purchase.  See 1st MTD Order 8.  The court previously held in this case that there can

19   be no requisite *pecuniary* injury where plaintiff did not herself purchase the product at issue.  *See*

20   *id.*  ("The alleged injury in this case is that plaintiff 'based and justified the decision *to purchase*

21   [d]efendants' products in substantial part on [d]efendants' package labeling, packaging and

22

23   _____

24   [2] Although defendant's standing argument is tailored to the "unlawful" nutrient content claims on
     the nut-mix products, with respect to defendants' labels that are not technically "unlawful" but
25   nonetheless allegedly deceptive or misleading, courts generally recognize that whether a label is
     likely to deceive an ordinary consumer is "a question of fact not appropriate for a decision on
26   demurrer."  *Williams*, 552 F.3d at 939; 1st MTD Order 7 (citing cases).  "It is a 'rare situation'
     where granting a motion to dismiss claims under the UCL is appropriate."  *In re Ferrero Litig.*,
27   794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) (quoting *Williams*, 552 F.3d at 939).

28

1  website claims" and "*would have foregone purchasing [d]efendants' products* and bought other

2  products readily available at a lower price."  [S]AC ¶ [213] (emphases added).

3        In *Lanovaz v. Twinings*, this court recently extended plaintiff's standing to "products

4  . . . nearly identical to the claims for the purchased product."  Order at 4, No. 12-2646, Dkt. No.

5  60.  In *Lanovaz*, there was sufficient detail in the amended complaint to establish that the

6  antioxidant ingredient in 51 of the 53 tea products at issue was the same.  *Id.*  In addition, the

7  labels describing that same antioxidant in those 51 products were identical.  *Id.*  With respect to

8  all products that only bear "similar" packaging or labels (these are: Back to Nature cookies,

9  graham crackers, and granola products; the Planters Nut-rition line of products; Kraft cheese

10  products; Country Time lemonade products; Jell-O sugar free products; Stovetop stuffing

11  products; and certain sugar free gum product lines) the court finds the allegations of "similar

12  packaging" insufficient to meet the standing requirement.  With respect to the non-purchased

13  products bearing packaging and labels that are allegedly the same, essentially identical, or

14  substantially similar (these are the Capri Sun and Crystal Light products), the SAC provides

15  insufficient detail regarding the non-purchased products' nutritional contents and ingredients to

16  allow the court to find standing under the reasoning in *Lanovaz*.  However, with respect only to

17  the regular Trident sugar free gum line with "essentially identical" packaging, *see* SAC ¶ 224, and

18  the Dentyne Ice and Dentyne Fire sugarless gum lines with "essentially identical" packaging, *see*

19  SAC ¶ 225, the court is satisfied that plaintiff has standing to bring these claims based on the

20  impermissible "sugar free" labels.  Other than these specific gum lines, however, the court

21  dismisses the remainder of plaintiff's newly added claims based on products plaintiff herself did

22  not purchase, without leave to amend.

23        **E.  Claims Based on Statements Only on Defendants' Website**

24        Defendants allege that the SAC does not sufficiently state a claim based on the "excellent

25  source" and "healthy" and "wholesome" claims on their website.  Defs.' Mot. 11-13.  With respect

26  to the "excellent source" statement on the website allegedly directed to defendants' Capri Sun

27  products, the court finds that the SAC does not sufficiently plead an "excellent source" claim with

28  respect to any purchased product.  Rather, the SAC only generally alleges that "[d]efendants

1   made an impermissible 'excellent source' claim on their website regarding Capri Sun *products*."

2   SAC ¶ 228 (emphasis added).  Plaintiff fails to plead specific reliance on this particular website

3   statement with respect to any purchased product.  Accordingly, the court dismisses the "excellent

4   source" website claims with leave to amend.  The court dismisses the "healthy" and "wholesome"

5   website claims for similar reasons.  The SAC generally alleges that these claims were present on

6   defendants' website but does not sufficiently plead reliance on these specific aspects of the

7   website when purchasing any particular product.  *See* SAC ¶ 245 ("Plaintiff saw such healthy and

8   wholesome claims which influence their [sic] decision to purchase [d]efendants' *products*."

9   (emphasis added)).

10                                          **III. ORDER**

11          For the foregoing reasons, the court GRANTS defendants' motion to dismiss with respect

12   to: (1) plaintiff's "natural lemon [lemonade] flavor" claims with prejudice, (2) the majority of the

13   products not-purchased by plaintiff (as specified above) with prejudice, and (3) the "excellent

14   source" and "healthy" and "wholesome" claims on the website with thirty days leave to amend.

15   The court DENIES defendant's motion to dismiss with respect to the nutrient content claims on

16   the purchased Planters Nut-rition product and Kraft Mexican Style Four Cheese blend.

17

18

19

20   Dated:  July 28, 2013                    *Ronald M. Whyte*
                                              _____
21                                            Ronald M. Whyte
                                              United States District Court Judge
22

23

24

25

26

27

28